William P. Donovan, Jr. (SBN 155881)
Daniel R. Campbell (Pro Hac Vice)
Emilie E. O'Toole (Pro Hac Vice)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA  90067-3206
Telephone:     (310) 277-4110
Facsimile:      (310) 277-4730
wdonovan@mwe.com
dcampbell@mwe.com
eotoole@mwe.com

*Counsel for Defendant StubHub, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| IN RE STUBHUB REFUND LITIGATION | Case No. 4:20-md-02951-HSG |
|---|---|
| | **DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, STAY PROCEEDINGS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | [Filed concurrently with Declaration of Todd Northcutt and Exhibit thereto and [Proposed] Order] |
| | Judge:        Hon. Haywood S. Gilliam, Jr. |
| | Date:         April 15, 2021 |
| | Time:         2:00 p.m. |
| | Courtroom: 2 |

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2   **PLEASE TAKE NOTICE THAT** on April 15, 2021, at 2:00 p.m., or as soon thereafter as

3   the matter may be heard, before the Honorable Haywood S. Gilliam, Jr. of the United States District

4   Court for the Northern District of California, in Courtroom 2, of the above-entitled Court, located at

5   1301 Clay Street, Oakland, California, Defendant StubHub, Inc. ("StubHub") will and hereby does

6   move the Court for an order compelling arbitration of all causes of action for relief asserted against

7   Defendant by Plaintiffs in the Consolidated Class Action Complaint filed on or about January 8, 2021

8   (the "Complaint" or "CAC") based on the valid and binding arbitration clause in the StubHub

9   Marketplace Global User Agreement ("User Agreement" or "StubHub User Agreement") that all

10  Plaintiffs were on notice of and agreed to by using StubHub for the alleged ticket purchases at issue.

11  The Motion to Compel Arbitration (the "Motion") should be granted pursuant to the Federal

12  Arbitration Act, 9 U.S.C. § 1, *et seq.*, because—as Plaintiffs readily admit in their Complaint—

13  transactions with StubHub are governed by the StubHub User Agreement.  Indeed, the operative

14  arbitration clause in the User Agreement has already—and recently—been upheld in the federal

15  courts in the cases of *Ajzenman v. Office of the Commissioner of Baseball*, 2020 WL 6037140 (C.D.

16  Cal. Sept. 14, 2020) and *Barnes v. StubHub, Inc.*, 2019 WL 11505575 (S.D. Fla. October 3, 2019) in

17  materially identical circumstances.  Plaintiffs were clearly notified of the User Agreement and

18  assented to its terms when they created their StubHub accounts, signed into their StubHub accounts,

19  used StubHub's site and services, and/or purchased tickets through StubHub as a user or a guest.

20  Because the User Agreement contains a binding class action waiver and arbitration provision

21  governing the instant dispute, the claims alleged in the Complaint should be sent to arbitration on an

22  individual basis and this lawsuit either dismissed or stayed.  Punctuating the appropriateness of

23  compelling arbitration is the fact that all Plaintiffs expressly sue to enforce the StubHub User

24  Agreement and are therefore estopped from challenging the arbitration provision as unconscionable.

25  StubHub bases its Motion on this Notice, the accompanying Memorandum of Points and

26  Authorities, all pleadings and papers filed in this action, the argument of counsel, and any other

27  matters that may come before the Court.

28

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

1   Dated: February 12, 2021              Respectfully submitted,

2

3

4   _____
     William P. Donovan, Jr. (SBN 155881)

5    Daniel R. Campbell (pro hac vice)
     Emilie E. O'Toole (pro hac vice)

6    MCDERMOTT WILL & EMERY LLP
     2049 Century Park East, Suite 3200

7    Los Angeles, CA 90067-3206
     Tel: (310) 277-4111

8    Fax: (310) 277-4730
     wdonovan@mwe.com

9    dcampbell@mwe.com
     eotoole@mwe.com

10

11   *Counsel for Defendant StubHub, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ............................................................................................................2

    A.  The Parties. ........................................................................................................2

    B.  Allegations Against StubHub. ...........................................................................2

    C.  The StubHub Ticket Marketplace. .....................................................................3

    D.  Plaintiffs Accepted The StubHub User Agreement During The StubHub Registration, Sign-In, and/or Purchasing Process. .......................................................4

    E.  The StubHub User Agreement and Arbitration Provision. ...........................................7

III.  LEGAL STANDARD....................................................................................................10

IV.  STUBHUB'S ARBITRATION PROVISION AND CLASS ACTION WAIVER SHOULD BE ENFORCED AGAINST PLAINTIFFS ....................................................11

    A.  Plaintiffs Agreed To The Valid And Enforceable StubHub User Agreement And Arbitration Provision. ...........................................................................................12

    B.  Plaintiffs' Causes of Action And Disputes Are Encompassed By The Arbitration Provision In The User Agreement. .......................................................................15

    C.  Plaintiffs Concede Their Acceptance of the User Agreement and the Included Arbitration Provision By Suing to Enforce It and Alleging its Validity....................17

    D.  Plaintiffs Must Arbitrate Their Causes of Action On An Individual Basis. .............19

    E.  The Court Should Dismiss Plaintiffs' Complaint In Its Entirety.............................22

V.  CONCLUSION.............................................................................................................23

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aanderud v. Superior Court*,
    13 Cal. App. 5th 880 (2017) ............................................................................................11

*Airtourist Holdings LLC v. HNA Group*,
    2018 WL 3069444 (N.D. Cal. Mar. 27, 2018).............................................................18, 22

*Ajzenman v. Office of the Commissioner of Baseball*,
    2020 WL 6037140 (C.D. Cal. Sept. 14, 2020) ..................................................... *passim*

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................................10, 11

*Barnes v. StubHub, Inc.*,
    2019 WL 11505575 (S.D. Fla. October 3, 2019)............................................1, 13, 17

*Bentley v. The Control Grp. Media Co.*,
    2020 WL 3639660 (S.D. Cal. July 6, 2020) ...............................................................18, 22

*Beserra v. Allied Ins.*,
    2015 WL 12826456 (C.D. Cal. June 30, 2015) ...............................................................21

*Boucher v. All. Title Co.*,
    127 Cal. App. 4th 262 (2005) ...............................................................................18, 22

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ......................................................................................20

*C2 Educational Sys., Inc., v. Lee*,
    2018 WL 3328143 (N.D. Cal. July 6, 2018).................................................................20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ......................................................................................11

*Clifford v. Quest Software Inc.*,
    38 Cal. App. 5th 745 (Ct. App. 2019), *review denied* (Nov. 13, 2019)......................................21

*Coast Plaza Doctors Hosp. v. Blue Cross of Calif.*,
    83 Cal. App. 4th 677 (2000) ........................................................................................15

*Colopy v. Uber Techs. Inc.*,
    2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) ................................................................22

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................................11, 12, 15

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

*DeVries v. Experian Info. Sols., Inc.*,
  2017 WL 733096 (N.D. Cal. Feb. 24, 2017) .................................................................13

*Dickey v. Ticketmaster LLC*,
  2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ...............................................................13

*Dohrmann v. Intuit, Inc.*,
  823 Fed. Appx. 482 (9th Cir. Aug. 11, 2020) ...............................................................13

*Dupler v. Orbitz, LLC*,
  2018 WL 6038309 (C.D. Cal. July 5, 2018) .................................................................13

*Eiess v. USAA Federal Savings Bank*,
  404 F. Supp. 3d 1240 (N.D. Cal. 2019) .......................................................................22

*Epic Sys. Corp. v. Lewis*,
  138 S.Ct. 1612 (2018) ..................................................................................................19

*Eshagh v. Terminix Int'l Co.*,
  588 Fed. Appx. 703 (9th Cir. 2014) ..............................................................................19

*Graf v. Match.com, LLC*,
  2015 WL 4263957 (C.D. Cal. July 10, 2015) ...............................................................13

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) ........................................................................................................11

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014) ........................................................................................18

*Guadalupe Police Officer's Ass'n v. City of Guadalupe*,
  2011 WL 13217671 (C.D. Cal. Mar. 29, 2011) ...........................................................21

*Hansen v. Ticketmaster Entertainment, Inc.*,
  2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) .....................................................13, 14

*In re Holl*,
  925 F.3d 1076 (9th Cir. 2019) .....................................................................................14

*Hopkins & Carley, ALC v. Thomson Elite*,
  2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ...............................................................22

*Int'l Paper Co., v. Schawbedissen Maschinen & Anlagen GMBH*,
  206 F.3d 411 (4th Cir. 2000) ......................................................................................18

*Johnson v. JP Morgan Chase Bank, N.A.*,
  2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ...........................................................22

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

*Kilgore v. Keybank, N. A.*,
   718 F.3d 1052 (9th Cir. 2013) (en banc) .................................................11

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ................................................................11

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011)................................................................................10

*Lamps Plus, Inc. v. Varela*,
   139 S.Ct. 1407 (2019).........................................................................11

*Larson v. Speetjens*,
   2006 WL 2567873 (N.D. Cal. Sept. 5, 2006) ...............................18, 22

*Lee v. Ticketmaster LLC*,
   817 Fed. Appx. 393 (9th Cir. June 10, 2020) ...............................12, 13

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) .............................................................23

*Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.*,
   30 Cal. App. 5th 970 (2018) ..................................................................7

*Magana v. DoorDash, Inc.*,
   343 F. Supp. 3d 891 (N.D. Cal. 2018) ...........................................20, 21

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ............................................................... *passim*

*Mortensen v. Bresnan Comm. LLC*,
   722 F.3d 1151 (9th Cir. 2013) .............................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).................................................................................17

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) .......................................................17, 22

*Needleman v. Golden 1 Credit Union*,
   474 F. Supp. 3d 1097 (N.D. Cal. 2020) ..............................................11

*Nitro-Lift Techs., L.L.C. v. Howard*,
   568 U.S. 17 (2012) (per curiam).........................................................11

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ......................................12, 13, 14

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

*Sherwood Mktg. Grp., LLC v. Intertek Testing Servs., N.A., Inc.*,
2018 WL 672515 (S.D. Cal. Jan. 31, 2018)................................................................18, 22

*Sponheim* v. *Citibank, NA.*,
2019 WL 2498938 (C.D. Cal. June 10, 2019) .......................................................................21

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)..............................................................................................................19

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ............................................................................12, 14

*U.S. Patent & Trademark Office v. Booking.com B. V.*,
140 S. Ct. 2298 (2020)..........................................................................................................21

*Yun Park v. MSX Americas, Inc.*,
2019 WL 5285446 (C.D. Cal. Oct. 9, 2019)........................................................................18

**Statutes**

Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*) ........................................................10, 23

15 U.S.C. § 1114.......................................................................................................................20

**Other Authorities**

USPTO Trademarks, "FanProtect,"
https://uspto.report/TM/85281779 (last visited Feb. 11, 2021) .................................21

StubHub, Coronavirus Update,
https://support.stubhub.com/en/support/solutions/articles/61000276296 (last visited Feb. 2,
2021) ..........................................................................................................................................4

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant StubHub, Inc. respectfully submits this Memorandum of Points and Authorities in support of its Motion to Compel Arbitration.

## I.     INTRODUCTION

The Complaint filed by 56 Plaintiffs and alleging 31 causes of action seeks to avoid existing precedent in the *Ajzenman* and *Barnes* cases and to dodge contractual commitments to arbitrate disputes with StubHub.  The CAC, at its core, seeks monetary damages stemming from an alleged breach of Plaintiffs' contract with StubHub.  Yet the CAC provides no factual or legal basis to accomplish Plaintiffs' misplaced objective.   All Plaintiffs purchased tickets using StubHub marketplace after consenting to the current version of the arbitration clause that clearly, and lawfully, provides for the arbitration of the instant dispute on an individual basis.  None of the 56 Plaintiffs can or do contend that any of their claims falls outside of the arbitration provision's scope.  None of the 56 Plaintiffs can or do assert they opted out of the arbitration provision.  Indeed, the CAC suffers from the incurable problem that Plaintiffs seek the benefits of the StubHub User Agreement, namely their view that refunds are proper under the contract, while ignoring the binding arbitration provision in that very same contract.  Plaintiffs are estopped from suing to enforce the User Agreement and attempting to disavow, simultaneously, the legal and binding arbitration provision that they find unfavorable.  Moreover, the predictable attempt in the CAC to plead a public injunctive relief theory fails on multiple fronts.  First, this is a private dispute among StubHub and certain disgruntled customers where the thrust of Plaintiffs' case is their desire for monetary refunds.  Second, there is no prospective, public injunctive relief that is warranted under the actual allegations in the CAC.  Third, even if there were a viable public injunctive relief theory, such a claim would be properly stayed pending the arbitrations.  Accordingly, StubHub respectfully requests that this Honorable Court compel arbitration on all claims in the CAC on an individual basis against all Plaintiffs, and otherwise stay any non-arbitrable claims.

## II.    BACKGROUND

### A.    The Parties.

StubHub is an online ticket marketplace on which users and guests can buy or sell tickets or other related passes for theater, concerts, sports events, or other entertainment events.  (CAC ¶ 75.)  StubHub is not the seller of the tickets, but does receive a commission for tickets bought or sold using StubHub.  (*See id.* ¶¶ 75, 76; Declaration of Todd Northcutt dated Feb. 9, 2021, ¶ 2) (hereafter, "Northcutt Decl.").   Plaintiffs allege they are citizens of Arizona, California, Florida, Georgia, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Texas, Virginia, Washington, and Wisconsin.  (CAC ¶¶ 19–74.)  Each Plaintiff signed up for StubHub when there was an arbitration provision.  (Northcutt Decl. ¶ 30.)  Each Plaintiff alleges the purchase of tickets using StubHub between September 12, 2019 and July 24, 2020 for an event that was scheduled to take place in 2020.[1]  (CAC ¶¶ 19–74; Northcutt Decl. ¶¶ 36–204.)[2]

### B.    Allegations Against StubHub.

Fundamentally, all Plaintiffs are subject to four unassailable truths: (1) they all assented to the same arbitration provision when they made the subject ticket purchases at issue in this case; (2) they all saw language explaining that by signing up, signing in, and/or purchasing the subject tickets, Plaintiffs agreed to be bound by the StubHub User Agreement and arbitration provision; (3) none of the Plaintiffs ever opted out of the arbitration provision after being notified of their opt-out rights; and (4) the Plaintiffs do not allege that any cause of action falls outside of the scope of the arbitration provision.

Plaintiffs generally allege that StubHub failed to issue refunds for events impacted by COVID-19.  (CAC ¶ 4.)  Plaintiffs allege they "viewed and relied upon the FanProtect Guarantee

---

[1] Plaintiffs Paul Koble and Richard Huante actually purchased the tickets at issue **after** StubHub modified the User Agreement on March 25, 2020, which is the subject of the instant dispute. (Northcutt Decl. ¶¶ 107, 95.)  Plaintiffs Emma Goodacre and Amy Gutierrez further registered for StubHub accounts after March 25, 2020.  (*Id.* ¶¶ 72, 84.)  Accordingly, these Plaintiffs have no claim whatsoever under the facts averred in the CAC.

[2] Appendix A to this Motion and Memorandum provides a chart with detailed information regarding each Plaintiff's sign-up, purchase, and use of StubHub.

prior to their ticket purchases." (*Id.* ¶¶ 6, 187.)  These admissions show Plaintiffs saw and relied on the terms of the StubHub User Agreement, wherein the FanProtect Guarantee resides.  (*See* Northcutt Decl. ¶ 7.)  The User Agreement upon which Plaintiffs relied to purchase the subject tickets contained the same arbitration provision, as well as the same prominent warning of the arbitration provision, at all times that Plaintiffs' purchased the tickets at issue in this action.  (*Id.* ¶¶ 28–30, Ex. A.)  Not a single Plaintiff opted out of arbitration.  (*Id.* ¶ 34.)  Plaintiffs do not even allege that their claims fall outside the scope of the arbitration provision.  Moreover, the same notifications indicating agreement to the User Agreement by signing up, signing in, purchasing, or continuing to use StubHub were in place at the time of each Plaintiff's purchase at issue here.  (*Id.* ¶¶ 12–18.)  All Plaintiffs received a confirmation email subsequent to their respective ticket purchases again notifying them that they assented to a contract with StubHub and again providing a bolded, offset colored hyperlink to the User Agreement and its binding arbitration provision.  (*Id.* ¶ 35.)  Plaintiffs primarily seek damages in the form of refunds as their principal remedy.  (CAC at 78–80.)

### C.      The StubHub Ticket Marketplace.

StubHub provides an online ticket marketplace; it is not the "seller" of the tickets on its site.[3] (CAC ¶¶ 75, 76; Northcutt Decl. ¶ 2.)  Both registered users and guests can utilize the StubHub ticket marketplace, but every user, whether registered or a guest, must agree to and accept the StubHub User Agreement: no one can buy or sell tickets using StubHub without agreeing to the terms of the User Agreement.  (Northcutt Decl. ¶ 6.)  The StubHub User Agreement contains the terms and conditions that govern the relationship between StubHub and one that uses its site or services.  (*Id.* ¶ 9.)  A true and correct copy of the current User Agreement, which includes the arbitration provision in place when Plaintiffs purchased the tickets at issue in this action through StubHub, is attached to the Northcutt Declaration as Exhibit A.

---

[3] Plaintiffs concede this fact by alleging that StubHub earns only a fee from ticket transactions made using its site and services.  (CAC ¶¶ 75, 76.)

**D.    Plaintiffs Accepted The StubHub User Agreement During The StubHub Registration, Sign-In, and/or Purchasing Process.**

As the CAC acknowledges, Plaintiffs made their purchases using StubHub's site and services. (*See* CAC ¶¶ 19–74.)  StubHub's records indicate that all Plaintiffs made the purchases at issue in this action between September 12, 2019 and July 24, 2020.[4] (Northcutt Decl. ¶¶ 36–204.) Importantly, none of the Plaintiffs ever allege that they requested a refund and were denied a refund. Moreover, some Plaintiffs have received and used the 120% credit provided by StubHub for cancelled events.  For example, Plaintiff Anthony Fattori purchased tickets on July 24, 2020 for a Five Seconds of Summer concert scheduled for June 23, 2021, using the credit he received after the cancellation of the Kesha concert he originally purchased tickets for.[5] (*Id.* ¶ 38.)

As a condition of signing up for their StubHub accounts and/or making their purchases using StubHub, Plaintiffs all agreed to the StubHub User Agreement.  (*See id.* ¶ 6.)  The operative StubHub User Agreement (the "Current User Agreement") was updated as permitted by the terms of the User Agreement, and posted on StubHub's site, along with a list of all changes thereto, on March 25, 2020. (*Id.* ¶¶ 10, 20, Ex. A.)

The registered Plaintiffs signed up for their StubHub user accounts by completing the User Registration Form.  (*See, e.g.*, *id.* ¶¶ 36–37, 39–40, 42–43.)   A prospective user acknowledges acceptance of the StubHub User Agreement (including StubHub's policies and procedures referenced therein) by clicking a "Sign up" button on the StubHub website, found immediately above a statement that reads:  "By purchasing or signing in, you agree to our **user agreement** and **privacy notice**."  (*Id.* ¶ 12.)[6]  The notification contains bold, underlined, and offset color typeface that is hyperlinked to the User Agreement and is in close proximity to the "Sign up" button.  (*Id.*)

---

[4] Further information regarding the details of each Plaintiffs' individual purchases is included in the Northcutt Declaration. (*Id.* at ¶¶ 36–204.)

[5] Credits issued by StubHub for events cancelled due to COVID-19 do not expire until December 31, 2022.  *See* StubHub, Coronavirus Update, https://support.stubhub.com/en/support/solutions/articles/61000276296 (last visited Feb. 2, 2021).

[6] App users, as opposed to website users, receive a similar message with bolded text hyperlinks that states:  "By signing up, you agree to our **user agreement** and **privacy notice**."  (Northcutt Decl. ¶ 12.)



The same, or substantially similar, language existed in the User Agreement in bold, underlined, and offset color type when Plaintiffs created their StubHub accounts and agreed to and accepted the User Agreement.  (*Id.* at ¶ 13.)

For Plaintiffs that checked out as a guest, they were notified of and assented to the StubHub User Agreement during the checkout and purchase process. When a user—guest or registered—checks out and purchases tickets to an event on the website, a pop-up screen displays and states, "By purchasing or signing in, you agree to our **user agreement** and acknowledge our **privacy notice**." (*Id.* ¶ 15.)



DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND MEM. OF POINTS AND AUTHS. IN SUPPORT

The notice contains hyperlinks, in offset, bolded, and colored typeface, to the current version of the StubHub User Agreement, again in bolded and prominent font in close proximity to the guest checkout button.  (*Id.*)

StubHub includes additional mechanisms by which users are notified of and reaffirm agreement to the StubHub User Agreement and related policies.  When a registered user clicks "Sign-In" to log into their StubHub account on the website, a prominent pop-up screen displays and again states, "By purchasing or signing in, you agree to our **user agreement** and acknowledge our **privacy notice**."  (*Id.* ¶ 17.)



The notices contain hyperlinks, in offset, bolded, and colored typeface, to the current version of the StubHub User Agreement, again in bolded and prominent font in close proximity to the sign-in button.  (*Id.*)  This additional mechanism by which registered users reaffirm agreement to and acceptance of the User Agreement, was in place when Plaintiffs made the purchases at issue in this case.  (*Id.* ¶ 18.)

And, in the confirmation email sent to all Plaintiffs after their purchases on StubHub, they each received the following notification:  "This email was sent to [Plaintiff email address] by StubHub, Inc., 199 Fremont Street, Floor 4, San Francisco, CA 94105, USA, which may use affiliates to provide StubHub services. Please refer to the user agreement for the contact data of your

contracting party. StubHub is committed to your privacy. Learn more about our privacy notice and user agreement." (*Id.* ¶ 35.) Through this email, StubHub specifically notified and again apprised each Plaintiff that the User Agreement was the contract governing the purchase at issue and again prominently linked the operative version of the User Agreement to the Plaintiff in the email.

Finally, the StubHub site, itself, on the home page, any artist/team page, and the purchase page, among others, contains a notice and disclaimer stating that "use of this website signifies your agreement to our **User Agreement**. . . ." (*Id.* ¶ 16.) The term "User Agreement" is in offset and contrasting blue colored text, bolded, and hyperlinked to the Current User Agreement. (*Id.*) Again, this notice explains that use of the StubHub website signifies agreement to the User Agreement, provides a hyperlink to the operative version of that agreement, and offsets that hyperlink text in bold, colored typeface. (*Id.*)

### E.    The StubHub User Agreement and Arbitration Provision.

The StubHub User Agreement contained a provision regarding modification or amendment of the User Agreement, prominently displayed on the first page, when Plaintiffs made the purchases at issue. (Northcutt Decl. ¶ 19, Ex. A, at 1.) This provision was substantially similar in prior versions of the User Agreement as it is in the Current User Agreement, which states: "We may periodically make changes to this User Agreement ***and shall notify you by posting a revised version on our site. The revised User Agreement will become effective upon publication*** and your continued use of the Site and Services will constitute acceptance of the revised User Agreement." (*Id.* (emphasis added).) Plaintiffs make no allegations that the modification provision in the User Agreement is unlawful or unconscionable.[7] Any modifications made to the User Agreement in March 2020 were posted on StubHub's website and clearly outlined for users to see. (*Id.* ¶ 20.)

---

[7] Even if Plaintiffs specifically alleged that some provision of the User Agreement was unconscionable, there is a valid severability provision in the User Agreement that allows that any unconscionable or unlawful portion to be severed while the remainder of the User Agreement remains valid and binding. *See Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 30 Cal. App. 5th 970, 979 (2018) ("Thus, like an arbitration provision generally, a delegation clause nested in an arbitration provision is severable from the remainder of the contract and the question of its enforceability is for the court to decide if a challenge is directed specifically at the validity of the delegation clause.").

The Current User Agreement and prior versions of the StubHub User Agreement contain provisions relating to event cancellation, postponement, and other event changes. (*Id.* ¶¶ 21, 23.) As stated in the provisions, the StubHub User Agreement does not mandate the issuance of refunds for postponed events, unless they are ultimately canceled. (*Id.* ¶¶ 21–23.) The operative version of the refund policy states, in relevant part, "If the event is canceled and ***not rescheduled***, you will get a refund or credit for use on a future purchase, as determined in StubHub's sole discretion (unless a refund is required by law)." (*Id.* ¶ 24.)

The StubHub User Agreement contains an express arbitration provision that all Plaintiffs assented to, and to which StubHub drew to users' attention in bold, all capital text on the first page:

> **FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST STUBHUB ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**

(*Id.* ¶ 28) (emphasis in original). The arbitration provision itself states:

> **22.1 If you reside in the United States or Canada, You and StubHub each agree, except where prohibited by law, that any and all disputes or claims that have arisen or may arise between you and StubHub relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate, as the term is defined below) or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services shall be resolved exclusively through final and binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Consumer Arbitration Rules ("Rules"), rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, nonrepresentative) basis (together with subsections 22(A)-(F), the "Agreement to Arbitrate"). This Agreement to Arbitrate is intended to be broadly interpreted.** The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

(*Id.* ¶ 30) (emphasis in original).  The User Agreement has included an arbitration provision since at least 2003.  (*Id.*)  The current User Agreement also includes a class action waiver:

> **1.** Prohibition of Class and Representative Actions
> EXCEPT WHERE PROHIBITED BY LAW, YOU AND STUBHUB AGREE THAT EACH OF US MAY BRING CLAIMS PURSUANT TO THIS AGREEMENT TO ARBITRATE AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING. UNLESS BOTH YOU AND STUBHUB AGREE OTHERWISE, THE ARBITRATOR SHALL NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS, AND SHALL NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, CLASS, OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING.
>
> **2.** Non-Individualized Relief
> YOU AND STUBHUB AGREE THAT THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S). ANY RELIEF AWARDED CANNOT AFFECT OTHER USERS OR THE GENERAL PUBLIC.
> If a court decides that applicable law precludes enforcement of any of this paragraph's limitations as to a particular claim for relief, then subject to your and StubHub's right to appeal the court's decision, that claim (and only that claim) must be severed from the arbitration and may be brought in court. All other claims will be arbitrated.

(*Id.* ¶ 31) (emphasis in original).  The arbitration provision and class action waiver are substantively identical in the Current User Agreement and the prior version of the User Agreement.  (*See id.* ¶¶ 30–31, Ex. A.) [8]

The StubHub User Agreement provides StubHub users, including Plaintiffs, with the ability to opt out of the arbitration provision and continue using StubHub.  (*Id.* ¶ 32.)  The StubHub User Agreement advises users of their right to opt-out of arbitration, as well as the opt-out procedure: [9]

---

[8] The current and operative version of the arbitration provision has been in place and effective, without any significant change, since at least October 1, 2018, which predates any purchase at issue in this case.  (Northcutt Decl. ¶ 30.)  In fact, the arbitration provision has been in place in substantially similar form since 2015.
[9] In fact, StubHub provides users with notice of the right to opt-out on the very first page of the User Agreement—in the first paragraph.  (Northcutt Decl., ¶¶ 28–29.)

**You can choose to reject this Agreement to Arbitrate ('opt out') by mailing us a written opt-out notice ('Opt-Out Notice'). The Opt-Out Notice must be postmarked no later than 30 days after the date you accept the User Agreement for the first time. You must mail the Opt-Out Notice to StubHub, Inc., Attn: Litigation Department, Re: Opt-Out Notice, 199 Fremont Street, 4th Floor, San Francisco, CA 94105, United States**

(*Id.*) (emphasis in original).  None of the Plaintiffs in this action opted out of arbitration.  (*Id.* ¶ 34.)

The arbitration provision in the StubHub User Agreement mandates resolution of "any and all disputes or claims" between a user and StubHub "relating in any way to or arising out of this or previous versions of the User Agreement . . . or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services . . . exclusively through final and binding arbitration. . . ." (*Id.* ¶ 30, Ex. A § 22.1.)  The Current User Agreement provides, "The Agreement to Arbitrate is intended to be broadly interpreted." (*Id.*)  The arbitration provision contains features favorable to users to facilitate the resolution of claims, such as: the ability to pursue relief in small claims court; application of the more flexible AAA Consumer Arbitration Rules; arbitration costs are paid by StubHub for certain claims; the hearing takes place where the user resides, by telephone, or the user can waive the hearing; no confidentiality requirement; and the availability of full individual remedies, including statutory and punitive damages, attorneys' fees, and injunctive relief.  (*Id.*, Ex. A § 22.1.)

## III.   LEGAL STANDARD

The StubHub User Agreement is subject to the Federal Arbitration Act (the "FAA") as it is a written contract "evidencing a transaction involving commerce."  9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); (*see* Northcutt Decl. ¶ 32).  Any arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The FAA governs the StubHub arbitration agreement.  (*See* Northcutt Decl. Ex. A, § 22.1.)

The FAA was enacted by Congress to overcome "widespread judicial hostility to arbitration agreements," and to ensure that courts enforce valid agreements to arbitrate.  *See Concepcion*, 563 U.S. at 339, 344 ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."); *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011).  The United States Supreme Court has repeatedly emphasized that

there is a presumption in favor of arbitration when an arbitration agreement exists, and that courts must enforce arbitration agreements as written, reflecting the FAA's clear policy favoring arbitration.[10]  California likewise "has a strong public policy in favor of arbitration." *Aanerud v. Superior Court*, 13 Cal. App. 5th 880, 890 (2017); *Mortensen v. Bresnan Comm. LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013).

The party seeking to compel arbitration bears the burden of proving the existence of a valid agreement to arbitrate by a preponderance of the evidence.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  Once an agreement to arbitrate has been established, the party resisting arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  Given the strong policy favoring arbitration, "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1418 (2019).  The Supreme Court also holds that class action waivers in arbitration agreements are valid and enforceable, and that a plaintiff cannot avoid arbitration due to the presence of a class action waiver.  *Concepcion*, 563 U.S. at 351.

A court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Because both elements are established in this case, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1103 (N.D. Cal. 2020) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *see also Kilgore v. Keybank, N. A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc).

## IV.   STUBHUB'S ARBITRATION PROVISION AND CLASS ACTION WAIVER SHOULD BE ENFORCED AGAINST PLAINTIFFS

The two-part test for determining whether to compel arbitration is satisfied here because (1)

---

[10] *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20 (2012) (per curiam) (recognizing the FAA's "national policy favoring arbitration").

1    Plaintiffs were notified multiple times that their registration as StubHub users, their use of StubHub,

2    and their purchases through StubHub constituted agreement to the StubHub User Agreement and (2)

3    Plaintiffs' causes of action are encompassed by the arbitration provision.   Moreover, Plaintiffs

4    concede the existence of a valid, enforceable contract with StubHub by relying on its terms and suing

5    to enforce them against StubHub.

6         **A.    Plaintiffs Agreed To The Valid And Enforceable StubHub User Agreement And**

7              **Arbitration Provision.**

8         When determining whether to compel arbitration, the court first asks whether a valid

9    agreement to arbitrate exists.  *See Dean Witter Reynolds*, 470 U.S. at 218.  An online contract "must

10   put a website user on actual or inquiry notice of its terms."  *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d

11   580, 585 (N.D. Cal. 2020).  Courts find actual or inquiry notice of the terms "where the existence of

12   the terms was reasonably communicated to the user."  *Id.*

13        The StubHub User Agreement is an enforceable "sign-in wrap" or "purchase-wrap"

14   agreement because Plaintiffs were "provided with an opportunity to review the terms of service in

15   the form of a hyperlink immediately under the [sign up or sign in and purchase] button[s] and [they]

16   clicked [sign up or sign in or made purchases]" and accepted the terms of the agreement.[11]  *See Swift*

17   *v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011).

18        The very same User Agreement and arbitration provision at issue in this action has been

19   enforced and upheld in an almost identical scenario in the past few months.  In *Ajzenman v. Office of*

20   *the Commissioner of Baseball*, Plaintiffs sued StubHub for March 2020 changes to the refund policy

21   in light of COVID.  2020 WL 6037140.  Judge Fischer sent the StubHub purchasers to arbitration,

22   holding that the plaintiffs were on inquiry notice of the StubHub User Agreement and assented to be

23   bound to it because they "affirmatively acknowledge[d] the [User Agreement] before completing

24   [their] online purchase."  *Id.* at *4–6 (explaining that the four different notifications relating to the

25

26   _____

27   [11] A "sign-in wrap" agreement is one in which a website notifies "the user of the existence of the
     website's terms of use and, instead of providing an 'I agree' button, advise[s] the user that he or she
28   is agreeing to the terms of service when registering or signing up." *DoorDash,* 445 F. Supp. 3d at
     585; *see Lee v. Ticketmaster LLC*, 817 Fed. Appx. 393 (9th Cir. June 10, 2020).

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

User Agreement and arbitration provision informed users in a way that was consistent and not confusing); *see Barnes*, 2019 WL 11505575 (wherein another federal court upheld and enforced StubHub's arbitration provision));[12] *see also Dohrmann v. Intuit, Inc.*, 823 Fed. Appx. 482, 484–85 (9th Cir. Aug. 11, 2020); *DoorDash*, 445 F. Supp. 3d at 585.  The court further noted the consistent use of the term "User Agreement" in blue hyperlinked text across all notices, as well as the fact that the text was "located either directly below or almost directly below the applicable button" as further support that plaintiffs were on notice of the User Agreement.  *Ajzenman*, 2020 WL 6037140, at *5–6.  In response to plaintiffs' claim that StubHub's multiple notices of adherence to the User Agreement were confusing, the court "decline[d] to hold that websites should inform users of their policies less often rather than more."  *Id.* at *6.  Plaintiffs' attempt to argue a lack of notice of that same User Agreement here fails—especially where, as here, all Plaintiffs saw the same sign-up, sign-in, and/or purchaser flow as that at issue in *Ajzenman*.  (*See* Northcutt Decl. ¶¶ 12–18.)

Federal courts in California enforce agreements containing arbitration provisions similar to, but actually less conspicuous than, StubHub's arbitration provision.  *See Lee*, 817 Fed. Appx. at 394–95; *Hansen v. Ticketmaster Entertainment, Inc.*, 2020 WL 7319358, at *5 (N.D. Cal. Dec. 11, 2020) (compelling plaintiff to arbitration where he agreed to the terms of use upon sign-in and purchase); *DoorDash*, 445 F. Supp. 3d at 586–87 (enforcing arbitration provision where the user agreed to the terms upon signing up or signing in); *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019); *Dupler v. Orbitz, LLC*, 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2018) (compelling arbitration where plaintiff was on notice of and "manifested their assent to the Terms of Use by clicking 'complete booking'"); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *5–7 (N.D. Cal. Feb. 24, 2017) (compelling arbitration where notice above submit button notified consumers that they were agreeing to terms of use by submitting an order); *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (enforcing arbitration clause in terms of use where

---

[12] The *Barnes* case takes on particular significance in this case as to Plaintiffs Avalos, Fogg, Dominguez, Carroll, and Cook because the *Barnes* court sent similar claims under the Florida Deceptive Consumer Practices Act to arbitration in light of arguments that *McGill* and California law prohibited such relief.

1  "all users of the Match.com website . . . were required to affirmatively agree to the Terms of Use

2  when they clicked on a 'Continue' or other similar button on the registration page where it was

3  explained that by clicking on that button, the user was affirming that they would be bound by the

4  Terms of Use, which were always hyperlinked and available for review").

5          The notifications explaining Plaintiffs' agreement to the StubHub User Agreement apply to

6  all of the Plaintiffs' transactions at issue in this case and are similar to the notifications found

7  sufficient in both *DoorDash* and *Hansen*.  In *DoorDash*, the plaintiffs were on inquiry notice where

8  the text next to the sign-up button clearly contrasted with the background, was plainly readable, and

9  linked to the user agreement in blue text and hyperlinked.  *DoorDash*, 445 F. Supp. 3d at 586; *see*

10  *Swift*, 805 F. Supp. 2d at 911; *see also In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) ("There is no

11  special rule, however, that an offeror of an adhesive consumer contract specifically highlight or

12  otherwise bring an arbitration clause to the attention of the consumer to render the clause

13  enforceable.").  In *Hansen*, plaintiff "validly assented" to the terms of use "when he clicked the Sign

14  In button, as required before he could move on to purchase tickets . . . ."  2020 WL 7319358, at *5.

15  There, the text giving notice to plaintiff of the hyperlinked terms of use appeared right above the

16  "Sign-in" button in grey.  *Id.* at *4.

17          As in the above-referenced cases, Plaintiffs here were required to, and did, assent to the User

18  Agreement.  Plaintiffs agreed to arbitrate their causes of action against StubHub when they initially

19  registered to use StubHub's services, and expressly clicked "Sign up" while viewing this message:

20  "By purchasing or signing in, you agree to our **user agreement** and **privacy notice**."  (Northcutt

21  Decl. ¶ 12.)  Plaintiffs were again notified of their assent to the User Agreement when they purchased

22  the tickets now at issue here.  (*Id.* ¶ 15.)  In fact, a sign-in notification was also in place at the time

23  all Plaintiffs made their purchases in this case, which said, "By purchasing or signing in, you agree

24  to our **user agreement** and acknowledge our **privacy notice**." (*Id.* ¶¶ 17–18.)  Even Plaintiffs that

25  purchased tickets as guests agreed to arbitrate their causes of action when they checked out and were

26  presented with the same notification quoted above regarding their acceptance of the User Agreement.

27  (*Id.* ¶ 15.)  These facts alone are sufficient, under California law, to bind the Plaintiffs to the User

28  Agreement.

Even so, additional notifications of Plaintiffs' acceptance of the User Agreement abound.  On the StubHub web pages for all artists, teams, and events, and on the StubHub home page, yet another notice was provided stating that "use of the website signifies your agreement to our **User Agreement** . . . ."  (*Id.* ¶ 16.)  StubHub also sent emails to every Plaintiff confirming their purchases at issue in this case and referring them to the User Agreement "for the contact data of your contracting party" wherein the User Agreement was again prominently hyperlinked in bolded, underlined, and offset colored typeface.  (*Id.* ¶ 35.)

The User Agreement in place when Plaintiffs made their respective purchases at issue here, and in place now, includes the same express arbitration provision, and provides conspicuous notice of the presence of the arbitration provision on the first page of the User Agreement in bold, all capital text, and was prominently displayed to all Plaintiffs.  (*Id.* ¶ 30.)  None of the Plaintiffs exercised their right to opt out of the User Agreement's arbitration provision and thus were bound to it.  (*Id.* ¶ 34.) These facts are sufficient to bind all Plaintiffs to the User Agreement as Judge Fischer recently found in a nearly identical case.  Plaintiffs are therefore bound by the User Agreement's arbitration provision.

B.      **Plaintiffs' Causes of Action And Disputes Are Encompassed By The Arbitration Provision In The User Agreement.**

The second question the court asks in determining whether to compel arbitration is whether the arbitration provision at issue encompasses the Plaintiffs' causes of action.  *See Dean Witter Reynolds*, 470 U.S. at 218; *see also Coast Plaza Doctors Hosp. v. Blue Cross of Calif.*, 83 Cal. App. 4th 677, 686 (2000) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.").

Notably, Plaintiffs fail to allege that any of their claims fall outside the scope of the arbitration provision.  The User Agreement requires Plaintiffs to arbitrate all of their claims:

> [A]ny and all disputes or claims that have arisen or may arise between you and StubHub relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate, as the term is defined below) or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services . . . .

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND MEM. OF POINTS AND AUTHS. IN SUPPORT

1    (Northcutt Decl. ¶ 30, Ex. A, § 22.1.)  Plaintiffs' causes of action are within the scope of this

2    provision.

3         Each of Plaintiffs' thirty-one counts against StubHub arises directly out of Plaintiffs' alleged

4    experiences using StubHub and StubHub's User Agreement.[13]  Of these causes of action, twenty-

5    four assert claims under various state consumer protection laws, including California's CLRA, UCL,

6    and FAL.  (CAC ¶¶ 122–157, 192–470.)  These claims all generally allege Plaintiffs were consumers

7    who purchased tickets using StubHub, relying on the prior version of the refund policy in the User

8    Agreement.  (See, e.g., ¶¶ 122–135.)  Plaintiffs' claim for conversion alleges StubHub is "in

9    possession of the refunds" they are entitled to and is instead giving buyers coupons for future

10   purchases.  (Id. ¶¶ 158–166.)  Seeking restitution, Plaintiffs allege StubHub has not returned money

11   to them that was intended to be used for their benefit, namely from the purchase of tickets using

12   StubHub.  (Id. ¶¶ 167–171.)  In alleging negligent misrepresentation, Plaintiffs state that StubHub

13   misrepresented that it "provides refunds for tickets purchased for events that are cancelled," omitting

14   this from its "ticket refund policy," which is incorporated in the User Agreement.  (Id. ¶¶ 172–179.)

15   Plaintiffs claim StubHub was unjustly enriched in "benefit[ting] from receipt of improper funds" it

16   retains, namely refunds for tickets purchased using StubHub.  (Id. ¶¶ 180–184.)  All Plaintiffs assert

17   a breach of contract cause of action wherein each Plaintiff explicitly alleges reliance on the

18   contractual refund term, which is a part of the User Agreement.  (Id. ¶¶ 185–191.)

19        At its core, this is a breach of contract case (as Plaintiffs readily admit in Count VIII) for

20   money damages for alleged violations of the refund term of the User Agreement.  These causes of

21   action are clearly within the scope of the arbitration provision.[14]  Every single cause of action relates

22   to the purchase of tickets using StubHub and the terms of the User Agreement, namely the refund

23   term.  (See Northcutt Decl. ¶ 30.)  Indeed, the Ajzenman court's recent enforcement of the StubHub

24   _____

25   [13] StubHub believes many, if not all, of the claims that survive the motion to compel arbitration, if
     any, should be dismissed as legally deficient.  For example, the CLRA claim should be dismissed
26   because StubHub is not a ticket seller and because tickets are not goods or services.
     [14] Even Plaintiffs' allegations related to the alleged changes to the refund policy are encompassed
27   in the list of arbitrable causes of action because, by its terms, the provision applies to disputes
     "relating in any way to or arising out of this or previous versions of the User Agreement."
28   (Northcutt Decl. Ex. A § 22.1.)

1  User Agreement occurred where the plaintiffs—just as the Plaintiffs here—asserted causes of action

2  based on COVID-related changes to the refund policy and an alleged failure to issue refunds by

3  StubHub during the pandemic.  2020 WL 6037140, at *1–2.  Even before this, other federal courts

4  have enforced the StubHub User Agreement with respect to a case involving ticket sales, fees, and

5  advertisement about ticket sales through StubHub.  *Barnes*, 2019 WL 11505575, at *1.  Even if there

6  were doubts in light of this poignant and persuasive case law, however, such doubts would

7  necessarily be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

8  *Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should

9  be resolved in favor of arbitration.").  This Court should hold, as the *Ajzenman* court held, that

10 disputes about refunds for ticket purchases on StubHub's platform and alleged changes to the refund

11 policy are encompassed in the arbitration provision of the User Agreement.

12        **C.      Plaintiffs Concede Their Acceptance of the User Agreement and the Included**

13                **Arbitration Provision By Suing to Enforce It and Alleging its Validity**

14        By pleading a cause of action for breach of the StubHub User Agreement (Count VIII),

15 Plaintiffs affirmatively plead that the User Agreement is a valid, binding, and enforceable agreement,

16 that they all agreed to be bound by the StubHub User Agreement and complied with all of its terms,

17 that they are in a contractual relationship with StubHub, and that StubHub somehow breached that

18 agreement resulting in damages to Plaintiffs, *i.e.* refunds.  (CAC ¶ 185–191.)  Plaintiffs explicitly

19 plead that a contract was formed between them and StubHub "at the time they purchased tickets

20 through StubHub" by way of promises made in the refund term of the User Agreement.  (*Id.* ¶ 187.)

21        Plaintiffs, however, cannot have their proverbial cake and eat it too: they cannot pick and

22 choose only the provisions of the User Agreement they find favorable while ignoring those they find

23 unfavorable in their breach of contract cause of action.  In fact, the law proscribes that Plaintiffs are

24 equitably estopped from disavowing the valid arbitration provision of the User Agreement because

25 they, as masters of their pleadings, sued to enforce the User Agreement.  *See Murphy v. DirecTV,*

26 *Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) ("[The doctrine of equitable estoppel] precludes a party

27 from claiming the benefits of a contract while simultaneously attempting to avoid the burdens

28 that contract imposes."); *Airtourist Holdings LLC v. HNA Group*, 2018 WL 3069444, at *3 (N.D.

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT

Cal. Mar. 27, 2018) (compelling arbitration based on equitable estoppel upon finding plaintiff's claims "intimately founded in and intertwined with the underlying contract obligations"); *Larson v. Speetjens*, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006), *order clarified,* 2006 WL 3365589 (N.D. Cal. Nov. 17, 2006) (holding that plaintiff was estopped from exploiting favorable terms of a contract while seeking to avoid arbitration where plaintiff's cause of action was intertwined with the benefits available to plaintiff under the contract containing an arbitration clause); *Bentley v. The Control Grp. Media Co.*, 2020 WL 3639660, at *3 (S.D. Cal. July 6, 2020) (enforcing arbitration clause in terms of use under estoppel doctrine and noting that "it is unfair for a party to rely on a contract when it works to its advantage and repudiate it when it works to its disadvantage"); *Yun Park v. MSX Americas, Inc.*, 2019 WL 5285446, at *4 (C.D. Cal. Oct. 9, 2019) (explaining that a party who seeks to claim a benefit under a contract cannot then, in another breath, seek to disavow an arbitration clause in that contract as unconscionable and holding that "Plaintiff cannot now disavow the agreement or any part of it, such as by arguing the arbitration agreement is unconscionable");[15] *Sherwood Mktg. Grp., LLC v. Intertek Testing Servs., N.A., Inc.*, 2018 WL 672515, at *6 (S.D. Cal. Jan. 31, 2018) (granting the defendants' motion to compel arbitration after finding the plaintiff was "knowingly attempting to exploit the terms of the [contract] and simultaneously avoid the arbitration clause"); *Boucher v. All. Title Co.*, 127 Cal. App. 4th 262, 272–73 (2005) ("plaintiff's claims against defendant are intimately founded in and intertwined with the . . . agreement; therefore, he is equitably estopped from avoiding arbitration of his causes of action against defendant."); *see also Griswold v. Coventry First LLC,* 762 F.3d 264, 271–72 (3d Cir. 2014); *Int'l Paper Co., v. Schawbedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir. 2000) ("To allow [a plaintiff] to claim the benefit of the contract while simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.").

---

[15] Notably, this case holds that a plaintiff is precluded from arguing an arbitration provision is unconscionable when that very plaintiff sues to enforce the contract within which the arbitration provision is found.

By suing StubHub now to enforce the refund terms of the User Agreement, Plaintiffs concede that they were on notice of, assented to, agreed to be bound by, and performed under the terms of the User Agreement, including the valid and binding arbitration and class action waiver provisions. Thus, Plaintiffs admit that the User Agreement is valid and binding and that this case is truly a case concerning damages for breach of a valid contract that must be resolved in arbitration.

### D.   Plaintiffs Must Arbitrate Their Causes of Action On An Individual Basis.

The Supreme Court has made clear that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010); *see also Epic Sys. Corp. v. Lewis,* 138 S.Ct. 1612, 1623 (2018) (enforcing class action waiver because "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating class wide arbitration procedures without the parties' consent"); *Eshagh v. Terminix Int'l Co.,* 588 Fed. Appx. 703, 704 (9th Cir. 2014).

As mentioned above, the StubHub User Agreement arbitration provision contains an express class action waiver.  *See supra*, at II.E.  Because Plaintiffs agreed to the User Agreement and its arbitration provision by registering and/or purchasing on StubHub, and because none of the Plaintiffs ever opted out of the arbitration agreement, the class action waiver applies and prohibits litigating their causes of action as a class action in either this Court or in arbitration.

StubHub anticipates that Plaintiffs may allege that *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), prohibits sending their causes of action to arbitration under California law because they purport to seek public injunctive relief as their remedy.  But, on its terms, *McGill* does not apply to bar arbitration of Plaintiffs' causes of action because *McGill* does not apply where individuals seek monetary relief disguised as a public injunction.

*McGill* does not alter the outcome here for at least three reasons.  First, the thrust of the CAC is Plaintiffs' request for alleged money damages in the form of refunds resulting from StubHub's alleged breach of the User Agreement and a prior version of its refund term.  (*See* CAC at 78–80.) Plaintiffs want a refund for their tickets to remedy a harm that occurred solely in the past and that is not, in any way, continuing into the future.  Plaintiffs attempt to disguise, clandestinely, their request

for refunds as public injunctive relief by claiming they seek to enjoin StubHub to "honor its longstanding refund policy" and to prevent it from lawfully modifying the terms of the User Agreement in the future or prevent it from using its FanProtect Guarantee logo without corrective advertising.  (*Id.* ¶ 15.)  That is clearly not enough.  *McGill* only potentially applies where an injunction seeks to avoid "future injury" as opposed to remedying past harm.  *McGill*, 2 Cal. at 955; *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900–01 (N.D. Cal. 2018); *see also C2 Educational Sys., Inc., v. Lee*, 2018 WL 3328143 (N.D. Cal. July 6, 2018) (denying injunctive relief where only past harm occurred with no likelihood of future harm).  Plaintiffs do not, however, allege any future harm here that will occur to them or the public at-large if StubHub is permitted to continue to advertise using its valid FanProtect Guarantee logo and refund policy as it is written or as modified in the future, pursuant to the terms of the User Agreement.

Simply stated, the CAC seeks injunctive relief as a thinly veiled maneuver to try to avoid arbitration.  This exact tactic was exposed by StubHub in a similar action recently dismissed in *Ajzenman*.  There, Judge Fischer currently held that the dispute was between StubHub and "a limited group of people" and was "limited in time," since there were no allegations that tickets to the "cancelled" events at issue were still being sold.  2020 WL 6037140 at *7–8.  Judge Fischer also correctly held that *McGill* did not apply where there, like it does not apply here, when plaintiffs' requests for public injunctive relief are "vague . . . add[ing] nothing more than is already required by law."  *Id.* at *7.  It is no surprise that the only references to an injunction in the CAC are a boilerplate demand in the prayer for relief and a conclusory allegation in purported support of the injunction.[16]

---

[16] The CAC also includes a meritless prayer for relief challenging StubHub's intellectual property rights in the FanProtect Guarantee trademark.  That argument lacks any basis in law and fact, and therefore borders on an FRCP 11 violation.  Trademarks are governed by federal law.  *See* 15 U.S.C. § 1114.  Not one of the 31 causes of action alleged in the voluminous CAC even asserts a claim under federal law, which is dispositive.  *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 n.10 (9th Cir. 1999) (explaining that where federally registered trademark has become incontestable, its validity and legal protectability, as well as registrant's ownership therein, are all conclusively presumed, subject to certain defenses).  In addition, the Complaint does not offer any basis to challenge the trademark on the merits.  The quoted language from the FanProtect Guarantee (CAC ¶ 13) does not even mention the word "refund," and does not promise refunds at any time—let alone in perpetuity as Plaintiffs try to contend.  There is nothing to enjoin in this case.  *See U.S. Patent & Trademark Office v. Booking.com B. V.*, 140 S. Ct. 2298,

1    Plaintiffs do not even allege that they requested refunds or that StubHub refused to issue the

2    requested refunds to them for cancelled events that were not rescheduled.  Even so, no public

3    injunction is needed to remedy past harm.  *See Magana*, 343 F. Supp. 3d at 900–01; *Beserra v. Allied*

4    *Ins.*, 2015 WL 12826456, at *1 (C.D. Cal. June 30, 2015) (explaining that amounts expended to

5    comply with an injunction are considered damages if they are the "functional equivalent" of

6    compensation for past harm); *Guadalupe Police Officer's Ass'n v. City of Guadalupe*, 2011 WL

7    13217671, at *4 (C.D. Cal. Mar. 29, 2011) ("An injunction or declaration cannot redress a past harm;

8    only damages can.").  The Court should ignore Plaintiffs' strategic pleading tactics.  *See Sponheim*

9    v. *Citibank, NA.,* 2019 WL 2498938, at *4 (C.D. Cal. June 10, 2019) (holding that purported public

10   injunctive relief claims did not fall within the ambit of *McGill* and granting motion to compel

11   arbitration); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753 (Ct. App. 2019), *review*

12   *denied* (Nov. 13, 2019) (finding plaintiff's UCL claim was arbitrable where it was "immediately

13   evident" he sought private, not public injunctive relief as he alleged).

14   The second reason *McGill* is inapposite is that "[r]elief that has the primary purpose or effect

15   of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly

16   situated to the plaintiff—does not constitute public injunctive relief."  *Clifford*, 38 Cal. App. 5th at

17   754.  This civil action is a private dispute between StubHub and its individual customers about

18   refunds pursuant to a contract; it does not apply to the public as a whole, nor does it even apply to all

19   StubHub users.  Plaintiffs do not allege how a private dispute between StubHub and its customers

20   can be elevated to one for "public injunctive relief."  The *Ajzenman* court held *McGill* did not apply

21   to similar allegations artfully pled as seeking public injunctive relief related to ticket refunds, finding

22   any benefit to the public would be "merely incidental."  2020 WL 6037140, at *6–7 ("Merely

23   requesting relief which would generally enjoin a defendant from wrongdoing does not elevate

24   requests for injunctive relief to requests for <u>public</u> injunctive relief.") (emphasis in original).)

25   Plaintiffs' allegations attempting to invoke public injunctive relief over a private breach of contract

26

27

28   2302 (2020) ("The owner of a mark on the principal register enjoys 'valuable benefits,' including a
presumption that the mark is valid."); *see also* <u>https://uspto.report/TM/85281779</u>.

1    dispute are conclusory and therefore insufficient, and any purported public injunctive relief would

2    be "merely incidental" to their real goal:  to receive money damages for breach of contract.  *See*

3    *Colopy v. Uber Techs. Inc.*, 2019 WL 6841218, at *2–3 (N.D. Cal. Dec. 16, 2019); *Johnson v. JP*

4    *Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018) ("Merely requesting

5    relief which would generally enjoin a defendant from wrongdoing does not elevate requests for

6    injunctive relief to requests for public injunctive relief.").

7        Third, Plaintiffs should be estopped from their attempts to invoke *McGill* and their pleading

8    of "public injunctive relief" to avoid the class action waiver in the StubHub User Agreement because

9    Plaintiffs are suing to enforce that very User Agreement.  (CAC ¶¶ 6, 15, 19–74, 187–190.)  Again,

10   Plaintiffs cannot sue to exploit the favorable portions of the User Agreement and simultaneously turn

11   their back on, through pleading gamesmanship, the arbitration provision that they find unfavorable.

12   *See Murphy*, 724 F.3d at 1229; *Airtourist*, 2018 WL 3069444, at *3; *Larson*, 2006 WL 2567873, at

13   *7; *Bentley*, 2020 WL 3639660, at *3; *Sherwood Mktg. Grp., LLC*, 2018 WL 672515, at *5; *Boucher*,

14   127 Cal. App. 4th at 272–73.

15       **E.    The Court Should Dismiss Plaintiffs' Complaint In Its Entirety.**

16       Where, as here, "an arbitration clause is broad enough to cover all of a plaintiff's claims, the

17   court may compel arbitration and dismiss the action."  *See Hopkins & Carley, ALC v. Thomson Elite*,

18   2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011).  An order dismissing Plaintiffs' Complaint, rather

19   than an order merely staying the proceedings, is particularly appropriate here.

20       Even if portions of Plaintiffs' causes of action are somehow not waivable or arbitrable under

21   *McGill*, at most, *McGill* requires only that the action be stayed pending arbitration of Plaintiffs'

22   causes of action for monetary relief.  *See Eiess v. USAA Federal Savings Bank*, 404 F. Supp. 3d 1240,

23   1261 (N.D. Cal. 2019) (staying request for public injunctive relief pending the arbitration of

24   plaintiff's UCL and CLRA claims).  In exercising its discretion to stay a proceeding pending

25   arbitration, a court must consider: "the possible damage which may result from the granting of a stay,

26   the hardship or inequity which a party may suffer in being required to go forward, and the orderly

27   course of justice measured in terms of the simplifying or complicating of issues, proof, and questions

28   of law which could be expected to result from a stay."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110

(9th Cir. 2005).  A stay would be appropriate here because no damage would result from the stay. Any purchases made presently using StubHub are subject to the refund policy as it currently stands. Moreover, certain legal or factual issues may be simplified through arbitration, such as whether the FanProtect Guarantee is misleading as Plaintiffs allege.  Continuing forward with the litigation and arbitration simultaneously may result in conflicting determinations of these issues, causing inequity to both parties.  The Court should therefore exercise its discretion and stay any non-arbitrable causes of action pending arbitration of Plaintiffs' causes of action seeking monetary relief.  *See* 9 U.S.C. § 3 (where the court finds "that the issue involved in [a] suit or proceeding is referable to arbitration under . . . an agreement," it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

## V.       CONCLUSION

For the foregoing reasons, StubHub respectfully requests that this Honorable Court compel arbitration of all the claims in the CAC on an individual basis.  StubHub further seeks an order dismissing this litigation or, in the alternative, staying any claims for public injunctive relief.

Dated: February 12, 2021                         Respectfully submitted,


_____
William P. Donovan, Jr. (SBN 155881)
Daniel R. Campbell (pro hac vice)
Emilie E. O'Toole (pro hac vice)
MCDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com
dcampbell@mwe.com
eotoole@mwe.com

*Counsel for Defendant StubHub, Inc.*

**Appendix A**

| Last Name | First Name | Registration Date[17] | Date of Purchase | Event Date |
|---|---|---|---|---|
| Abeyta | Brian | 9/18/2019 | 9/18/2019 | 3/21/2020 |
| Andersen | Don | 5/2/2018 | 2/25/2020 | 6/4-7/2020 |
| Avalos | Anabel | 12/18/2019 | 12/18/2019 | 3/14/2020 |
| Burkhardsmeier | Josiah | 9/12/2019 | 9/12/2019 | 3/12/2020 |
| Burshteyn | Fiana | 3/26/2019 | 10/4/2019 | 3/15/2020 |
| Carroll | Brendan | 1/9/2020 | 1/9/2020 | 3/19/2020 |
| Cook | Deanna | 3/29/2014 | 2/12/2020 | 8/22/2020 |
| Dahl | David | 4/19/2010 | 2/20/2020 | 7/18/2020 |
| Davis | Crystal Ashley | 9/27/2018 | 2/25/2020 | 4/10/2020 |
| Delgado Rivera | Adjani Janvie | 8/13/2015 | 2/29/2020 | 3/16/2020 |
| Dominguez | Hazel | 3/6/2020 | 3/6/2020 | 3/12/2020 |
| Dwyer | Dennis | 3/15/2020 | 3/15/2020 | 6/11/2020 |
| Ebeling | Amy | 2/18/2020 | 2/18/2020 | 7/16/2020 |
| Fattori | Anthony | 1/11/2020 | 1/11/2020; 7/24/2020 | 4/29/2020; 6/23/2021 |
| Fogg | Matthew | 2/2/2020 | 2/2/2020 | 7/25–26/2020 |
| Glaspey | Ernie | 2/14/2020 | 2/15/2020 | 3/12/2020 |
| Gobaleza | Angelo | 1/6/2020 | 1/6/2020 | 4/10–12/2021 |
| Gomez | Dianna | 10/5/2019 | 10/5/2019; 10/6/2019 | 4/5/2020 |
| Goodacre | Emma | 8/12/2020 | 2/9/2020 | 8/7/2020 |
| Gordils | Yolanda | 10/18/2012 | 12/13/2019 | 3/19/2020 |
| Green | Sheila | 11/2/2019 | 2/4/2020 | 7/16/2020; 7/8/2020 |
| Gren | Teresa | 2/18/2020 | 2/18/2020 | 9/20/2020 |
| Gutierrez | Amy | 6/11/2020 | 3/7/2020 | 3/12/2020 |
| Hansen | Anjora | 4/9/2015 | 1/29/2020; 2/12/2020 | 4/2/2020; 3/26/2020 |
| Harris | Jim | 12/10/2012 | 2/16/2020 | 3/28/2020 |
| Huante | Richard | 6/1/2015 | 5/10/2020 | 8/27/2020 |
| Hudson | Scot | 12/29/2019 | 12/29/2019 | 6/21/2020 |
| Kenna | Bob | 9/15/2017 | 12/19/2019 | 5/15/2020 |
| Knight | Brittany | 2/21/2020 | 2/21/2020 | 3/15/2020 |
| Koble | Paul | 5/8/2020 | 5/8/2020 | 11/8/2020 |
| Kruger | Kenneth | 4/26/2008 | 1/6/2020 | 4/10–12/2021 |
| Kushner | Brett Allison | 10/7/2018 | 10/3/2019 | 3/20/2020 |
| Lively | Jennifer | 11/16/2019 | 11/16/2019 | 4/10/2020 |
| Lym-Murphy | Laura | 1/13/2020 | 1/13/2020 | 6/20/2020 |

[17] For Plaintiffs who purchased as guests and are not registered users, the Purchase Date is shown here.

| Markwalder | Conrad | 10/25/2019 | 2/13/2020 | 8/7/2020 |
|---|---|---|---|---|
| Matlock | Amanda | 8/17/2017 | 12/14/2019 | 5/10/2020 |
| McDaniel | Reginald | 3/5/2003 | 2/14/2020 | 8/1/2020 |
| McKenzie | Brittany | 7/13/2015 | 2/25/2020 | 4/25/2020 |
| McMillan | Matthew | 5/10/2016 | 3/4/2020 | 3/20/2020 |
| Metz | Julie | 3/7/2020 | 3/7/2020 | 9/29/2020 |
| Mignault | William | 7/23/2007 | 12/20/2019 | 6/21/2020 |
| Molidor | Lisa | 10/8/2013 | 1/17/2020 | 3/20/2020 |
| Moore | Brian | 4/5/2014 | 2/24/2020 | 5/24/2020 |
| Morales | Katherine | 6/13/2014 | 3/5/2020 | 4/2/2020 |
| Moran Sandoval | Alexia | 2/6/2020 | 2/6/2020 | 4/10–12/2021 |
| Moyer | Casey | 2/4/2020 | 2/4/2020 | 3/14/2020 |
| Reaggs | Michael | 11/24/2019 | 1/30/2020 | 4/5/2020 |
| Reese Cooper | Candace | 3/6/2020 | 3/4/2020; 3/6/2020 | 3/28/2020; 3/29/2020 |
| Risch | Bonnie Lee | 2/15/2020 | 2/16/2020 | 11/6/2020 |
| Schiefer | Adam | 1/6/2020 | 1/6/2020 | 4/10–12/2021 |
| Thomas | Jeff | 12/24/2019 | 12/24/2019 | 8/25/2020 |
| Ward | Gary | 3/5/2020 | 3/5/2020 | 6/20/2020 |
| Weaver | Derrick | 9/26/2017 | 3/6/2020 | 5/12/2020 |
| Williams | Jennifer | 4/1/2010 | 3/7/2020 | 3/18/2020 |
| Wood | Stephanie | 10/4/2019 | 10/4/2019 | 3/20/2020 |
| Wutz | Benjamin | 9/30/2016 | 2/3/2020; 2/11/2020 | 6/25–28/2020; 5/15–17/2020 |

DEFENDANT STUBHUB, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND MEM. OF POINTS AND AUTHS. IN SUPPORT