Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Tiasha Palikovic (*pro hac vice*)
Steven L. Wittels (*pro hac vice*)
J. Burkett McInturff (*pro hac vice*)
**WITTELS MCINTURFF PALIKOVIC**
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

Henry J. Kelston (*pro hac vic* pending)
**AHDOOT & WOLFSON, PC**
125 Maiden Lane, Suite 5C
New York, NY 10038
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
hkelston@ahdootwolfson.com

Andrew W. Ferich (*pro hac vice*)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Rd., Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

*Plaintiffs' Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE STUBHUB REFUND LITIGATION | Case No. 4:20-md-02951-HSG |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT STUBHUB, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, STAY PROCEEDINGS** |
| | Judge: Hon. Haywood S. Gilliam, Jr.<br>Date: April 15, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2 |

**TABLE OF CONTENTS**

Pages

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND: PLAINTIFFS' CLAIMS .......................................................... 2

III.   BACKGROUND: RELEVANT PROVISIONS OF THE STUBHUB USER
       AGREEMENT AND UNILATERAL CHANGES OVER TIME ............................ 3

       A.    Relevant Provisions in the StubHub User Agreement Effective June 1, 2015 ........ 3

       B.    Relevant Changes in the User Agreement Effective September 21, 2017 ............. 5

       C.    The StubHub User Agreement Effective October 1, 2018 ...................................... 6

       D.    The StubHub User Agreement Effective March 25, 2020 ...................................... 8

IV.    LEGAL STANDARD .......................................................................................... 9

V.     ARGUMENT ...................................................................................................... 9

       A.    The Arbitration Provision and Class Action Waiver Are Invalid Because They
             Prohibit Public Injunctive Relief ........................................................................ 9

             1.    *McGill* and its progeny prohibit pre-dispute waivers of the right to public
                   injunctive relief in any forum. ................................................................ 9

             2.    The *McGill* Rule bars StubHub's arbitration clause and class action waiver
                   as to the California statutory claims. ................................................... 11

             3.    Plaintiffs seek clearly defined public injunctive relief. ............................ 12

             4.    Plaintiffs' California statutory claims should be severed from arbitration
                   and remain in Court. ............................................................................ 14

       B.    StubHub Fails to Carry Its Burden to Establish the Existence of a Valid
             Agreement to Arbitrate .................................................................................... 15

             1.    If Plaintiffs are bound by any version of the User Agreement, it is the
                   version of the UA in effect when they opened their accounts. ................. 15

             2.    The "Poison Pill" in the UA invalidates the arbitration clause for all users
                   who established StubHub accounts before October 1, 2018 ..................... 18

             3.    StubHub fails to establish that Plaintiffs who opened accounts prior to
                   April 2019 were given notice of the User Agreement. ............................. 19

             4.    StubHub customers who made purchases as "Guests" did not assent to
                   StubHub's User Agreement. ................................................................. 20

       C.    StubHub's Arbitration Agreement Is Unconscionable ......................................... 22

             1.    The arbitration, class action, and severability clauses in the UA present
                   an extreme degree of procedural unconscionability. ............................... 22

             a.    The arbitration clause and class waiver are oppresive adhesion contracts. 22

             b.    StubHub customers do not receive adequate notice of the User
                   Agreement, resulting in surprise. ......................................................... 23

             c.    StubHub's terms are incomprehensible, presenting a high degree
                   of procedural unconscionability. .......................................................... 24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
4:20-MD-02951-HSG

2.     The arbitration and class waiver provisions are substantively
       unconscionable. ...................................................................................... 28

D.     Should the Court Compel Arbitration of Any Claims, This Action Should be
       Stayed, Not Dismissed, as to the Remaining Claims. ............................................. 29

VI.    CONCLUSION ........................................................................................................ 30

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
4:20-MD-02951-HSG

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Ajzenman v. Office of Comm'r of Baseball*,
No. CV 20-3643 DSF (JEMx), 2020 WL 6037140 (C.D. Cal. Sept. 14, 2020)................13, 14

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ...........................................................................................22, 23, 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................27

*Berman v. Freedom Fin. Network, LLC*,
No. 18-CV-01060-YGR, 2020 WL 5210912 (N.D. Cal. Sept. 1, 2020) ..................................20

*Beserra v. Allied Ins.*,
No. CV 14-3325-DSF (Ex), 2015 WL 12826456 (C.D. Cal. June 30, 2015) .........................14

*Big Picture Grp. LLC v. Pate*,
No. CV 14-00569 DMG (SHx), 2014 WL 12567171 (C.D. Cal. June 17, 2014) ...................9

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019) .................................................................................*passim*

*Bryant v. State Farm Mut. Auto. Ins. Co.*,
No. 20-CV-04669-SK, 2021 WL 711495 (N.D. Cal. Jan. 13, 2021) ....................................22

*C2 Educational Sys., Inc., v. Lee*,
No. 18-cv-02920-SI, 2018 WL 3328143 (N.D. Cal. July 6, 2018) ......................................14

*Carbajal v. CWPSC, Inc.*,
245 Cal. App. 4th 227 (2016) ...........................................................................................22

*Castillo v. CleanNet USA, Inc.*,
358 F. Supp. 3d 912 (N.D. Cal. 2018)...................................................................................9

*Cintron v. Universal Underwriters Grp.*,
601 A.2d 1051 (Del. Super. Ct. 1990).................................................................................26

*Clifford v. Quest Software Inc.*,
38 Cal. App. 5th 745 (2019) .............................................................................................14

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 2d 17 (N.D. Cal. 2019)...................................................................................24

*Davis v. Moroney*,
857 F.3d 748 (7th Cir. 2017) ............................................................................................26

*Davis v. TWC Dealer Grp., Inc.*,
41 Cal. App. 5th 662 (2019) .........................................................................................22, 27

*Dean Witter Reynolds, Inc. v. Super. Ct.*,
211 Cal. App. 3d 758 (1989) ............................................................................................23

- iii -

*Delisle v. Speedy Cash,*
    818 F. App'x 608 (9th Cir. 2020) ......................................................................... 10

*Deras v. Roberts,*
    309 Or. 410 (1990) ................................................................................................ 26

*Dist. Council 16 Int'l Union of Painters and Allied Trades v. LML Enters., Inc.,*
    No. C 13-565 SI, 2013 WL 3802903 (N.D. Cal. July 18, 2013) ............................ 30

*Dornaus v. Best Buy Co., Inc.,*
    No. 18-cv-04085-PJH, 2019 WL 632957 (N.D. Cal. Feb. 14, 2019) ............... 11, 30

*Douglas v. United States Dist. Court for the Cent. Dist. of Cal.,*
    495 F.3d 1062 (9th Cir. 2007) ............................................................... 17, 18, 19

*Eiess v. USAA Fed. Sav. Bank,*
    404 F. Supp. 3d 1240 (N.D. Cal. 2019) ................................................................ 11

*Guadalupe Police Officer's Ass'n v. City of Guadalupe,*
    No. CV 10-8061, 2011 WL 13217671 (C.D. Cal. Mar. 29, 2011) .......................... 14

*Ingle v. Circuit City Stores, Inc.,*
    328 F.3d 1165 (9th Cir. 2003) ........................................................................ 18, 29

*In re E.O.,*
    188 Cal. App. 4th 1149 (2010) .............................................................................. 25

*Lomeli v. Midland Funding*, LLC,
    No. 19-CV-01141-LHK, 2019 WL 4695279 (N.D. Cal. Sept. 26, 2019) ............... 20

*Lotsoff v. Wells Fargo Bank, N.A.,*
    No. 18-cv-2033, 2019 WL 4747667 (S.D. Cal. Sept. 30, 2019) ............................ 11

*Magana v. DoorDash, Inc.,*
    343 F. Supp. 3d 891 (N.D. Cal. 2018) .................................................................. 14

*McArdle v. AT&T Mobility LLC,*
    772 F. App'x 575 (9th Cir. 2019) ......................................................................... 10

*McGill v. Citibank, N.A.,*
    2 Cal. 5th 945 (2017) ..................................................................................*passim*

*McGovern v. U.S. Bank, N.A.,*
    No. 18-CV-1794-CAB-LL, 2020 WL 4582687 (S.D. Cal. Aug. 10, 2020) ............ 11

*Momot v. Mastro,*
    652 F.3d 982 (9th Cir. 2011) .................................................................................. 9

*Moule v. United Parcel Serv. Co.,*
    No. 1:16-CV-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) .................. 18

*Nghiem v. Dick's Sporting Goods, Inc.,*
    No. SACV 16-00097-CJC (DFMx), 2016 WL 9131962 (C.D. Cal. 2016) ............ 24

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ........................................................................ 23, 24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
4:20-MD-02951-HSG

*OTO L.L.C. v. Kho*,
    14 Cal. App. 5th 691 (2017) ................................................................................................27

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111 (2019) ....................................................................................27, 28, 29

*Peterson v. Lyft, Inc.*,
    No. 16-CV-07343-LB, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ................................29

*Phila. Indem. Ins. Co. v. Tryon*,
    502 S.W.3d 585 (Ky. 2016)..................................................................................................26

*Ramirez-Baker v. Beazer Homes, Inc.*,
    636 F. Supp. 2d 1008 (E.D. Cal. 2008) ...............................................................................18

*Rodman v. Safeway Inc.*,
    125 F. Supp. 3d 922 (N.D. Cal. 2015)..................................................................................24

*Roling v. E*Trade Sec., LLC*,
    756 F. Supp. 2d 1179 (N.D. Cal. 2010)................................................................................17

*Shivkov v. Artex Risk Sols., Inc.*,
    974 F.3d 1051 (9th Cir. 2020) ...............................................................................................9

*Shultz v. TTAC Publ'g, LLC*,
    No. 20-CV-04375-HSG, 2020 WL 6937818 (N.D. Cal. Oct. 26, 2020)..............................21

*Smith v. Dunn*,
    No. 2:19-CV-927-ECM, 2021 WL 433189 (M.D. Ala. Feb. 8, 2021)..................................25

*Snarr v. HRB Tax Grp.*,
    No. 19-17441, 2020 WL 7249334 (9th Cir. Dec. 9, 2020) ..................................10, 12, 13, 15

*Snow v. Eventbrite, Inc.*,
    No. 3:20-CV-03698-WHO, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) ..........................22

*Solorio v. ABC Phones of N.C., Inc.*,
    No. 20-cv-01051 NONE JLT, 2021 WL 363680 (E.D. Cal. Feb. 3, 2021) ..........................30

*Sponheim* v. *Citibank, NA.,*
    No. CV 19-264 JVS (ADSx), 2019 WL 2498938 (C.D. Cal. June 10, 2019)........................14

*Stanfield v. Tawkify, Inc.*,
    No. C-20-07000-WHA, 2021 WL 391309 (N.D. Cal. Feb. 3, 2021)....................................28

*Tillage v. Comcast Corp.*,
    772 F. App'x 569 (9th Cir. 2019) .........................................................................................10

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014).............................23

*Union Pac. R.R. v. Chi., Milwaukee, St. Paul & Pac. R.R.*,
    549 F.2d 114 (9th Cir. 1976) ................................................................................................17

*Vasquez v. Libre by Nexus, Inc.*,
    No. 17-cv-00755-CW, 2018 WL 5623791 (N.D. Cal. Aug. 20, 2018) ..................................11

*Weber v. Amazon.com*,
No. CV 17-8868-GW (Ex), 2018 WL 6016975 (C.D. Cal. June 4, 2018) ............................21

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ............................................................................................23

*Zeif v. Cintas Corp. No 2*,
No. CV 13-00413 JVS (JPRx), 2013 WL 12147757 (C.D. Cal. Apr. 15, 2013) ....................30


**Statutes**

9 U.S.C.
§§ 1, *et seq* ..........................................................................................................................9
§ 3 ........................................................................................................................................29

505 Ill. Comp. Stat.
§ 17/20(a)(4) ......................................................................................................................26

Cal. Bus. & Prof. Code
§§ 17200, *et seq.* ..............................................................................................................10
§§ 17500, *et seq.* ..............................................................................................................10

Cal. Civ. Code
§ 1670.5(a) ........................................................................................................................22
§§ 1750, *et seq.* ................................................................................................................10
§ 3513 ................................................................................................................................12

C.R.S.
10-16-107.3(1)(a) (2018) ................................................................................................26

S.C. Code Ann.
§ 34-29-166 (2006) ..........................................................................................................26


**Other Authorities**

Uri Benoliel & Shmuel I. Becher,
*The Duty to Read the Unreadable*, 60 B.C. L. Rev. 2255 (2019), ....................................25, 26

*What Happens When you Click 'Agree'?*,
N.Y. Times (Jan. 23, 2021) ..............................................................................................25

## I.    INTRODUCTION

Defendant Stubhub, Inc.'s ("StubHub") Motion to Compel Arbitration or, in the Alternative, Stay Proceedings (ECF No. 39) (the "Motion" or "Mot.") should be denied on any one of the following multiple grounds.

*First*, as to all 56 Plaintiffs, the arbitration agreement and class action waiver in StubHub's User Agreement ("UA") that Defendant attempts to enforce (as well as every available prior version of that agreement) contains a prohibition against public injunctive relief, which is squarely against California's public policy and not enforceable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017), *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), and their progeny. As a result, Plaintiffs cannot be compelled to arbitrate their California statutory claims, and these claims should remain in this Court in their entirety.

*Second*, the arbitration agreements in the UA prior to October 1, 2018 included a "poison pill" provision, which provided that if any part of the UA's class action waiver is found invalid or unenforceable – as in this case with respect to the prohibition on public injunctive relief, which is unlawful pursuant to *McGill* – the entire arbitration provision is null and void. Of the 56 Plaintiffs, 22 registered for StubHub before October 1, 2018. Therefore, those 22 Plaintiffs cannot be compelled to arbitrate *any* of their claims. Unilateral changes StubHub made to its UA after October 1, 2018, including changes to the arbitration and severability provisions, did not bind Plaintiffs who had already established their accounts because StubHub failed to notify Plaintiffs of those changes.

*Third,* as to the 24 Plaintiffs who established their StubHub accounts prior to April 2019, there is no evidence that the notification that purchasing or signing into StubHub signified that "you agree to [the] user agreement" was on the "Sign up" or "Sign in" screens. Accordingly, these Plaintiffs did not agree to the UA when they registered, and it cannot be enforced against them.

*Fourth*, as to the 10 Plaintiffs who never opened StubHub accounts and purchased their tickets as "Guests" on the StubHub website, StubHub fails to provide information about the actual screens encountered by these Plaintiffs; however, a review of StubHub's current website reveals that visitors purchasing as Guests do not receive adequate notice that, by making a purchase, they will become contractually bound by StubHub's UA.

*Finally*, the arbitration, class action waiver, and severability provisions in StubHub's UA are unconscionable in the extreme because, *inter alia*, they lack mutuality, and they are objectively incomprehensible, as evidenced by two well-accepted measures of readability. As such, these terms should not be enforced against *anyone*.

## II.    BACKGROUND: PLAINTIFFS' CLAIMS

For at least fourteen years, StubHub—which calls itself the "world's largest ticket marketplace"—built its brand around its much-touted "FanProtect ™ Guarantee," which promised that consumers would receive a full cash refund if an event is canceled after the consumer bought tickets on StubHub.[1] StubHub made this promise prominently in multiple places on its website where it was uniformly observed by every one of the millions of people who then purchased tickets on the site. In a congressional hearing on February 26, 2020, StubHub's Vice President and General Counsel, testified that "StubHub's FanProtect Guarantee is the hallmark of our business." On March 8, 2020, StubHub emailed its users, confirming that they could receive full refunds for a cancelled event and reassuring them that "StubHub is here for you."

However, just a few weeks later, when the global COVID 19 pandemic began to cause large numbers of event cancellations, StubHub abruptly and retroactively changed its cash refund policy and began refusing consumers the refunds long-promised by the FanProtect™ Guarantee. Instead, StubHub began offering coupons (subject to an expiration date) for future purchases on its website. This classic "bait and switch" was a betrayal of StubHub's customers, and it exacerbated the financial hardships consumers were already suffering in the wake of the pandemic.

To address this wrongdoing, Plaintiffs bring common law causes of action for conversion, restitution, negligent misrepresentation, unjust enrichment and breach of contract, and statutory claims under the consumer protection laws of California and other states where Plaintiffs reside. In addition to monetary damages, Plaintiffs seek robust injunctive relief on behalf of themselves, class members, and the general public, including *inter alia*, (i) prohibiting StubHub from making further retroactive material changes to its FanProtect™ Guarantee; (ii) prohibiting StubHub from making any

---

[1] The facts recited herein are as alleged in Plaintiffs' Consolidated Class Action Complaint (ECF No. 36) (the "CCAC").

prospective material changes to its FanProtect<sup>TM</sup> Guarantee that differ from the original pre-COVID terms and conditions; (iii) requiring StubHub to disseminate clear corrective advertising effectively informing the public that the FanProtect<sup>TM</sup> Guarantee no longer means a money-back guarantee; (iv) prohibiting StubHub from continuing to use the FanProtect<sup>TM</sup> Guarantee phrase, logo, or trademark; and (v) requiring StubHub to provide notice to the public of its rescission of the FanProtect<sup>TM</sup> Guarantee. Without public injunctive relief, StubHub continues these unlawful practices, and continues to sell tickets to events that may be canceled, rescheduled or postponed in the future due to the ongoing pandemic, as well as other reasons.

### III. BACKGROUND: RELEVANT PROVISIONS OF THE STUBHUB USER AGREEMENT AND UNILATERAL CHANGES OVER TIME

StubHub relies *only* on the provisions of its current UA, which took effect on March 25, 2020, while failing to advise the Court that the current UA varies from earlier versions in respects that are central to this case. Despite the fact that 32 Plaintiffs opened their StubHub accounts prior to March 25, 2020, StubHub simply ignores the User Agreements that were in effect when they registered.

The relevant sections of the StubHub User Agreement as amended in 2015, 2017, 2018 and 2020 are provided here for reference. The significance of particular clauses and specific changes made over time are discussed in detail in Section V, *infra*. The full User Agreements effective in 2015, 2017 and 2018 are attached as Exhibits B, C and D to the Declaration of Henry J. Kelston ("Kelston Decl."), filed concurrently herewith.[2]

#### A. Relevant Provisions in the StubHub User Agreement Effective June 1, 2015

**StubHub, Inc. User Agreement**

\* \* \*

We may periodically make changes to this Agreement (indicated by the date above), which will be posted on the Site and become effective fifteen (15) days following posting for current users, or immediately for new users. Your continued use of the Site indicates your acceptance of the changes to the Agreement.

---

[2] The User Agreements as amended in 2015, 2017, 2018 and 2020 were submitted as exhibits to the Declaration of Todd Northcutt in Support of StubHub's Motion to Compel Arbitration in *Ajzenman v. Office of the Commissioner of Baseball*, No. 20-cv-3643-DSF-JEM, ECF No. 69 (C.D. Cal. July 8, 2020). The Northcutt Declaration in *Ajzenman* is Exhibit A to the Kelston Dec. *See* Plaintiffs' Request for Judicial Notice, filed concurrently herewith. The 2020 version of the UA (only) is also attached as Exhibit A to Mr. Northcutt's Declaration in support of StubHub's Motion to Compel presently before the Court ("Northcutt Decl.").

\* \* \*

**PLEASE BE ADVISED: SECTION 7 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST STUBHUB ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**

**1. USING STUBHUB**

**TICKET MARKETPLACE.**

StubHub is a marketplace that allows users to buy ("Buyers") and sell ("Sellers") tickets, related passes and merchandise or other goods (collectively, the "tickets") for events.

\* \* \*

**YOUR ACCOUNT.**

You  must create an account to list, sell or purchase tickets and you must have a valid credit card or debit card on file.

\* \* \*

**EVENT CANCELLATIONS, POSTPONEMENT, AND OTHER EVENT CHANGES.**

**Cancellation**: If an event is cancelled or a contingent event (e.g. playoff game) does not occur, we will remove the relevant listings and email you about the cancellation. The Buyer will receive a full refund and the Seller will, if he received payment, be charged the amount he received for the original sale.

\* \* \*

**7. AGREEMENT TO ARBITRATE LEGAL DISPUTES WITH STUBHUB.**

**You and StubHub each agree that any and all disputes or claims that have arisen or may arise between you and StubHub relating in any way to or arising out of this or previous versions of the User Agreement, your use of or access to StubHub's Site or Services, or any tickets or related passes sold or purchased through StubHub's Site or Services shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.**

(a) Prohibition of Class and Representative Actions and Non-Individualized Relief

**You and StubHub agree that each of us may bring claims against the other only on an individual basis and not as a plaintiff or class action member in any purported class or representative action or proceeding . Unless both you and StubHub agree otherwise, the arbitrator may not consolidate or join more than one person's or party's claims and may not otherwise preside over any form of a consolidated, representative, or class proceeding. Also, the arbitrator may award relief (including monetary, injunctive, and declaratory relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that party's individual claim(s). Any relief awarded cannot affect other StubHub users.**

\* \* \*

(d) Severability

With the exception of any of the provisions in subsection (a) of this Agreement to Arbitrate ('Prohibition of Class and Representative Actions and Non-Individualized Relief), if an arbitrator or court decides that any part of this Agreement to Arbitrate is invalid or unenforceable, the other parts of this Agreement to Arbitrate shall still apply. If an arbitrator or court decides that any of the provisions in subsection (a) of this Agreement to Arbitrate ('Prohibition of Class and Representative Actions and Non-Individualized Relief) is invalid or unenforceable, then the entirety of this Agreement to Arbitrate shall be null and void. The remainder of the User Agreement will continue to apply.

\* \* \*

(f) Future Amendments to the Agreement to Arbitrate
Notwithstanding any provision in the User Agreement to the contrary, you and we agree that if we make any amendment to this Agreement to Arbitrate (other than a change to any notice address or website link provided herein) in the future, that amendment shall not apply to any claim that was filed in a legal proceeding between you and StubHub prior to the effective date of the change. The amendment shall apply to all other disputes or claims governed by the Agreement to Arbitrate that have arisen or may arise between you and StubHub. We will notify you of amendments to this Agreement to Arbitrate by posting the amended terms on http://www.StubHub.com at least thirty (30) days before the effective date of the amendments and by sending notice via email to your email address on file with us. If you do not agree to the amended terms, you may close your account within the thirty (30) day period and you will not be bound by the amended terms.

\* \* \*

**StubHub FanProtect<sup>TM</sup> Guarantee** …
**If the event is cancelled or postponed:**
If an event is cancelled and not rescheduled, we will provide you with a full refund (including any fees and shipping/handling charges). We will notify you that the event was cancelled and provide instructions on how to obtain the refund.

## B.      Relevant Changes in the User Agreement Effective September 21, 2017

**1. Global User Agreement** …
We may periodically make changes to this User Agreement and shall notify you by posting a revised version on our Site and emailing you at your registered email address or otherwise notifying you via our Site. The revised User Agreement will become effective thirty (30) days following such notice and your continued use of our Site and Services will constitute acceptance of the revised User Agreement.

\* \* \*

**FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST STUBHUB ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**

> For all users residing outside of the United States, please refer to Clause 24 for country specific additional provisions which may apply to you, based on your country of residence.
>
> *  *  *
>
> **3. Ticket marketplace**
> 3.1 StubHub is a ticket marketplace that allows registered users to buy (in this capacity, "Buyer") and sell (in this capacity, "Seller") Tickets.
>
> *  *  *
>
> **4. Your account**
> 4.1 In order to list, sell or purchase Tickets you must register an account ("Account") with StubHub.
>
> *  *  *
>
> **11. Event cancellations, postponement and other event changes**
> **11.1 Cancellation**: If an event is cancelled and not rescheduled, we will remove the event and any listings related to the event from our Site and inform both Buyer and Seller about the cancellation with further instructions.… The Buyer will receive a full refund once he has sent back the Ticket(s) (if applicable) and the Seller will not be paid.
>
> *  *  *
>
> **22. Legal Disputes**
>
> **22.1 If you reside in the United States, You and StubHub each agree that any and all disputes or claims that have arisen or may arise between you and StubHub relating in any way to or arising out of this or previous versions of the User Agreement, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non- representative) basis.** The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.
>
>> **A. Prohibition of Class and Representative Actions and Non-Individualized Relief**
>>> [No change]
>>
>> **D. Severability**
>>> [No change]
>>
>> **F. Future Amendments to the Agreement to Arbitrate**
>>> [No change]

Notably, the 2017 UA does not contain a section styled, "7. AGREEMENT TO ARBITRATE LEGAL DISPUTES WITH STUBHUB," as the previous version did. The section containing the arbitration provisions is now titled "22. Legal Disputes," further obscuring the clauses StubHub now seeks to enforce.

### C.     The StubHub User Agreement Effective October 1, 2018

> **1. Global User Agreement**
>> [No change]
> **3. Ticket marketplace**

- 6 -

[ No change]

**4. Your account**

[No change]

**11.1 Cancellation**

[No change]

**22. Legal Disputes**

**22.1 If you reside in the United States or Canada, You and StubHub each agree, except where prohibited by law, that any and all disputes or claims that have arisen or may arise between you and StubHub relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate, as the term is defined below) or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services shall be resolved exclusively through final and binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Consumer Arbitration Rules ("Rules"), rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis (together with subsections 22(A)-(F), the "Agreement to Arbitrate"). This Agreement to Arbitrate is intended to be broadly interpreted.** The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

**A. Prohibition of Class and Representative Actions and Non-Individualized Relief**

**1. Prohibition of Class and Representative Actions**

EXCEPT WHERE PROHIBITED BY LAW, YOU AND STUBHUB AGREE THAT EACH OF US MAY BRING CLAIMS PURSUANT TO THIS AGREEMENT TO ARBITRATE AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING. UNLESS BOTH YOU AND STUBHUB AGREE OTHERWISE, THE ARBITRATOR SHALL NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS, AND SHALL NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, CLASS, OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING.

**2. Non-Individualized Relief**

YOU AND STUBHUB AGREE THAT THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S). ANY RELIEF AWARDED CANNOT AFFECT OTHER USERS OR THE GENERAL PUBLIC. If a court decides that applicable law precludes enforcement of any of this paragraph's limitations as to a particular claim for relief, then subject to your and StubHub's right to appeal the court's decision, that claim (and only that claim) must be severed from the arbitration and may be brought in court. All other claims will be arbitrated.

\* \* \*

**D. Severability**

With the exception of any of the provisions in subsection A.1 of this Agreement to Arbitrate ("Prohibition of Class and Representative Actions"), if an arbitrator or court

decides that any part of this Agreement to Arbitrate is invalid or unenforceable, the other parts of this Agreement to Arbitrate shall still apply. If an arbitrator or court decides that subsection A.1 of this Agreement to Arbitrate is invalid or unenforceable, then if StubHub so elects, the entirety of this Agreement to Arbitrate shall be null and void. If a court decides that applicable law precludes enforcement of any of the provisions in subsection A.2 of this Agreement to Arbitrate ("Non-Individualized Relief") as to a particular claim for relief, then subject to your and StubHub's right to appeal the court's decision, that claim (and only that claim) must be severed from the arbitration and litigated in court. All other claims and disputes subject to arbitration under this Agreement to Arbitrate, including any and all claims for monetary damages of any kind, shall be arbitrated.

\* \* \*

**22 F. Future Amendments to the Agreement to Arbitrate**

[No change]

\* \* \*

**FanProtect<sup>TM</sup> Guarantee** …

**If the event is cancelled or postponed**

If an event is cancelled and not rescheduled, we will provide you with a full refund (including any fees and shipping/handling charges). We will notify you that the event was cancelled and provide instructions on how to obtain the refund.

## D. The StubHub User Agreement Effective March 25, 2020

**1. Global User Agreement …**

We may periodically make changes to this User Agreement and shall notify you by posting a revised version on our Site. The revised User Agreement will become effective upon publication and your continued use of our Site and Services will constitute acceptance of the revised User Agreement.

**FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST STUBHUB ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN** INDIVIDUAL BASIS.

For all users residing outside of the United States, please refer to Clause 24 for country specific additional provisions which may apply to you, based on your country of residence.

\* \* \*

**3. Ticket marketplace**

[No change]

**4. Your account**

[No change]

\* \* \*

**11. Event Cancellations, Postponement and Other Event Changes**

**11.1 Cancellation:** If an event is canceled and not rescheduled, we will remove the event and any listings related to the event from our Site and inform both Buyer and Seller about the cancellation with further instructions…. The Buyer will receive a full refund or credit for use on a future purchase, as determined in StubHub's sole discretion (unless a refund is required by law) once he has sent back the Ticket(s) (if applicable) and the Seller will not be paid.

**22. Legal Disputes**
    [No change]

**A. Prohibition of Class and Representative Actions and Non-Individualized Relief**
    [No change]

**D. Severability**
    [No change]

**F. Future Amendments to the Agreement to Arbitrate**
    [No change]

## IV.    LEGAL STANDARD

"It is the burden of the party moving to compel arbitration to prove, by a preponderance of the evidence, that a valid arbitration agreement exists." *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 928 (N.D. Cal. 2018) (citation omitted). The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, governs arbitration agreements in any contract affecting interstate commerce. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058 (9th Cir. 2020). The Court's role under the FAA is limited to determining two "gateway" questions of arbitrability: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Big Picture Grp. LLC v. Pate*, No. CV 14-00569 DMG (SHx), 2014 WL 12567171, at *4 (C.D. Cal. June 17, 2014) (citing *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011)). Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Momot*, 652 F.3d at 987 (internal quotes omitted).

## V.    ARGUMENT

### A.    The Arbitration Provision and Class Action Waiver Are Invalid Because They Prohibit Public Injunctive Relief

#### 1.    *McGill* and its progeny prohibit pre-dispute waivers of the right to public injunctive relief in any forum.

StubHub correctly anticipates Plaintiffs' reliance on *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), in which the California Supreme Court held that a mandatory arbitration provision that

- 9 -

precludes an arbitrator from issuing a public injunction is invalid and unenforceable. The *McGill* court explained that the public injunctive relief available under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL") "benefits the public directly by the elimination of deceptive practices" and the waiver of "the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve." *McGill*, 2 Cal. 5th at 955, 961 (internal quotes omitted, citing Cal. Code Civ. Proc. § 3513) (providing that "a law established for a public reason cannot be contravened by a private agreement"). *McGill* prohibits compelling Plaintiffs' California statutory causes of action to arbitration because StubHub's arbitration clause and class action waiver purport to waive Plaintiffs' right to seek public injunctive relief in any forum in connection with those claims. StubHub tries to evade *McGill's* holding by asserting that Plaintiffs are merely seeking monetary relief "disguised as a public injunction" and, thus, that *McGill* should not apply. Mot. at 19. This is incorrect. The could not be clearer in requesting robust injunctive relief on behalf of the general public. *E.g.,* CCAC ¶ 15; *see also id.* at pp. 78-80, Request for Relief.

The Ninth Circuit has repeatedly reaffirmed the "*McGill* Rule," most recently in *Snarr v. HRB Tax Grp.*, No. 19-17441, 2020 WL 7249334 (9th Cir. Dec. 9, 2020). The plaintiff in *Snarr* brought claims under the CLRA, UCL, and FAL seeking to enjoin future violations of those statutes. The Ninth Circuit upheld the district court's denial of a motion to compel arbitration where, as here, the agreement at issue stated that any relief in arbitration "must be individualized to you and will not affect any other client," in addition to waiving all representative claims in any forum. *Id.* at *1; *see also Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019) (invalidating, under *McGill*, pre-dispute waiver of public injunctive relief in any forum); *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019) (same); *McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019), *cert. denied sub nom.*, 140 S. Ct. 2827 (2020) (same); *Delisle v. Speedy Cash,* 818 F. App'x 608, 610 (9th Cir. 2020) (same). In upholding the district court's decision, the Ninth Circuit in *Snarr* observed that even general requests for public injunctive relief under the California statutes suffice to trigger *McGill*. *See Snarr*, 2020 WL 7249334, at *1 (nothing that plaintiff "seeks to *generally* enjoin future violations of

those statutes" (emphasis added)).[3]

District Courts in the Ninth Circuit have consistently applied *McGill*. *See, e.g.*, *McGovern v. U.S. Bank, N.A.,* No. 18-CV-1794-CAB-LL, 2020 WL 4582687, at *2 (S.D. Cal. Aug. 10, 2020) (public injunction waiver language "is encompassed by *McGill*, meaning that the provision is invalid and unenforceable."); *accord Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1246 (N.D. Cal. 2019); *Dornaus v. Best Buy Co., Inc.,* No. 18-cv-04085-PJH, 2019 WL 632957, at *4-5 (N.D. Cal. Feb. 14, 2019); *Vasquez v. Libre by Nexus, Inc.*, No. 17-cv-00755-CW, 2018 WL 5623791, at *4-5 (N.D. Cal. Aug. 20, 2018); *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-cv-2033, 2019 WL 4747667, at *2 (S.D. Cal. Sept. 30, 2019) (arbitration agreement unenforceable under *McGill* where it prohibited "arbitration in the interests of the general public").

### 2. The *McGill* Rule bars StubHub's arbitration clause and class action waiver as to the California statutory claims.

In contravention of *McGill*, the arbitration and class waiver provisions in the current version of the StubHub UA (on which StubHub relies) purport to waive a user's right to seek public injunctive relief in any forum. Section 22 of the UA requires StubHub users to pursue claims against StubHub in arbitration but also provides:

> YOU AND STUBHUB AGREE THAT THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) "ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S).

*See* § II.D, *supra*.[4] To avoid any possible doubt about StubHub's intent to prohibit public injunctive relief, the StubHub UA continues: "ANY RELIEF AWARDED CANNOT AFFECT OTHER USERS OR THE GENERAL PUBLIC."

This language bars the arbitrator from granting the type of broadly applicable injunctive relief

---

[3] As set forth in § V.A.3 *infra*, Plaintiffs' requested public injunctive relief is not alleged "generally" or in blanket fashion. Plaintiffs provide detailed allegations of the robust public injunctive relief they are seeking in the operative complaint.

[4] Materially identical language appeared in the 2015, 2017 and 2018 versions of the UA. *See* § II, subsections (A), (B) and (C), *supra*. StubHub states that "[t]he User Agreement has included an arbitration provision since at least 2003" (Mot. at 9) but provides the text of only the current version. For the purposes of this motion, StubHub's failure to provide earlier versions of the UA raises a reasonable inference that all versions included the language barring public injunctive relief.

that would benefit the public at large, and which the CLRA, UCL, and FAL otherwise authorize—precisely the type of language prohibited by *McGill* and its progeny.[5]

### 3. Plaintiffs seek clearly defined public injunctive relief.

Plaintiffs' claims under the CLRA, UCL, and FAL seek, *inter alia*:

> an immediate public injunction requiring StubHub to honor its longstanding refund policy, to preclude StubHub from unilaterally changing the terms of the guarantee or, alternatively, to proliferate clear, conspicuous, and extensive corrective advertising to notify consumers that the FanProtect[TM] Guarantee no longer means a cash refund, and that StubHub maintains it can change the meaning of the guarantee unilaterally at any time. Alternatively, the Court should order StubHub to stop using the FanProtect[TM] Guarantee logo and disseminate corrective advertising to the public to explain that the guarantee is no longer in effect.

CCAC ¶ 15; *see also id.* at 78-80, Request for Relief. The injunctive relief requested by Plaintiffs under the CLRA, UCL, and FAL is for the primary benefit of the general public, not Plaintiffs' or class members' individual benefit. *See id.* at 78-80, Request for Relief; *see also McGill*, 2 Cal. 5th at 951. Accordingly, "[t]here is no principled distinction to be drawn between the relief requested here and that requested in *McGill* and related California cases involving public injunctive relief." *Snarr*, 2020 WL 7249334, at *1.

The injunctive relief sought by Plaintiffs is essential to prevent future harm caused by StubHub's wrongful conduct—it is not just to address "past harm," as StubHub suggests. *See* Mot. at 21. Absent injunctive relief, StubHub will continue to deny refunds for cancelled events in violation

---

[5] StubHub's argument that Plaintiffs cannot seek to avoid the arbitration clause and class action waiver while simultaneously invoking the benefits of the FanProtect Guarantee is without merit. The UA specifically disclaims applicability of the class action waiver where the law precludes enforcement. *McGill* forbids enforcement of the provisions as to the California statutory claims. As such, Plaintiffs may sue to enforce the *lawful* terms of the User Agreement while disavowing the *unlawful* portions of it under *McGill*. Plaintiffs cannot be equitably estopped from disavowing the *McGill*-violative terms in StubHub's UA. *See Blair*, 928 F.3d at 824 (quoting *McGill*, 2 Cal. 5th at 961) ("Under [Cal. Civ. Code] § 3513, a party to a private contract may waive a statutory right only if the 'statute does not prohibit doing so, the statute's public benefit is merely incidental to its primary purpose, and waiver does not seriously compromise any public purpose that the statute was intended to serve.'"). Moreover, Plaintiffs claims based on StubHub's breach of the FanProtect Guarantee do not invoke the User Agreement. *See, e.g.,* CCAC ¶ 187 ("By representing through its prominently advertised FanProtectTM Guarantee that it would fully refund tickets to events that were subsequently canceled, StubHub formed a contract with Plaintiffs and Class members at the time they purchased tickets through StubHub.").

of the California consumer protection laws. Plaintiffs' claims thus seek public injunctive relief under those statutes and fall within the scope of *McGill*. *See, e.g., Snarr*, 2020 WL 7249334, at *1 (relief that "would affect allegedly deceptive practices that aim to lure members of the public to use and pay for [the defendant's] services, and the relief [would] benefit [plaintiff] only incidentally" constituted public injunctive relief); *McGill*, 2 Cal. 5th 945 at 951 (citation and internal quotes omitted) ("public injunctive relief . . . has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public."); *Blair,* 928 F.3d at 824 (quoting *McGill*, 2 Cal. 5th at 955) ("[P]ublic injunctions benefit 'the public directly by the elimination of deceptive practices'").[6]

StubHub's reliance on *Ajzenman v. Office of Comm'r of Baseball*, No. CV 20-3643 DSF (JEMx), 2020 WL 6037140 (C.D. Cal. Sept. 14, 2020) is misplaced. The *Ajzenman* court held that plaintiff had not sought a "public injunction" because the specific injunctive measures requested either "pertain[ed] only to a limited group of individuals—those who purchased 2020 MLB regular season tickets," was a "vague, generalized allegation that do[e]s not request public injunctive relief and adds nothing more than is already required by law," or was "unclear what [it] aims to do or how it differs from the information Stub Hub Plaintiffs will request in discovery." *Id*. at *7 (internal quotes omitted).[7]

Plaintiffs' requests for public injunctive relief here are far more specific than the requests in *Ajzenman* and the requested relief does not apply only to a limited group of individuals who already purchased tickets: rather it will protect any member of the public (whether a class member in this

[6] *See also Cottrell v. AT&T Inc*., No. 19-cv-7672-JCS, 2020 WL 2747774, at *8 (N.D. Cal. May 27, 2020) (requested injunction was for public benefit where it sought to enjoin deceptive practices aimed at the public); *Eiess*, 404 F. Supp. 3d at 1258 (requested injunction was public where relief sought to enjoin future violations of California consumer protection statutes by forcing defendant to disclose its practices of charging multiple fees).

[7] Plaintiff in *Ajzenman* requested an injunction "(i) providing full restitution to Plaintiffs and Class members including a full refund of the ticket price and all ancillary costs; (ii) enjoinment of Defendants from committing future violations of California's [CLRA and UCL]; (iii) requiring Defendants to provide an accounting of all monies obtained for 2020 MLB regular season tickets; (iv) requiring Defendants to give individualized notice to all consumers who purchased 2020 MLB regular season tickets of their rights with respect to Defendants' violations of California law; (v) requiring Defendants to provide individualized notice to each consumer of the procedures available for enforcing their rights; (vi) a prohibition on Defendants' future denials of refunds for 2020 MLB regular season tickets; and (vii) full restitution to Plaintiffs and Class Members." *Id*. at *7.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
4:20-MD-02951-HSG

action or not) who purchases tickets from StubHub in the future. Nor are Plaintiffs here making a vague, generalized allegation that adds nothing more than is already required by law. To the contrary, Plaintiffs delineate specific measures, particularized to address StubHub's continuing wrongful acts and to protect the general public from future harm.[8]

StubHub's other authorities (*see* Mot. at 20-22) are distinguishable for similar reasons, namely because they dealt with requests for injunctive relief in connection with or incidental to individual or past harms, as opposed to future harms like the ones alleged in this matter that will be suffered by the general public at the hands of StubHub. *See, e.g., Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900-01 (N.D. Cal. 2018) (plaintiff sought "injunctive relief only for *his* California Labor Code claims" (emphasis added)); *C2 Educational Sys., Inc., v. Lee*, No. 18-cv-02920-SI, 2018 WL 3328143, at *4 (N.D. Cal. July 6, 2018) ("the conduct complained of here occurred in the past"); *Beserra v. Allied Ins.*, No. CV 14-3325-DSF (Ex), 2015 WL 12826456, at *1 (C.D. Cal. June 30, 2015) (purported injunction sought "[a]mounts expended to comply with an injunction," which constituted damages, not injunctive relief for general public); *Guadalupe Police Officer's Ass'n v. City of Guadalupe*, No. CV 10-8061, 2011 WL 13217671, at *4 (C.D. Cal. Mar. 29, 2011) (finding that plaintiff specifically did not allege possibility of future harm); *Sponheim* v. *Citibank, NA.,* No. CV 19-264 JVS (ADSx), 2019 WL 2498938, at *5 (C.D. Cal. June 10, 2019) (finding request for public injunctive relief was "mere incidental benefit to [plaintiff's] primary aim of" financial compensation); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753 (2019) ("The private nature of [plaintiff's] . . . claim is immediately evident from the face of his complaint . . . . [Plaintiff's] complaint repeatedly refers to wage and hour violations directed at [plaintiff] only"). Further, all of StubHub's cited cases predate *Snarr*, which controls here. *See supra*, n.7.

### 4. Plaintiffs' California statutory claims should be severed from arbitration and remain in Court.

Since October 1, 2018, StubHub's UA has provided a carve-out stating that any claims for

---

[8] The District Court decision in *Ajzenman* predates the Ninth Circuit's decision in *Snarr*, which reaffirmed that "[u]nder California law, public injunctive relief is relief 'that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public,'" and that relief enjoining future violations of the UCL and CLRA related to pricing qualified as public injunctive relief under *McGill*. The relief Plaintiffs seek here clearly satisfies the *Snarr* standard.

which the arbitration and class action waiver are found to be unenforceable may proceed in court. The UA states:

> If a court decides that applicable law precludes enforcement of any of this paragraph's limitations as to a particular claim for relief, then subject to your and StubHub's right to appeal the court's decision, that *claim* (and only that claim) *must be severed from the arbitration and may be brought in court*.

Northcutt Decl., Ex. A at § 22(A)(2). Because *McGill* precludes enforcement of StubHub's arbitration clause and class action waiver as to Plaintiffs' CLRA, UCL, and FAL claims, those *claims*—not just the public injunctive relief remedies—must be retained for adjudication by the Court.

Considering a virtually identical severance clause in *Blair*, the Ninth Circuit rejected defendant's contention that "the severance clause carves out only the potential public injunctive remedy for these causes of action, requiring the arbitrator to adjudicate liability first," calling it an "unnatural and unpersuasive" reading of the clause. 928 F.3d at 831. The Court continued,

> The severance clause refers to "a particular claim for relief," but it then goes on to require, a few words later in the same sentence, severance of "that claim" from the arbitration in order to allow it to "be brought in court." A "claim for relief," as that term is ordinarily used, is synonymous with "claim" or "cause of action." . . . We read the clause, as did the district court, to provide that the entire claim be severed for judicial determination.

928 F.3d at 831-32. The same result is mandated by the language of StubHub's severance clause: if Plaintiffs are found to have assented to the UA at any time since October 1, 2018 (as StubHub claims they have), the operative language of the Agreement requires that their statutory claims in their entirety—must be severed from any arbitration. *See also Snarr*, 2020 WL 7249334, at *2 ("HRB's argument that the public injunctive remedy should be severed from the other remedies is also foreclosed by *Blair* . . . . [T]he entire claim under the statute must be severed from arbitration, rather than just the public injunctive remedy.").

**B.      StubHub Fails to Carry Its Burden to Establish the Existence of a Valid Agreement to Arbitrate**

**1.      If Plaintiffs are bound by any version of the User Agreement, it is the version of the UA in effect when they opened their accounts.**

As detailed *supra* at Section III, provisions of the StubHub UA that impact this litigation, both as to the merits of Plaintiffs' claims and the issue of arbitrability, changed in significant ways in

versions of the UA issued in 2015, 2017, 2018, and 2020. Forty-three of the 56 Plaintiffs registered for StubHub before March 25, 2020, the effective date of the current UA.[9] StubHub asserts that "[a]s a condition of signing up for their StubHub accounts and/or making their purchases using StubHub, Plaintiffs all agreed to the StubHub User Agreement," (Mot. at 4), yet StubHub provides none of the versions of the UA or sign-up screens in effect when most Plaintiffs signed up. Upon review, the reasons for StubHub's failure to provide these documents becomes clear: the UA in effect when many of the Plaintiffs signed up would bar arbitration entirely in this case, and the Sign-up screen  many Plaintiffs saw when they opened their accounts did not include any notification at all that opening an account or purchasing tickets would constitute assent to the UA. Thus, StubHub fails to meet its burden to show contract formation; its Motion to Compel Arbitration should be denied for this reason alone.

StubHub attempts to bury these unfavorable facts by asserting that "[a]ll Plaintiffs purchased tickets using StubHub marketplace after consenting to the current version of the arbitration clause that clearly, and lawfully, provides for the arbitration of the instant dispute on an individual basis." Mot. at 1. This is just not true.  According to StubHub, only *one* Plaintiff (Paul Koble) purchased the tickets at issue in this lawsuit after March 25, 2020, when the current version of the UA took effect. *See* Motion at App'x A. Moreover, the current version of the arbitration clause is *not* the same as in previous versions of the UA, a fact that StubHub avoids by failing to provide the earlier versions. *Compare, e.g.,* the Severability clause in the 2015 and 2017 versions of the UA (*supra* at 4-5), *with* the Severability clause in the 2018 and 2020 versions (*supra* at 7-8). Thus, there is no evidence to support StubHub's claim that "[a]ll Plaintiffs . . . consent[ed] to the current version of the arbitration clause" at any time, either before or after purchasing the tickets for which they seek refunds in this action.

---

[9] *See* Mot. at App'x A. Three Plaintiffs registered after March 25, 2020: Emma Goodacre, Amy Gutierrez, and Paul Koble. *Id*. Ten Plaintiffs never registered for StubHub at all and purchased the tickets at issue in this lawsuit as Guests (Josiah Burkhardsmeier, Brendan Carroll, Hazel Dominguez, Dennis Dwyer, Amy Ebeling, Angelo Gobaleza, Alexia Moran Sandoval, Casey Moyer, Gary Ward, and Stephanie Wood). *See* Northcutt Dec. ¶¶ 175-204.

StubHub's contention that Plaintiffs are bound by the current UA because it allows StubHub to "periodically make changes" to the UA is also wrong. The current UA states:

> We may periodically make changes to this User Agreement and shall notify you by posting a revised version on our Site. The revised User Agreement will become effective upon publication and your continued use of our Site and Services will constitute acceptance of the revised User Agreement.

See Northcutt Decl., Ex. A at § 1. However, notwithstanding the presence of this provision in the UA, StubHub cannot effect changes to the UA by posting a revised UA on its website.[10]

The Ninth Circuit has held that a provision in a company's terms of use providing for unilateral changes without notice to the other parties is unenforceable. *Douglas v. United States Dist. Court for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1066 (9th Cir. 2007) (per curiam), *cert. denied sub nom. Talk America, Inc. v. Douglas*, 552 U.S. 1242 (2008). "[A] party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so." *Id.* (citing *Union Pac. R.R. v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 549 F.2d 114, 118 (9th Cir. 1976)). "[A] revised contract is merely an offer and does not bind the parties until it is accepted . . . . And generally 'an offeree cannot actually assent to an offer unless he knows of its existence.'" *Id.* (citations and internal quotes omitted).

In *Douglas*, as here, plaintiff "could only have become aware of the new terms if he had visited [the company's] website and examined the contract for possible changes." *Id.* However, the Court wrote, "[e]ven if Douglas had visited the website, he would have had no reason to look at the contract posted there. Parties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Id.*; *see also Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1191 (N.D. Cal. 2010) ("[A] a contractual provision that allows a party to unilaterally change the terms of the contract without notice is unenforceable."). The Court further noted:

_____

[10] Directly conflicting with this provision, each version of the UA promised that StubHub would notify users of "amendments to this Agreement to Arbitrate by posting the amended terms on https://www.stubhub.com at least thirty (30) days before the effective date of the amendments and by sending notice via email to your email address on file with us." *See* "Future Amendments to the Agreement to Arbitrate" (*supra* at 5, 6, 8 and 9). Since 2017, there has been no section of the UA called "Agreement to Arbitrate." *Id.* Moreover, StubHub has not claimed – and certainly has not provided evidence – that it ever sent email notifications to users of changes in the UA.

> Nor would a party know *when* to check the website for possible changes to the contract terms without being notified that the contract has been changed and how. Douglas would have had to check the contract every day for possible changes. Without notice, an examination would be fairly cumbersome, as Douglas would have had to compare every word of the posted contract with his existing contract in order to detect whether it had changed.

*Douglas*, 495 F.3d at 1066 n.1;[11] *see also Moule v. United Parcel Serv. Co.*, No. 1:16-CV-00102-JLT, 2016 WL 3648961, at *10 (E.D. Cal. July 7, 2016) (unilateral amendment clauses not requiring prior notice of changes are unconscionable). When, as here, a provision of an agreement permits a company to unilaterally amend or terminate the agreement, even with written notice, that provision is substantively unconscionable. *See, e.g., Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003); *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1021-22 (E.D. Cal. 2008).

StubHub failed to provide notice to Plaintiffs regarding the changes to the UA on March 25, 2020 purportedly eliminating users' rights to obtain a refund for tickets to cancelled events. StubHub likewise failed to inform Plaintiffs of changes to the arbitrability and severance provisions in 2018, or any other changes prior to 2018. Plaintiffs did not assent to those changes and are not bound by them.

### 2. The "Poison Pill" in the UA invalidates the arbitration clause for all users who established StubHub accounts before October 1, 2018

Every available version of StubHub's UA has included an arbitration clause that indisputably violated the *McGill* Rule by purporting to waive users' rights to seek a public injunction. *See* § IV.A, *supra*. In addition, all available versions of the UA prior to October 1, 2018 included a "poison pill" provision stating:

> If an arbitrator or court decides that any of the provisions in subsection (a) of this Agreement to Arbitrate ('Prohibition of Class and Representative Actions and Non-Individualized Relief') is invalid or unenforceable, then the entirety of this

---

[11] StubHub purportedly notifies users of changes to the UA on its website. Even if this were true, such notification would still run afoul of *Douglas*. But, in fact, the miniscule text at the bottom of StubHub's webpage indicating a link to "User Agreement change notifications" links to the full Global User Agreement, not to change notifications. *See* www.StubHub.com (last visited March 3, 2021). Even if this notice had been seen by anyone (which is doubtful), it was woefully insufficient to notify users that the contract had been changed to bar a user from seeking public injunctive relief in arbitration, or that the severability provision of the arbitration clause had been changed, both important changes on which StubHub now relies in its attempt to force Plaintiffs to arbitrate their claims.

Agreement to Arbitrate shall be null and void. The remainder of the User Agreement will continue to apply.

*See* 2015 Terms, ¶ 7(d); *see also* 2017 Terms ¶ 22 (d). In the 2015 and 2017 versions of the UA, the intended prohibition against public injunctive relief was included in subsection (a) of the so-called Agreement to Arbitrate. Thus, the unlawful prohibition of public injunctive relief requires that the entire arbitration agreement be declared void and unenforceable.

Twenty-two Plaintiffs signed up for StubHub before October 1, 2018. See Motion at App'x A. Each of those Plaintiffs – if they assented to the UA when they opened the account, as StubHub claims – would have assented to a version of the UA in which the Agreement to Arbitrate must be declared null and void due to the "poison pill" provision. The removal of that provision in subsequent versions of the UA is irrelevant. Plaintiffs are not bound by unilateral changes to the UA. "[A] party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so." *Douglas*, 495 F.3d at 1066; *See* § V.B.1, *supra*.  Thus, the 22 Plaintiffs who established StubHub accounts before October 1, 2018 cannot be compelled to arbitrate their claims.

### 3.    StubHub fails to establish that Plaintiffs who opened accounts prior to April 2019 were given notice of the User Agreement.

To support its claim that Plaintiffs accepted the UA when they opened or signed into their StubHub accounts, StubHub avers that the "Sign up for StubHub" and "Sign in to StubHub" screens *currently* shown on the StubHub website include the statement: "By purchasing or signing in, you agree to our user agreement and privacy notice." Mot. at 4-5. StubHub does not state whether this statement appeared on the "Sign in" and "Sign up" screens when Plaintiffs opened their StubHub accounts and provides no screen shots of the screens Plaintiffs actually saw.

However, the Northcutt Declaration states that at least some of the relevant screens did not include the "By purchasing or signing in" statement until April 2019. Northcutt Decl., ¶ 18. Twenty-four Plaintiffs signed up for StubHub before April 2019. *See* Mot. at App'x A. The Northcutt Declaration raises significant questions of fact as to whether those Plaintiffs received any notice at all of the terms of the UA, including the arbitration provision.

"A court should grant the motion to compel arbitration only "when there is no genuine issue

of material fact concerning the formation of an arbitration agreement." *Lomeli v. Midland Funding*, LLC, No. 19-CV-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019). There is, at the very least, an issue of fact here regarding which Plaintiffs were on notice of the UA when they registered for StubHub and purportedly accepted its terms including the arbitration provisions. StubHub's motion fails for this reason alone.

### 4. StubHub customers who made purchases as "Guests" did not assent to StubHub's User Agreement.

According to StubHub, 10 Plaintiffs never registered for StubHub at all and purchased the tickets at issue in this lawsuit as Guests. *See* Northcutt Dec. ¶¶ 175-204. StubHub claims that "Plaintiffs that purchased tickets as guests agreed to arbitrate their causes of action when they checked out and were presented with the same notification quoted above regarding their acceptance of the User Agreement." Mot. at 14. StubHub is wrong. Under well-established law governing the formation of online contracts, Plaintiffs who purchased on StubHub as Guests were not put on notice that by purchasing tickets they would be accepting the terms of the UA.

StubHub contends that "Plaintiffs that checked out as a guest . . . were notified of and assented to the StubHub User Agreement during the checkout and purchase process." Mot. at 5. This purported assent occurred when the site visitor encountered a screen offering an option to "Continue as guest," and the statement: "By purchasing or signing in, you agree to our user agreement[.]" *Id*. StubHub ignores two highly inconvenient facts. First, by clicking "Continue as guest," the visitor was not "purchasing or signing in" and was, therefore, not assenting to the UA. Notably, the visitor was not told that by "continuing as guest" or "by proceeding past this page" they would be agreeing to the UA. *See Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1, 2020), *reconsideration denied*, No. 18-CV-01060-YGR, 2020 WL 6684838 (N.D. Cal. Nov. 12, 2020) ("Although the user must interact with the page and click a button to continue using it, that click is completely divorced from an expression of assent to the Terms & Conditions or to mandatory arbitration.").[12]

---

[12] Further, the UA is ambiguous as to its applicability to Guests. For example, it states: "FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE[.]"*See* §§ III.B, III.C, III.D, *supra*. But a Guest is, by definition, not a User. It also provides that in order to purchase tickets "you

Second, the notice that the visitor would be agreeing to the UA by purchasing tickets was at least five screens removed from the screen on which a "Buy now" button would allow the visitor to actually purchase tickets. Neither the "Buy now" screen nor any of the intervening screens included any reference or hyperlink to the StubHub UA.[13]

Courts reject motions to compel arbitration where the supposed notice of the agreement to arbitrate is not in sufficient proximity to the button by which the visitor is claimed to have assented to the agreement. For example, in *Weber v. Amazon.com*, No. CV 17-8868-GW (Ex), 2018 WL 6016975, at *11 (C.D. Cal. June 4, 2018), the court found that a user was not put on constructive notice of the terms of use where a webpage contained an initial "Place your Order" button at the top of the page with a disclosure above it, but then the user had to fill out several sections of vital information below, after which the user was presented with a second "Place Your Order" button. This second button did not include a disclosure nearby, and plaintiff pressed this second button, rather than scrolling up to the top to press the first. *Id.* In the present case, the "Buy now" button was five screens removed from the disclosure and none of the intervening screens included a disclosure of the UA. Plaintiffs who purchased tickets as Guests were not on notice of, and are not bound by, the StubHub UA because "the design and content of the checkout process distract[ed] users from recognizing the existence of, and need to review" the User Agreement. *Shultz v. TTAC Publ'g, LLC*, No. 20-CV-04375-HSG, 2020 WL 6937818, at *4 (N.D. Cal. Oct. 26, 2020) (Gilliam, J.).

> Whether a particular website reasonably communicated the existence of the terms is a fact-intensive inquiry that depends on the design and content of the website and the agreement's webpage. As a result, courts have examined, among other aspects of the website and agreement, the visibility and obviousness of the notice of assent.

*Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2020 WL 6135990, at *4 (N.D. Cal. Oct. 19, 2020) (citation and internal quotes omitted). Here, StubHub has provided no evidence on which the

---

must create [or register] an account ('Account') with StubHub." *See* §§ III.A, III.B, III.C, III.D. This provision clearly excludes Guests, who purchase tickets without establishing a StubHub account.

[13] Screenshots of the "Continue as guest" screen and the five subsequent screens culminating in the "Buy now" screen are attached Exhibit E to the Kelston Declaration. The screens in the Guest checkout flow do not even include the microscopic link that StubHub touts as constituting notice of agreement to the UA at the bottom of its homepage. *See* Mot. at 7.

Court can find that the website reasonably communicated to the Plaintiffs who purchased tickets as Guests that their purchase would create a binding contract with StubHub.

### C. StubHub's Arbitration Agreement Is Unconscionable

Under California law, both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable, but "they need not be present in the same degree.'" *Bryant v. State Farm Mut. Auto. Ins. Co.*, No. 20-CV-04669-SK, 2021 WL 711495, at *4 (N.D. Cal. Jan. 13, 2021). The Court evaluates the presence of procedural and substantive unconscionability on a "sliding scale." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* Courts may find a contract as a whole "or any clause of the contract" to be unconscionable." *Id.* (quoting Cal. Civ. Code § 1670.5(a)).

Because StubHub's arbitration and class waiver clauses are both procedurally and substantively unconscionable, they cannot be enforced.

#### 1. The arbitration, class action, and severability clauses in the UA present an extreme degree of procedural unconscionability.

"Procedural unconscionability addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise . . . ." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 243 (2016) (internal quotes omitted). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . . . . Surprise involves the extent to which the terms of the bargain are hidden in a prolix printed form drafted by a party is a superior bargaining position." *Davis v. TWC Dealer Grp., Inc.*, 41 Cal. App. 5th 662, 671 (2019) (citation and internal quotes omitted).

##### a. The arbitration clause and class waiver are oppressive adhesion contracts.

StubHub's User Agreement is a one-sided contract of adhesion. Plaintiffs and other StubHub customers had no meaningful opportunity to negotiate the terms of StubHub's User Agreement, including the arbitration and class action waiver provisions. *See Armendariz*, 24 Cal. 4th at 88 (citation omitted) ("The term, contract of adhesion, signifies a standardized contract, which, imposed and

drafted by the party of superior bargaining strength, relegates the subscribing party only the opportunity to adhere to the contract or reject it."); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *15 (N.D. Cal. June 25, 2014) (rejecting arbitration clause drafted by defendant "(who has superior bargaining strength relative to consumers) and presented as a take-it-or-leave-it agreement, giving consumers no opportunity to negotiate any terms."). That options other than StubHub may exist for customers does not mitigate the UA's adhesiveness. *See Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 769 (1989) (rejecting defendant's argument against adhesion "that the contract was not adhesive because [an] accountholder had the option of going to various other brokerage houses to accomplish his ends." (citation and internal quotes omitted)).

### b. StubHub customers do not receive adequate notice of the User Agreement, resulting in surprise

Contrary to StubHub's assertion (Mot. at 12), StubHub customers do not receive a meaningful opportunity to review the User Agreement.

StubHub claims that a "notification" at the bottom of its website home page and other pages put Plaintiffs on notice of the terms of the UA. That notification (shown in ¶ 16 of the Northcutt Declaration out of context and much magnified from its miniscule size on the website[14]), declaring that "use of this website" signifies agreement to the UA, is an unenforceable "browsewrap" agreement that courts routinely reject. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177-79 (9th Cir. 2014) "[C]ourts will not enforce agreements where the terms are 'buried at the bottom of the page or tucked away in obscure corners of the website'" *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220-21 (9th Cir. 2019). The notification further fails to bind Plaintiffs because it is not a prompt to take any affirmative action to manifest notice – by the time a site visitor could possibly see the notice, they are already engaged in "use of the website." *See Nguyen*, 763 F.3d at 1178-79.

StubHub also makes the highly illogical claim that Plaintiffs' receipt of emails confirming their ticket purchases, and including a link to the UA, somehow constituted Plaintiffs' acceptance of the UA. Not only were the emails sent after the transaction was completed, but they also did not include any prompt to take affirmative action to demonstrate assent to the terms. *See id.*

---

[14] The actual size of the notification may be seen at www.stubhub.com.

Moreover, the hyperlinks to the UA on StubHub's sign-in/guest checkout webpage are not conspicuous and do not provide adequate notice to customers, creating a significant level of surprise. As discussed *supra*, the notice of StubHub's terms is in small font below the sign-in tool, is not underlined, and the hyperlinked text to the UA is not a noticeably different shade of coloring.

In *Colgate v. JUUL Labs, Inc.*, the Court held a nearly identical attempt to notify consumers of terms of use to be inadequate. 402 F. Supp. 3d 728, 765–66 (N.D. Cal. 2019). In that case, hyperlinks purporting to notify customers of terms that were simply a different color from surrounding text but not underlined or different font size, "without more," were not enough to provide notice. *Id.* The *JUUL Labs* Court recognized that "[c]ourts have found more conspicuous hyperlinks to be insufficient." *Id*. at 764-65 (collecting cases). The purported notice and sign-in wrap on StubHub's website is strikingly similar to the notice that was found inadequate in *JUUL Labs.* The outcome here should be no different than in that case.

In any event, the analysis of the adequacy of notice of the UA is a "highly fact-specific inquiry that looks to 'the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design.'" *Rodman v. Safeway Inc*., 125 F. Supp. 3d 922, 945 (N.D. Cal. 2015). (internal citation omitted); *see also Nghiem v. Dick's Sporting Goods, Inc*., No. SACV 16-00097-CJC (DFMx), 2016 WL 9131962, at *3 (C.D. Cal. 2016). StubHub has not presented sufficient information for the Court to determine that adequate notice was given to any of the Plaintiffs in this case and has failed to meet its burden of establishing contract formation, compelling denial of this Motion.

### c. StubHub's terms are incomprehensible, presenting a high degree of procedural unconscionability.

It is widely acknowledged that most companies' online user agreements are impenetrable to all but a small number of highly educated and extremely persistent consumers. As the New York Times Editorial Board recently observed:

> Because corporations and their lawyers know most consumers don't have the time or wherewithal to study their new terms, which can stretch to 20,000 words — about the length of Shakespeare's "Julius Caesar" — they stuff them with opaque provisions and lengthy legalistic explanations meant to confuse or obfuscate.

*What Happens When you Click 'Agree'?*, N.Y. Times (Jan. 23, 2021).[15] The Editorial Board then posed this question: "Contracts are, in theory, meant to be mutually agreeable. How can they be if they're designed so consumers cannot understand them?" The answer is: they cannot.

StubHub's arbitration and class action waiver provisions are procedurally unconscionable because, under well-established tests measuring readability, they are so opaque and legalistic as to be far beyond the comprehension of the average consumer.

StubHub's arbitration clause and class waiver are unreadable under the well-accepted Flesch Reading Ease (FRE) test and Flesch-Kincaid (F-K) test.[16] The FRE test is based on average sentence length and average number of syllables per word, and scores text on a scale of 0-100, with higher scores indicating greater readability. Text intended for consumers should score 60 or higher.[17] The F-K test is based on the average number of words per sentence and syllables per word.[18] The F-K test produces a score that estimates the grade level required to read text, with a recommended score of 8th grade reading level (i.e., a score of 8) for consumer-oriented texts.[19] These tests are arithmetic calculations – their application does not require expertise, linguistic or otherwise.

This Court can look to these tests in deciding whether readability concerns with StubHub's terms present issues of procedural unconscionability. Numerous courts have referred to readability tests (including the Flesch tests) in assessing the extent to which documents or text are readable. *See, e.g., In re E.O.*, 188 Cal. App. 4th 1149, 1158 (2010) (use of online readability tester demonstrates that challenged language corresponds to average grade level of 28.68 years, but using court's language resulted in 7.72 reading level, confirming that "[c]larity is possible even where the concept is complex."); *Smith v. Dunn*, No. 2:19-CV-927-ECM, 2021 WL 433189, at *2 (M.D. Ala. Feb. 8, 2021) (plaintiff alleged that election form with 15.6 score on the F-K scale "is that of an academic paper[ ] and considered college level reading."); *Davis v. Moroney*, 857 F.3d 748, 752 (7th Cir. 2017) (calling

---

[15] https://www.nytimes.com/2021/01/23/opinion/sunday/online-terms-of-service.html (last visited Mar. 19, 2021).

[16] Uri Benoliel & Shmuel I. Becher, *The Duty to Read the Unreadable*, 60 B.C. L. Rev. 2255 (2019), available at https://lawdigitalcommons.bc.edu/bclr/vol60/iss8/2 (last visited Mar. 1, 2021).

[17] *Id.* at 2272-73.

[18] *Id.* at 2274.

[19] *Id*. at 2274-75.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
4:20-MD-02951-HSG

the FRE test "a helpful heuristic that correlates well with difficulty" and opining that interrogatories scoring two or three grade levels above the plaintiff's reading level meant that plaintiff "needs a lawyer desperately").[20]

The F-K test has been used by the U.S. Department of Defense as its standard readability test[21] and is used in numerous statutes aimed at ensuring the readability of documents intended for consumers.[22] The wide acceptance of these tests is also indicated by the inclusion of the tests as a standard feature in Microsoft Word. [23]

StubHub's arbitration clause and class action waiver are extreme examples of unreadable provisions. Using the regular readability testing feature in Microsoft Word, the mandatory arbitration provision in StubHub's current UA (Section 22.1) scores a remarkable 0 on the FRE scale and Grade Level 29.1 on the F-K test (reflecting the fact that the section consists of two sentences, the first of which is 163 words long). Section 22(A), containing the prohibitions of class action waiver and public injunctive relief, scores 23.9 on the FRE scale and Grade Level 18.2 on the F-K test. The Severability provision (Section 22D) scores 15.7 on the FRE scale and Grade Level 21.8 on the F-K test. Ironically, the paragraph StubHub placed on the first page of the User Agreement, ostensibly to notify users about the arbitration provisions in Section 22, scores 19.1 on the FRE scale and Grade Level 21 on the F-K test.[24] Obviously, these clauses are far beyond the comprehension of the average consumer,

---

[20] *See also Phila. Indem. Ins. Co. v. Tryon*, 502 S.W.3d 585, 594–95 (Ky. 2016) (Wright, J., dissenting) (judge used an online readability tool in evaluating readability of an insurance policy and found that it "would be much more difficult for the average American to read and understand than the majority believes."); *Cintron v. Universal Underwriters Grp.*, 601 A.2d 1051, 1056 n.4 (Del. Super. Ct. 1990), *aff'd*, 586 A.2d 1203 (Del. 1990) (referring to, although not basing its decision upon, Flesch readability test in evaluating readability of insurance policy); *Deras v. Roberts*, 309 Or. 410 (1990) (addressing plaintiff's contention that ballot title failed to comply with statutory readability standard under Flesch formula).

[21] *See* Uri Benoliel & Shmuel I. Becher, *The Duty to Read the Unreadable*, 60 B.C. L. Rev. 2255, 2276 (2019).

[22] *See, e.g.*, 505 Ill. Comp. Stat. § 17/20(a)(4) (production contracts); S.C. Code Ann. § 34-29-166 (2006) (credit life insurance); C.R.S. 10-16-107.3(1)(a) (2018) (health benefit plans).

[23] *See* https://support.microsoft.com/en-us/topic/get-your-document-s-readability-and-level-statistics-85b4969e-e80a-4777-8dd3-f7fc3c8b3fd2?ui=en-us&rs=en-us&ad=us (last visited Mar. 1, 2021).

[24] Screenshots of these tests are attached as Exhibits F through I of the Kelston Declaration.

requiring comprehension levels above even graduate-level education. Simply stated, the average consumer cannot understand StubHub's arbitration, class waiver and severability provisions.

In contrast, the email StubHub sent its users in March 2020, confirming the availability of refunds for cancelled events, scores 63.5 on the FRE scale and Grade 7.6 on the F-K test, within the recommended levels for consumer communications. *See* Kelston Decl., Ex. J. Clearly, StubHub knows how to write comprehensible text for its users when it wants them to understand the content (perhaps especially when StubHub wants to remind its users about a promise it will abruptly renege on just few weeks later).

California courts recognize that arbitration agreements "'drafted and composed in a manner . . . to thwart rather than promote understanding'" can create a "'degree of procedural unconscionability [that is] extraordinarily high.'" *Davis,* 41 Cal. App. 5th at 672 (quoting *OTO L.L.C. v. Kho*, 14 Cal. App. 5th 691, 708–709 (2017); *see also OTO, L.L.C. v. Kho,* 8 Cal. 5th 111, 128 (2019) *cert. denied*, 141 S. Ct. 85, 207 L. Ed. 2d 170 (2020)  (finding high degree of procedural unconscionability where "[t]he substance of the agreement is . . . opaque;" and "sentences are complex, filled with . . . legal jargon."). The high level of unreadability associated with StubHub's arbitration and class action waiver provisions can only be intended to thwart consumer understanding, and thus deprives consumers of their right to a jury trial without providing actual notice of the terms, making those terms procedurally unconscionable.

Determining whether Plaintiffs raise a plausible claim that StubHub's arbitration, class waiver, and severance clauses are unconscionable due to their incomprehensibility is a "context-specific task, requiring the reviewing court to draw on its judicial  experience and common sense." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The issue at hand is not whether these clauses can be parsed and understood by lawyers and judges who have spent years deconstructing such clauses, but whether the clauses are written so that the ordinary consumer buying tickets to a concert or sporting event has a reasonable chance of understanding them.

At the very least, the level of unreadability creates an issue of fact as to unconscionability of those clauses, making a determination of whether StubHub's terms are enforceable inappropriate at this stage without the benefit of discovery and possibly expert testimony.

### 2. The arbitration and class waiver provisions are substantively unconscionable.

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO*, 8 Cal. 5th at 125. "Substantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive." *Id*. at 130.

Indeed, while both are required, procedural and substantive unconscionability "need not be present in the same degree," and

> [e]ssentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.

*Armendariz*, 24 Cal. 4th at 114. "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*.

StubHub's User Agreement is substantively unconscionability due to the non-mutuality of the arbitration agreement and class action waiver. Most egregiously, the arbitration provision in Section 1 of the UA states:

> FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT.

This provision, which requires only "YOU" – the user – to submit claims to arbitration creates sufficient substantive unconscionability on its own to warrant denial of StubHub's Motion. *See, e.g., Stanfield v. Tawkify, Inc*., No. C-20-07000-WHA, 2021 WL 391309, at *4 (N.D. Cal. Feb. 3, 2021) (denying motion to compel arbitration where the "arbitration requirement was a one-way street – only the user promised to arbitrate."). But the StubHub UA lacks mutuality in other clauses as well.

For example, Section 22.D of the User Agreement, pertaining to severability, provides that if the arbitration agreement is invalid or unenforceable, the entirety of the arbitration agreement can be nullified "if StubHub so elects." Section 1 and Section 22.F (the latter of which is part of the arbitration section) provide StubHub with a unilateral right to amend the terms of User Agreement, including

specifically the agreement to arbitrate. StubHub's unilateral right to amend terms presents at least some substantive unconscionability. *See Peterson v. Lyft, Inc.*, No. 16-CV-07343-LB, 2018 WL 6047085, at \*5 (N.D. Cal. Nov. 19, 2018) (observing that Lyft's right to unilaterally modify arbitration provision "presents mild substantive unconscionability"); *Ingle*, 328 F.3d at 1179 (provision affording defendant unilateral power to modify contract was substantively unconscionable, even if it did not make contract unconscionable as a whole). [25]

As discussed above, there is a significant level of procedural unconscionability present in StubHub's User Agreement—most pertinently, in its arbitration and class waiver provisions. Applying a sliding scale analysis, even a low degree of substantive unconscionability in StubHub's terms would warrant non-enforcement of the terms. *See, e.g., OTO, L.L.C.*, 8 Cal. 5th 130 ("given the substantial procedural unconscionability here, even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable.").

Because StubHub's arbitration and class action waiver provisions present both procedural unconscionability (to a great extent) and substantive unconscionability (to a lesser extent), the Court should not enforce these provisions as against Plaintiffs.

**D.** **Should the Court Compel Arbitration of Any Claims, This Action Should be Stayed, Not Dismissed, as to the Remaining Claims.**

The Court should reject StubHub's request for dismissal of this case in its entirety (Mot. at 22-23) and, instead, adopt an alternative approach (which StubHub also advocates for in its brief): staying any parts of this action not compelled to arbitration (*see id.*).

The FAA explicitly permits a stay of proceedings pending arbitration. 9 U.S.C. § 3. Specifically, the FAA provides that if a court decides that a suit or proceeding "is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such

---

[25] It bears noting, in this context, that the unilateral changes StubHub has imposed in the UA have all been to StubHub's benefit, not the benefit of its users. For example, the severability clause was changed in 2018 to eliminate the "poison pill" provision, a change on which StubHub presently relies in trying to compel Plaintiffs to arbitrate their claims. In 2020, Paragraph 1 was changed to remove language providing that StubHub would notify users of changes to the UA "by emailing you at your registered email address." And, of course, in 2020, the UA was changed to eliminate the guarantee that users would receive refunds for tickets purchased to events that were cancelled.

arbitration has been had." *Id.*; *see also Dist. Council 16 Int'l Union of Painters and Allied Trades v. LML Enters., Inc.*, No. C 13-565 SI, 2013 WL 3802903, at *1 (N.D. Cal. July 18, 2013).

Courts in the Ninth Circuit have confirmed that "the better approach is to stay," rather than dismiss, an action pending arbitration. *See, e.g.*, *Zeif v. Cintas Corp. No 2*, No. CV 13-00413 JVS (JPRx), 2013 WL 12147757, at *4 (C.D. Cal. Apr. 15, 2013); *see also Solorio v. ABC Phones of N.C., Inc.*, No. 20-cv-01051 NONE JLT, 2021 WL 363680, at *18 (E.D. Cal. Feb. 3, 2021) (recommending stay pending arbitration, and noting that other circuits "adopt[] the view that a stay is the most reasonable approach rather than a dismissal" because dismissal would be "wasteful" and "inconsistent 'with principles of judicial economy'").

As discussed herein, the arbitration agreement will not be enforceable as to at least some of Plaintiffs' claims, namely their claims brought under California's consumer protection laws seeking public injunctive relief. *See* § V.A, *supra*. StubHub anticipates and all but acknowledges as much. Mot. at 19, 22. This Court may retain jurisdiction over any claims that it determines are not subject to arbitration. *See, e.g.*, *Dornaus v. Best Buy Co.*, No. 18-CV-04085-PJH, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019). However, should the Court order arbitration on any of Plaintiffs' claims, it should stay rather than dismiss this action. *See id.* at *7. Staying this action and retaining jurisdiction over any claims sent to arbitration would preserve judicial resources, as it would allow, for example, the Court to facilitate post-arbitration issues that may arise, e.g., a dispute over StubHub's promise to pay filing and arbitrator fees in arbitration. This Court should follow this "better approach." *Zeif*, 2013 WL 12147757, at *4.

## VI. CONCLUSION

For all of the foregoing reasons, Defendant StubHub, Inc.'s motion should be denied in its entirety.

Respectfully submitted,

Dated: March 19, 2021

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500

Burbank, California 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Henry J. Kelston (*pro hac vic* pending)
**AHDOOT & WOLFSON, PC**
125 Maiden Lane, Suite 5C
New York, NY 10038
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
hkelston@ahdootwolfson.com

Andrew W. Ferich (*pro hac vice*)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Rd., Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Tiasha Palikovic (*pro hac vice*)
Steven L. Wittels (*pro hac vice*)
J. Burkett McInturff (*pro hac vice*)
**WITTELS MCINTURFF PALIKOVIC**
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Plaintiffs' Interim Co-Lead Counsel*