| | |
|---|---|
| Tina Wolfson (SBN 174806) | William P. Donovan, Jr. (SBN 155881) |
| Theodore W. Maya (SBN 223242) | Daniel Campbell (*pro hac vice*) |
| Bradley K. King (SBN 274399) | Emilie O'Toole (*pro hac vice*) |
| **AHDOOT & WOLFSON, PC** | **MCDERMOTT WILL & EMERY LLP** |
| 2600 West Olive Avenue, Suite 500 | 2049 Century Park East |
| Burbank, California 91505 | Suite 3200 |
| Telephone: (310) 474-9111 | Los Angeles, CA 90067-3206 |
| Facsimile: (310) 474-8585 | Telephone: (310) 277-4110 |
| twolfson@ahdootwolfson.com | Facsimile: (310) 277-4730 |
| tmaya@ahdootwolfson.com | wdonovan@mwe.com |
| bking@ahdootwolfson.com | dcampbell@mwe.com |
| | eotoole@mwe.com |

Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
**WITTELS MCINTURFF PALIKOVIC**
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Attorneys for Defendant StubHub, Inc.*

*Plaintiffs' Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re StubHub Refund Litigation | CASE NO. 4:20-md-02951-HSG |
| | **STIPULATED ORDER GOVERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| | Judge: Hon. Haywood S. Gilliam, Jr. |
| | Courtroom: 2—4th Floor |

1. **PURPOSE**

   This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"), and any other applicable orders and rules. All disclosures and productions made pursuant to this Stipulated Order Governing Discovery of Electronically Stored Information ("ESI Protocol") are subject to any Protective Order or other Orders entered in this matter. The parties further acknowledge that all disclosures and productions made pursuant to this ESI Protocol are limited to use only in this litigation.

2. **PRESERVATION**

   Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or control. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   (a) Parties shall preserve non-duplicative discoverable information currently in their possession, custody or control. This stipulation does not relieve a party of its obligations to preserve earlier- or later-created ESI if a party is aware of ESI that is likely to contain relevant and discoverable information.

   (b) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved, but not searched, reviewed, or produced unless agreed by the parties or ordered by the Court: All backup systems, disaster recovery or archive media which may contain discoverable ESI that is not otherwise available.

   (c) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve, collect, process, review and/or produce the following:

   1. Deleted, slack, fragmented, or unallocated data only accessible by forensics.
   2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
   3. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

4. Dynamic fields in databases or log files not stored or retained in the usual course of business.

5. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment that was not used by identified custodians, other than non-custodial document sources identified pursuant to 3(c).

(d) As additional data sources are identified as a result of investigation and/or discovery, the parties may identify additional data sources that may or may not need to be searched or preserved pursuant to the foregoing. The parties will meet and confer about preserving such ESI as any additional data sources are identified.

(e) Counsel for Plaintiffs has advised that Plaintiffs have been instructed on their preservation obligations.

(f) Counsel for Defendant has advised that Defendant has been instructed on its preservation obligations.

3. <u>CUSTODIANS</u>

Within ten (10) business days of the entry of this ESI Order, the parties will exchange in writing: (a) the types and locations of ESI they believe should be preserved; (b) a list of custodians, including current and former employees, likely to have relevant information, including job title, dates of employment, and brief description of the job duties of each individual; (c) a list of non-custodial document sources likely to contain relevant information; (d) a general description of the default time periods for preservation for the categories of data in (a); and (e) a description of any potentially relevant ESI data sources that the party is aware of having been lost or destroyed, and a description of the circumstances of such loss or destruction. At the request of either party, the parties shall meet and confer in order to add or remove custodians and non-custodial sources as reasonably necessary.

4. <u>SEARCH</u>

(a) Within ten (10) business days of the entry of this ESI Order, the parties will exchange in writing a list of search terms for searching custodian and non-custodial sources identified. At the request of either party, the parties shall meet and confer to add or remove search terms or to discuss,

if applicable, other methodologies or parameters to be used for culling or searching the files from those custodians, prior to the conduct of such culling or searching, such as Technology Assisted Review.

    (b)    ESI, including, but not limited to electronic files and email, shall be collected for each individual custodian from the personal computers and phones, network resources, and other electronic devices that those individuals use for work purposes, including mobile devices, regardless of who owns the device.

    (c)    The parties recognize that they are obligated to interview custodians to identify potential locations where responsive documents are likely to reside and identify any communication applications or channels the custodian has used to communicate about work-related issues. The Parties will produce any such relevant and responsive, non-privileged documents regardless of whether such documents contain any of the agreed-upon search terms.

    (e)    The parties reserve the right to seek ESI from additional custodians and non-custodial sources and, if search terms are utilized, additional search terms, identified through discovery. Nothing herein shall be construed as discharging a party's duties under Fed. R. Civ. P. 26 and 34 in connection with the search for and production of responsive documents.

    (f)    The parties will meet and confer on sampling/testing procedures and validation statistics to validate search methodologies employed by the parties. In the event that the parties are unable to reach agreement, they will submit a joint statement outlining any areas of dispute to the Hon. Judge Haywood S. Gilliam, Jr. for resolution.

    (g)    Nothing in this Order shall be construed or interpreted as precluding a producing party from performing a responsiveness or privilege review to determine if documents captured by search terms are in fact relevant to the requesting party's request and discoverable.

    (h)    The parties acknowledge that there may be circumstances where modification to a previously agreed upon search protocol may be warranted. Should such an instance arise, the parties agree to meet and confer about methods to search ESI if either party requests such a meet and confer. If a party requests such a meet and confer, the parties will meet and confer within seven days.

5.  PRODUCTION FORMATS

(a) Defendant agrees to produce documents in the formats described in Appendix 1 to this Order.  If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.  The parties also recognize that in some instances where documents have been produced in a form other than native, or in black-and-white, subsequent production of the same documents in native form or in color may be warranted for certain purposes.  The parties agree not to degrade the searchability of documents as part of the document production process.

(b) Plaintiffs' counsel shall produce ESI in PDF or such other reasonably useable format that retains the relevant characteristics of the original document.  Native files shall be produced for Excel or other spreadsheets or database formats as outlined in Appendix 1. Any document that requires redaction shall be produced in image format, e.g., TIFF or PDF.  All of Plaintiffs' production documents shall be uniquely named and sequentially numbered with Bates Stamps. For email families in Plaintiffs' productions, any parent-child relationships should be preserved.  Email attachments should be consecutively produced with the parent email record. Defendants may request metadata or other information for any document produced. If such a request is made, the Parties shall reasonably confer about an alternative production format for such document, including the necessity for such alternative production format.  Any such request by a Defendant shall be specific and targeted.

(c) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

6.  DE-DUPLICATION AND EMAIL THREADING

(a) Each party must de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the family level) across Custodians in the manner prescribed in Appendix 1.

(b) To the extent that deduplication is used, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of

deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial.

(c) Due to the importance of the metadata in prior or lesser-included emails contained in whole or in part in a most-inclusive email, and in order to facilitate reasonable evidentiary use of emails, production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No document shall be withheld from production on the basis that it is included in a produced more-inclusive email. The Producing Party may, at its discretion, elect to review only the most inclusive email thread in determining the responsiveness of the prior or lesser-included emails or for any other internal purpose.

7. AUTHENTICITY

Documents produced to a party to this action by another party or a third party in response to compulsory process (e.g., subpoena, government agency investigative subpoena or Court order), or a document request served upon a party pursuant to Fed. R. Civ. P. 34, shall be deemed authentic for the purposes of this lawsuit only, absent good cause. Good cause would include issues relating to the completeness of the document (e.g., missing or incomplete pages) or any conditions in the actual document or the manner in which it was produced that brings into question whether the document was actually generated by the relevant party or third party.

8. DOCUMENTS PROTECTED FROM DISCOVERY

(a) Communications need not be placed on a privilege log if they are: (i) subject to the attorney-client privilege and/or work product doctrine (e.g., in light of the subject matter of the document and because no waiver occurred); (ii) exchanged between a party and its in-house counsel, or outside counsel; and (iii) dated on or after April 2, 2020.

(b) If a party believes that identification of documents on privilege log by category, rather than individually, is appropriate, the parties shall meet and confer in advance of production of the privilege log to determine what information will be provided in the log.

(c) Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine,

or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

9. <u>MODIFICATION</u>

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

| | | |
|---|---|---|
| 1 | Dated: April 20, 2022 | */s/ Tina Wolfson* |
| 2 | | Tina Wolfson (SBN 174806) |
| | | Theodore W. Maya (SBN 223242) |
| 3 | | Bradley K. King (SBN 274399) |
| | | AHDOOT & WOLFSON, PC |
| 4 | | 2600 West Olive Avenue, Suite 500 |
| | | Burbank, California 91505 |
| 5 | | Tel: (310) 474-9111 |
| | | Fax: (310) 474-8585 |
| 6 | | twolfson@ahdootwolfson.com |
| | | tmaya@ahdootwolfson.com |
| 7 | | bking@ahdootwolfson.com |

Tiasha Palikovic
Steven L. Wittels
J. Burkett McInturff
WITTELS MCINTURFF PALIKOVIC
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
tpalikovic@wittelslaw.com
slw@wittelslaw.com
jbm@wittelslaw.com

*Plaintiffs' Interim Co-Lead Counsel*

Dated: April 18, 2022         */s/ William P. Donovan, Jr.*
William P. Donovan, Jr. (SBN 155881)
Daniel R. Campbell (*pro hac vice*)
Emilie E. O'Toole (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com
dcampbell@mwe.com
eotoole@mwe.com

*Counsel for Defendant StubHub, Inc.*

## ATTESTATION OF FILER

The undersigned hereby attests that the above signatories have reviewed the contents of the foregoing document and approve its filing.

Dated: April 20, 2022                     */s/ Tina Wolfson*
                                                      Tina Wolfson

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED:  4/21/2022                         _____
                                                      Hon. Haywood S. Gilliam, Jr.
                                                      United States District Judge

# APPENDIX 1

## TECHNICAL SPECIFICATIONS FOR DOCUMENT PRODUCTION

### GENERAL INSTRUCTIONS

1. <u>TIFF Imaging</u>: Except as specified below, electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with a .opt image cross-reference file and a text-delimited .dat load file. TIFFs should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs of e-mail messages should include the BCC line. PowerPoint materials shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image.

2. <u>Color</u>: Where color is required to fully comprehend or interpret a document, such as photographs and certain charts, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Notwithstanding the language of Rule 34, the producing party will reproduce in color documents originally produced in black-and-white upon reasonable request from the requesting party.

3. <u>Document Numbering</u>: Documents must be uniquely and sequentially Bates-numbered across the entire production, with an endorsement burned into each image. Each Bates number shall be of a consistent length, include leading zeros in the number, and unique for each produced page. Bates numbers should contain no more than three segments. For example, a company identifier, a middle segment identifying the custodian, and a sequential page counter with connecting hyphens. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted. Under no circumstances should bates numbers contain embedded spaces, slashes (/), backslashes (\), carats (^), underscores (_), ampersands (&), hash marks (#), plus signs (+), percent signs (%), dollar signs ($), exclamation marks (!), pipes (|), any character used as a delimiter in the metadata load files, or any character not allowed in Windows file- naming convention (,\ / : * ? " < > | ~ @ ^). Bates numbers may contain hyphens (-).

4. <u>De-Duplication</u>: You shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include identical content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semi-colon, who was a source of that document. Should the CUSTODIAN metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents should be produced prior to substantial completion of the production.

5. <u>Technology Assisted Review ("TAR")</u>: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies. However, in the event that search terms are used, TAR shall not then subsequently be applied to further cull the universe of documents returned by the search terms.

6. <u>Compressed Files Types</u>: Compressed file types (e.g., ZIP, RAR, CAB, Z) shall be produced in both native format (e.g., *.ZIP, *.RAR, *.CAB, *.Z file types) as well as in de-compressed format (such that the lowest level document or file is extracted).

7. <u>Exception Files</u>: The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). Each Party will disclose the number of Exception Files identified in connection with each document production and, upon request of the other Party, will meet and confer concerning the type(s) of files and possible solutions.

8. <u>Encryption:</u> To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, You may transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

9. <u>Privilege Designations</u>: Documents redacted pursuant to any claim of privilege will be designated "Redacted" in the PRIVILEGE NOTATION field as described in the Metadata Table. Appropriately redacted searchable text (OCR of the redacted images is acceptable), metadata, and bibliographic information must also be provided. All documents that are part of a document family that includes a document withheld pursuant to any claim of privilege will be designated "Family Member of Privileged Doc" in the PRIVILEGE NOTATION field as described in the Metadata Fields table for all other documents in its family. Placeholder images with BEGDOC#, FILENAME, FILEPATH and reason withheld (e.g., "Privileged") should be provided in place of the document

If any documents to be produced in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

<u>PRODUCTION OF HARD COPY DOCUMENTS</u>

Hard-copy documents are to be produced as black-and-white image files, except where noted below, with related searchable OCR text and bibliographic information. Hard-copy documents must be produced as they are kept, reflecting attachment relationships between documents and information about the file folders within which each document is found. In addition, multi-page documents must be produced as single documents (properly unitized) and not as multiple single-page

documents. Where color is required to interpret the document, such as hard copy photos, and certain charts, that image must be produced in color. These color images are to be produced as .jpg format. Hard-copy photographs should be produced as color .jpg, if originally in color, or grayscale .tif files if originally in black-and-white.

Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

PRODUCTION OF ESI

1. Email, Attachments, and Other Electronic Messages

Email and other electronic messages (e.g., instant messages (IMs)) should be produced as image files with related searchable text, metadata and bibliographic information. Depending on how the company's systems represent names in email messages or IMs, a table of names or contact lists from custodians may be required.

Email repositories, also known as email databases (e.g., Outlook .PST, Lotus .NSF), can contain a variety of items, including messages, calendars, contacts, tasks, etc. For purposes of production, responsive items should include the "Email" metadata/database fields outlined in the Metadata Table, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email, hyperlinks to internal or nonpublic documents, or other items), with the parent/child relationship preserved. Similar items found and collected outside an email repository (e.g., .MSG, .EML, .HTM, .MHT) should be produced in the same manner.

Each IM conversation should be produced as one document.

2. Family Groups:

A document and all other documents in its attachment range, emails with attachments, and email or other documents together with any documents referenced by document stubs or via links to internal document sources within those emails or other documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

3. Electronic Documents

Electronic documents include word-processing documents, spreadsheets, presentations, and all other electronic documents not specifically discussed elsewhere. Production of these items should include image files with related searchable text, metadata, and bibliographic information. All passwords and encryption must be removed from electronic documents prior to production. Native files will be produced upon reasonable request. In addition:

a) Spreadsheets

Spreadsheets should be produced in native format (e.g., as .XLSX files), with searchable text for the entire document, metadata, and bibliographic information. Provide only a single image of the first page of the spreadsheet or provide a single placeholder image. The placeholder image must contain at a minimum the BEGDOC#. The Bates range for a spreadsheet should be a single number (e.g., ABC-JD-00000001 – ABC-JD-00000001). The linked native file name should match the BEGDOC#/DOCID with the appropriate file extension.

b) Color

Presentations (e.g., Microsoft Powerpoint), documents with color charts or graphics, and documents with tracked changes will be produced either as native files or as single page image files in color.

c) Hidden Text

All hidden text (e.g., track changes, hidden columns, hidden slides, mark-ups, notes) shall be expanded and rendered in the extracted text file and image file. For files that cannot be expanded linked native files shall be produced with the image files.

d) Embedded Files

All embedded objects (e.g., graphical files, Word documents, Excel spreadsheets, .wav files) that are found within a file shall be produced so as to maintain the integrity of the source document as a single document. For purposes of production the embedded files shall remain embedded as part of the original source document. Hyperlinked files must be produced as separate, attached documents. Any objects that cannot be rendered to images and extracted text (e.g., .wav, .avi files) must be produced as separate extracted files treated as attachments to the original file.

e) Image-Only Files

All image-only files (including non-searchable .PDFs, multi-page TIFFs, Snipping Tool screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text, metadata, and bibliographic information.

f) Proprietary File Types and Non-PC or Non-Windows Based Systems

Proprietary file types, such as those generated by financial or graphic design software, should be discussed by the parties in advance of production to determine the optimal format of production.

File types from non-PC or non-Windows based systems (e.g., Apple, UNIX, LINUX systems), should be discussed by the parties in advance of production to determine the optimal format of production.

g) Archive File Types

Archive file types (e.g., .zip, .rar) must be uncompressed for processing. Each file contained within an archive file should be produced as a child to the parent archive file. If the archive file is itself an attachment, that parent/child relationship must also be preserved.

h) Redactions

The Producing Party may redact produced documents, materials and other things, as provided in the Protective Order entered in this action. No redactions for relevance may be made within a produced document or ESI item. Each redaction shall be indicated clearly on the face of any document, stating the basis for the redaction over the redacted portion of the document with the word "REDACTION" and the word "PRIVILEGE" or another basis for redaction. Where redaction makes production of native-format files other than spreadsheets infeasible, the Parties will confer to determine a reasonably usable form for the production. To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx) require redactions, such redactions shall be made within the native file, and the redacted native file shall be produced as provided herein.

4. Shared Resources

Shared Resources should be produced as separate custodians if responsive custodians have access to them or if they contain responsive documents. The name of the group having access would be used as the custodian name, i.e. Marketing Execs or Accounting Dept. The company will separately provide a brief description of each shared resource that includes a list of the custodians who have access to that shared resource.

5. Database Productions

Generally, databases should be produced in a mutually agreeable data exchange format. To the extent a database contains responsive and non-responsive information, only responsive information needs to be disclosed. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information:

- Database Name
- Type of Database
- Software Platform
- Software Version
- Business Purpose
- A List of Standard Reports and Exports
- Database Owner orAdministrator's Name
- Table and Field List
- Field Definitions (including field type, size and use)

- Entity Relationship Diagram
- Upon review of the list, the parties will meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.

6. Audio/Video Data

These specifications do not address the production of audio/video data. Care must be taken to ensure that all responsive audio/video data and their metadata are preserved. These data types may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies. However, data, logs, metadata, or other files related thereto, should be produced only after the parties meet and confer regarding the format for the production of such data.

IMAGE AND TEXT FILE SPECIFICATIONS, & LOAD FILE CONFIGURATION

1. Image/Native File Specifications

   a) Black-and-white Group IV Single-Page TIFFs (300 DPI). Color images should be provided in .JPG format when color is necessary.
   b) Image file names should match the page identifier for that specific image and end with the .tif (or .jpg if needed) extension. Example: ACME-ABC-0003072.TIF
   c) File names cannot have embedded spaces, commas, underscores, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention. (, _ & \ / # + % ! : * ? " < > | ~ @ ^)
   d) Images for a given document must reside together in the same folder.
   e) Native file names should match the BEGDOC#/DOCID entry for that specific record and end with the appropriate file extension.
   f) Any encryption or password protection must be removed from all native format files produced.

2. Searchable Text File Specifications and Control List Configuration

   a) Extracted text should be provided with all records, except for documents that originated as hard copy or redacted documents.
   b) For hard copy documents, provide OCR text.
   c) For redacted documents, provide OCR text for the redacted version.
   d) There should be a single extracted/OCR text file per document, in ASCII Text format only.
   e) Text files should include page breaks that correspond to the "pagination" of the image files.
   f) Place text files under a "FULLTEXT" folder and provide a Control List file for loading in the "LOADFILES" folder on the delivery media.

3. <u>Load Files</u>

    a) Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format
    b) Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.
    c) Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator. Carriage-return should be used to indicate the start of the next record.
    d) Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.
    e) Load files should not span across media (i.e., a separate volume should be created for each piece of media delivered).
    f) There should be one row in the load file for every TIFF image in the production.
    g) Every image in the delivery volume should be cross-referenced in the image load file.

<u>METADATA TABLE OF REQUESTED FIELDS</u>

An "**X**" indicates that the field should be populated in the load file produced where such metadata is available. "Other ESI" includes non-email files, such as, but not limited to MS Office files, WordPerfect files, etc.

| Field Name | Hard-Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|
| BEGDOC# | X | X | X | X |
| ENDDOC# | X | X | X | X |
| BEGINNING ATTACHMENT RANGE | X | X | X | X |
| ENDING ATTACHMENT RANGE | X | X | X | X |
| CUSTODIAN | X | X | X | X |
| OTHER CUSTODIAN (if cross-custodian deduplication is employed) | X | X | X | X |
| CONFIDENTIALITY DESIGNATION | X | X | X | X |
| REDACTED (YES/NO) | X | X | X | X |
| PRIVILEGE NOTATION (Privilege type or redaction reason) | X | X | X | X |
| EMAIL FOLDER PATH | | | | |
| ORIGINAL LOCATION PATH | | | | |
| HARD COPY FOLDER/BINDER/TITLE/LABEL | X | | | |
| DOCUMENT TYPE (E-Doc, E-Doc Attachment, Email, Email Attachment, Hard Copy, Calendar Appt) | X | X | X | X |
| AUTHOR | X | | X | |
| PAGE COUNT | X | X | X | X |
| FILE NAME | | | X | |
| FILE SIZE | | X | X | X |
| HASH VALUE | | X | X | X |
| DATE CREATED | | | X | X |
| DATE LAST MODIFIED | | | X | X |
| LAST MODIFIED BY | | X | X | X |
| DATE LAST ACCESSED | | | | |
| DATE SENT | | X | | X |
| TIME SENT | | X | | X |
| DATE RECEIVED | | X | | X |
| TIME RECEIVED | | X | | X |
| FROM | | X | | X |
| TO | | X | | X |
| CC | | X | | X |
| BCC | | X | | X |
| SUBJECT | | X | | X |
| IMPORTANCE | | | | |
| DELIVRECEIPT | | | | |
| READRECEIPT | | | | |
| SENSITIVITY | | | | |
| CONVERSATION INDEX | | X | | X |
| DATE_HC (hard copy date if coded) | X | | | |