UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: STUBHUB REFUND LITIGATION<br><br>This Document Relates to All Cases | Case No. 20-md-02951-HSG<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**<br><br>Re: Dkt. No. 71 |

Pending before the Court is Defendant StubHub, Inc.'s renewed motion to compel arbitration and motion to dismiss. Dkt. No. 71. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion.

**I.   BACKGROUND**

The parties are familiar with the facts of this case, and the Court only briefly summarizes them here as relevant to the pending motion. This putative nationwide class action concerns StubHub's refund policy for events affected by the COVID-19 pandemic. *See* Dkt. No. 36 ("CAC") at ¶¶ 1, 98–111. Plaintiffs allege that StubHub wrongfully changed its policies for refunds for cancelled or rescheduled events as a result of COVID-19. *See id.* at ¶¶ 1, 4.

In November 2021 the Court granted in part and denied in part StubHub's first motion to compel arbitration. *See* Dkt. No. 62 (the "Arbitration Order"). In the order, the Court granted the motion as to the named Plaintiffs who purchased tickets on the StubHub website. *See id.* at 6–11. The Court reasoned that the checkout process on the website put Plaintiffs on constructive notice of the arbitration agreement. *Id.* However, the Court found that StubHub had failed to meet its burden to establish that the eight Plaintiffs who purchased their tickets on the mobile application

had entered into an agreement to arbitrate. *See id.* at 12–14. StubHub did not provide sufficient information that the "sign in" and "checkout" processes on the mobile application contained an adequate disclosure of any arbitration agreement. *See id.* at 12. The Court also rejected StubHub's argument that the Plaintiffs agreed to an arbitration provision in the User Agreement when they registered for a StubHub account because StubHub did not provide information about (1) whether the Plaintiffs registered through the website or mobile application; (2) what the sign-up screen on the mobile application looked like at the time these Plaintiffs signed up; and (3) what version of the User Agreement was in place at the time each Plaintiff registered. *Id.* at 12–14.

StubHub has renewed its motion to compel arbitration, arguing that the Court should also compel arbitration as to the eight remaining Plaintiffs who purchased their tickets using the mobile application. *See* Dkt. No. 71. In the same motion, and to the extent any claims remain before this Court, StubHub moves to dismiss the majority of Plaintiffs' causes of action as deficiently pled under Federal Rule of Civil Procedure 12(b)(6).[1] *See id.*

## II.   MOTION TO COMPEL

### A.   Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of*

---

[1] In a recent order, the Court clarified that under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (Cal. 2017), Plaintiffs' entire UCL, CLRA, and FAL claims must be severed for judicial determination, and not just the request for public injunctive relief. *See* Dkt. No. 90. These California statutory claims therefore have *not* been compelled to arbitration, even as to the Plaintiffs who purchased tickets on the StubHub website.

*Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

**B.     Discussion**

In support of its renewed motion to compel arbitration, StubHub contends that the eight named Plaintiffs who purchased their tickets through StubHub's mobile application—like the other Plaintiffs—agreed to StubHub's User Agreement, which contained an arbitration provision. *See* Dkt. No. 71 at 3–9.  StubHub thus urges that their claims should also be compelled to arbitration.  *Id.*  StubHub does not offer evidence that these Plaintiffs assented to the arbitration agreement at the time they purchased tickets on the mobile application. *See generally id.* at 1–7. Rather, StubHub argues that they assented to the arbitration agreement when they visited the StubHub website at various points before and after they purchased their tickets on the mobile application. *See id.*  As before, the Court finds StubHub's evidence deficient.

*First*, StubHub suggests that some Plaintiffs agreed to the User Agreement after they purchased their tickets. *See id.* at 4–5.  Plaintiff Mignault, for example, purchased tickets on December 20, 2019.  *See* Dkt. No. 70-1 ("Northcutt Decl.") at ¶ 17.  According to StubHub's records, he then signed into his account through the website five days later, on December 25, 2019.  *Id.*  StubHub states that this sign-in screen contained a notice that "[b]y purchasing or signing in, you agree to our user agreement and acknowledge our privacy notice."  *See id.*  In the prior Arbitration Order, the Court rejected StubHub's theory that parties could manifest assent

3

retroactively, pointing out that StubHub had cited no authority. *See* Dkt. No. 62 at 14, n.8 (rejecting argument that ex post email notice sufficient to compel arbitration). Now, in its reply brief, StubHub cites two district court cases. *See* Dkt. No. 89 at 4. The Court is not persuaded by either case.

In *Galgon v. Epson America, Inc.*, No. CV211794CBMMRWX, 2021 WL 4513638, at *1–5 (C.D. Cal. June 16, 2021), the plaintiff purchased a printer and print cartridges. *See id.* at *1. Before the plaintiff could use the printer, however, he had to view and agree to the defendant's software license. *Id.* at *1–2. The software license contained an arbitration agreement. *Id.* The plaintiff also periodically installed software updates for the printer. *Id.* at *2. As part of this process, the plaintiff had to again view and click a checkbox to agree to the agreement. *Id.* Critically, the plaintiff in *Galgon* did not dispute that he agreed to the software license agreement or the arbitration provision. *Id.* at *3. The court therefore did not address whether it was sufficient to provide notice of the arbitration agreement only after purchase.

In *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103–06 (C.D. Cal. 2002), the plaintiff subscribed to DirecTV's satellite television services over the phone, and he received the customer agreement in the mail along with the first billing statement. The district court found that the timing of the customer agreement was not problematic because "of the ongoing contractual relationship between DirecTV and its subscribers." *See id.* at 1104. The court also noted the practical difficulty of providing the terms of the entire customer agreement to someone who subscribes to the services over the phone. *See id.* at 1101, 1105–06. In upholding the arbitration agreement, the court relied heavily on the Supreme Court's opinion in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592–95 (1991), in which the Court upheld a forum-selection clause that appeared on the back of cruise tickets. The front of the ticket conspicuously stated that it was subject to contractual terms. *See id.* at 587. But as in *Galgon*, the Supreme Court in *Carnival* did not have an opportunity to address whether this was sufficient to provide actual or constructive notice of the forum-selection clause. As the Supreme Court explained, the plaintiffs had "conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity." *Id.* at 595.

4

1        Even putting that aside, the facts of *Galgon*, *Bischoff*, and *Carnival* are unlike those here.
2   The contractual terms in those cases, sent to each plaintiff after purchase, were conspicuously
3   related to the plaintiff's specific purchase and use of the printer, satellite TV services, and cruise
4   ticket.  Here, in contrast, StubHub is not arguing that it sent Plaintiff Mignault additional
5   information about his tickets—including the User Agreement—after he made his purchase.
6   Rather, StubHub argues that Plaintiff Mignault signed in to his online account five days after his
7   purchase, and should have known that doing so would subject his earlier ticket purchase to the
8   terms of the User Agreement.  StubHub has simply failed to provide any authority to support this
9   argument.
10       *Second*, StubHub suggests that some Plaintiffs agreed to the User Agreement days or
11  months before they purchased their tickets on the mobile application.  *See* Dkt. No. 71 at 5–8.
12  Plaintiff Williams, for example, signed into her account through the website approximately six
13  months before she purchased tickets on the mobile application.  *See* Northcutt Decl. at ¶¶ 18–19.
14  StubHub states that the website's sign-in screen contained a notice that "[b]y purchasing or
15  signing in, you agree to our user agreement and acknowledge our privacy notice."  *See id.* at ¶ 18.
16  Although Plaintiffs may have signed into their accounts and been on notice that they were subject
17  to a User Agreement at that time, StubHub fails to explain why Plaintiffs would be on notice that
18  they were bound by the User Agreement for all future purchases.  At the time they signed into
19  their accounts on the website, they were not purchasing tickets.  StubHub appears to concede that
20  they did so later on the mobile application, which did not contain any disclosure of the User
21  Agreement.
22       StubHub does not address this issue directly.  And the only case StubHub cites, *Lee v.*
23  *Ticketmaster L.L.C.*, 817 Fed. App'x 393, 394–95 (9th Cir. 2020), is inapposite.  *See* Dkt. No. 71
24  at 6.  In the unpublished decision in *Lee*, the Ninth Circuit reasoned that the plaintiff had
25  "indicated his assent to Ticketmaster's Terms of Use roughly twenty times during the relevant
26  period," each time he signed in or clicked "place order" on the Ticketmaster website.  *Lee*, 817
27  Fed. App'x at 395.  Here in contrast, StubHub is asking the Court to find assent based on a single
28  sign-in, sometimes months before the actual ticket purchase.

At this point, StubHub has had several opportunities to provide sufficient evidence that the eight Plaintiffs who purchased their tickets on the mobile application had notice of the arbitration provision in the User Agreement. But again, it has failed to do so.[2] The Court therefore **DENIES** the motion to compel arbitration. The claims brought by Plaintiffs Dahl, Glaspey, Koble, Matlock, McDaniel, Mignault, Williams, and Wutz therefore remain before this Court.

### III.   MOTION TO DISMISS

#### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

---

[2] To the extent StubHub also raises an equitable estoppel argument, the Court has already considered and rejected this argument in its prior Arbitration Order.

**B.     Discussion**

As an initial matter, Plaintiffs challenge StubHub's attempt to file an "amended" version of its renewed motion to compel arbitration without first seeking leave from the Court. *See* Dkt. No. 78 at 1, n.1. StubHub first filed its renewed motion to compel on January 24. *See* Dkt. No. 70. Four days later, on January 28, StubHub amended the motion. *See* Dkt. No. 71. StubHub suggests that it did so simply to "clarif[y]" the scope of its motion. *See id.* at 2. To that end, StubHub added a footnote in its amended motion stating: "All challenges to the sufficiency of the pleading of the California statutory claims in this Motion apply equally to all named Plaintiffs in this case." *See id.* at 11, n.5. In short, StubHub has filed a motion to dismiss all causes of action in this case approximately a year after Plaintiffs filed their consolidated amended complaint.

The scheduling order set January 24 as the deadline to file any renewed motion to compel and motion to dismiss. *See* Dkt. No. 69. StubHub did not seek leave to file this second—and belated—motion. StubHub's amended motion also considerably expands the nature of the motion. Rather than limiting the motion to the Plaintiffs who purchased their tickets on the mobile application, StubHub seeks to challenge the claims brought by all Plaintiffs in this case. StubHub does not offer any explanation for the delay.

The Court notes that the parties have engaged in such serial briefing before. For example, Plaintiffs requested leave to file a surreply in response to the first motion to compel arbitration. *See* Dkt. Nos. 50, 51. StubHub then filed a sur-surreply brief. *See* Dkt. No. 52. Plaintiffs also filed an administrative motion to introduce additional materials during the hearing on the motion to compel. *See* Dkt. No. 54. The Court denied this request, Dkt. No. 55, but ultimately requested supplemental briefing on the distinction between the user experience on the website and mobile application to ensure a complete record. *See* Dkt. No. 58. Months after the Court's initial Arbitration Order, StubHub also questioned the scope of the order, raising new arguments about the import of *McGill*. *See* Dkt. No. 90. StubHub's amended motion appears to be yet another example of the parties crystallizing their arguments only after they have filed their briefs.

The Court cannot continue to countenance these inefficient tactics. The Court will therefore only consider the arguments that StubHub raised in the initial renewed motion. *See* Dkt.

7

1  No. 70.  For the avoidance of doubt, the Court will only consider arguments as to the eight named
2  Plaintiffs who purchased their tickets through the mobile application.  The parties are cautioned
3  that the Court expects—and will continue to enforce—strict compliance with all its orders, the
4  Federal Rules of Civil Procedure, and the Local Rules.

5        The Court further notes its dismay that years after this case was filed, it remains mired in
6  litigation regarding the pleadings.  StubHub could have—and should have—raised the arguments
7  about the sufficiency of the complaint much earlier.  The motion to compel did not automatically
8  extend or stay the time for StubHub to file a responsive pleading.  *See* Fed. R. Civ. P. 12(b).  The
9  Court nevertheless briefly addresses StubHub's arguments below.

10      **A.**    **Standing**
11          **i.**    **Injury**

12        StubHub first argues that Plaintiffs Koble and Wutz lack standing to sue StubHub because
13  they have not alleged an injury.  *See* Dkt. No. 71 at 9–11.  StubHub argues that at the time
14  Plaintiff Koble purchased tickets to an NFL game using StubHub, the User Agreement—and the
15  FanProtect Guarantee—had been updated to provide for either a refund or a credit in the amount
16  of 120% the cost of the original purchase price.  *See* Dkt. No. 71 at 9–10; *see also* CAC at ¶¶ 32,
17  83.  Although Plaintiffs allege that Plaintiff Koble did not receive a refund, *see* CAC at ¶ 32,
18  StubHub argues that he actually received a credit for his tickets as required by the User
19  Agreement.  *See* Dkt. No. 71 at 9; *see also* Northcutt Decl. at ¶ 12.  StubHub thus argues that he
20  did not suffer any injury.  *See* Dkt. No. 71 at 9–10; CAC at ¶ 32.

21        As already discussed in Section II.B above, StubHub has not provided sufficient evidence
22  that Plaintiff Koble actually saw—let alone agreed to—the User Agreement at the time he
23  purchased his tickets.  Even if he had, StubHub appears to misapprehend Plaintiffs' theory of
24  liability.  Plaintiffs do not contend that StubHub violated the terms of the User Agreement.
25  Rather, they argue that StubHub has advertised its FanProtect Guarantee as providing a full
26  money-back refund for canceled events.  *See, e.g.*, CAC at ¶¶ 1, 3–6, 13–14.  However, the
27  complaint alleges that during the COVID-19 pandemic, StubHub surreptitiously changed the
28  terms of the FanProtect Guarantee "on the backpages of its website," and merely provided credits

8

for canceled events. *See id.* at ¶ 83. Consistent with these allegations, Plaintiffs contend that Plaintiff Koble never received a refund for his tickets. *See id.* at ¶ 32 ("StubHub has failed to refund Plaintiff Koble for [his] ticket purchase."). The Court understands that StubHub may dispute the facts as alleged in this case, and it will have an opportunity to address such factual challenges at the dispositive motion or trial stage. But at this stage, the Court accepts Plaintiffs' allegations as true, as it must. *See Manzarek*, 519 F.3d at 1031.

Similarly, StubHub argues that Plaintiff Wutz purchased tickets for two events that were postponed rather than canceled. *See* Dkt. No. 71 at 10; *see also* Northcutt Decl. at ¶ 21. StubHub urges that he is therefore not entitled to a refund under any version of the FanProtect Guarantee. Dkt. No. 71 at 10. But again, Plaintiffs allege that Plaintiff Wutz "purchased tickets through StubHub were postponed, and then canceled." *See* CAC at ¶ 55. This is sufficient at the motion to dismiss stage. The Court **DENIES** the motion on this basis.

### ii. Reliance

StubHub also argues that all eight Plaintiffs lack statutory standing to bring their California statutory causes of action because they did not plead actual reliance on any misrepresentation about the FanProtect Guarantee. *See* Dkt. No. 71 at 11–12. However, Plaintiffs allege that they relied on and were misled by StubHub's prior representations—and actual policy—that they would receive a cash refund for canceled events. *See, e.g.*, CAC at ¶¶ 6, 146, 155, 183, 187. Plaintiffs specifically assert that they "believe[d] that they would receive refunds if the events they purchased tickets for were canceled." *See id.* at ¶ 155. Plaintiffs further allege that StubHub changed the terms of its refund policy without an email or any other conspicuous notification to users. *See id.* at ¶ 8. Plaintiffs cite examples from StubHub's website, which continued to tout that "[e]very order is 100% guaranteed" and users can "[b]uy and sell with confidence" because StubHub "back[s] every order." *See id.* at ¶¶ 90–91. Plaintiffs even include a screenshot of this representation from StubHub's homepage. *See id.* at ¶ 13. The Court finds that when read in their totality, such allegations are sufficient under the circumstances, and the Court **DENIES** the motion on this basis.

//

9

### B. CLRA

Next, StubHub argues that Plaintiffs fail to state a CLRA cause of action because there are no allegations that StubHub knew, or had reason to know, that its statements about the FanProtect Guarantee were false at the time Plaintiffs purchased their tickets. *See* Dkt. No. 71 at 12–14. StubHub suggests that to succeed on its claim, Plaintiffs must establish that StubHub knew at the time Plaintiffs purchased their tickets that StubHub would not honor a full money-back refund due to the COVID-19 pandemic. *Id.* StubHub points out the virtual impossibility of pleading this because "most [] Plaintiffs purchased their tickets months before any reasonable person was aware of COVID-19 and its potential for devastating impact on live events." *See id.* at 13.

The parties appear to agree that the CLRA does not apply to unfair or deceptive practices that occur after the sale . . . has occurred." *See* Dkt. No. 78 at 20 (citing *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014)); *see also* Dkt. No. 89 at 9–10 (collecting cases). But Plaintiffs' case turns on StubHub changing the terms of the User Agreement *after* Plaintiffs purchased their tickets. *See, e.g.*, CAC at ¶¶ 1, 3–6, 13–14. Only Plaintiff Koble appears to have purchased tickets after StubHub changed its FanProtect Guarantee due to COVID-19. *See id.* at ¶ 8. With the exception of Plaintiff Koble, therefore, Plaintiffs do not allege that StubHub knew that it would change its refund policy as a result of the COVID-19 pandemic at the time they purchased their tickets.

Plaintiff suggests that this type of knowledge is not necessary, and it is enough for the remaining Plaintiffs' claims that StubHub knew at the time that it could unilaterally change the terms of the FanProtect Guarantee, but never explained this directly to users or in its advertising. *See id.*; *see also* CAC at ¶¶ 3, 92, 97, 156, 175. StubHub's ability to unilaterally change the terms of any refund undermines the idea that the FanProtect Guarantee actually "guaranteed" or promised users any protection for their ticket purchases. Although relatively thin, the Court finds this theory sufficient to survive the motion to dismiss, and **DENIES** the motion on this basis.

### C. Negligent Misrepresentation

StubHub argues that Plaintiffs' negligent misrepresentation claims similarly fail because Plaintiffs did not allege (1) any misrepresentations at the time Plaintiffs purchased their tickets; or

10

(2) that Plaintiffs relied on any such statement(s) when they purchased their tickets. *See* Dkt. No. 71 at 14. Because the Court already rejected these arguments above, the Court **DENIES** the motion on this basis as well.

### D. Non-California Statutory Claims

Lastly, StubHub argues that the Court should dismiss Plaintiffs' non-California statutory claims because they have agreed that California law should apply. *See* Dkt. No. 71 at 15. Plaintiffs respond that they have simply pled these claims in the alternative to the California claims. *See* Dkt. No. 78 at 25. The Court agrees that it need not decide any choice of law issues at this stage, and therefore **DENIES** the motion on this basis.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motion. The case schedule remains in place, and the Court expects the parties to work together efficiently and cooperatively to move this case forward.

**IT IS SO ORDERED.**

Dated: 5/13/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

11