William P. Donovan, Jr. (SBN 155881)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone: (310) 277-4110
Facsimile: (310) 277-4730
wdonovan@mwe.com

Daniel R. Campbell (*pro hac vice*)
Emilie E. O'Toole (*pro hac vice*)
William W. Hameline (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
dcampbell@mwe.com
eotoole@mwe.com
whameline@mwe.com

*Counsel for Defendant StubHub, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| IN RE STUBHUB REFUND LITIGATION | Case No. 4:20-md-02951-HSG |
|---|---|
| | **DEFENDANT STUBHUB, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO MODIFY THE ESI PROTOCOL** |
| | Judge:  Haywood S. Gilliam, Jr.<br>Date:  July 20, 2023<br>Time:  2:00 p.m.<br>Courtroom: 2 |

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. StubHub Established Good Cause for the ESI Protocol to Be Modified......................1

        i. Plaintiffs Mischaracterize StubHub's Preservation and Collection.................2

        ii. Plaintiffs Do Not Meaningfully Rebut That Good Cause Exists to Modify the ESI Protocol. ...........................................................................................4

            a. Plaintiffs Fail to Meaningfully Address StubHub's Established Claims of Burden. ............................................................................4

            b. Plaintiffs' Expert Declarations Ignore StubHub's Existing Systems. .6

            c. Case Law Favors Modifying the Protocol Here. ................................8

        iii. Plaintiffs Fail to Establish That the Hyperlink Issues Were Foreseeable........9

        iv. Plaintiffs Fail to Show How They Would Be Harmed by Modification of the ESI Protocol. .........................................................................................10

    B. Plaintiffs' Claims of Inequitable Treatment Go Both Ways......................................11

III. CONCLUSION.............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer AG and Miles, Inc. v. Barr Labs., Inc.*,
    162 F.R.D. 456 (S.D.N.Y. 1995) ................................................................................................6

*Centrify Corp. v. Quest Software, Inc.*,
    No. C 10-3873 CW, 2011 WL 6303362 (N.D. Cal. Dec. 16, 2011) ...........................................4

*Nichols v. Noom, Inc.*,
    No. 20-CV-3677 (LGS) (KHP), 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021) ..........................8

*Parkcrest Builders, LLC v. Housing Auth. Of New Orleans*,
    No. 15-1533, 2017 WL 11535871 (E.D. La. Apr. 6, 2017) .......................................................4

*Porter v. Equinox Holdings, Inc.*,
    No. RG19009052, 2022 WL 887242 (Cal. Sup. Ct. Mar. 17, 2022) ..........................................9

*Robbins v. Phillips 66 Co.*,
    No. 18-CV-00292-RS (TSH), 2018 WL 6603646 (N.D. Cal. Dec. 17, 2018) (Hixson, J.) ..........5

*Shenwick v. Twitter*,
    No. 16 Civ. 05314-JST (SK), 2018 WL 5735176 (N.D. Cal. Sept. 17, 2018) ....................4, 8, 9

**Other Authorities**

Rule 26 ....................................................................................................................................1, 2, 6, 8

Rule 30(b)(6) ................................................................................................................................10

## I. INTRODUCTION

With this Motion, StubHub seeks the very relief that Magistrate Judge Hixson suggested during the hearing on the hyperlinks issue, which is to modify the ESI Protocol. Although the concepts of burden and reasonableness are foundations of the Federal Rules of Civil Procedure and yardsticks on which discovery issues are resolved, Plaintiffs' Opposition brief ignores these core principles in trying to continue to radically increase StubHub's defense costs in this litigation. Nothing in the Opposition justifies the wasteful and punitive position advocated by Plaintiffs. Despite the substantial challenges from COVID-19, multiple email systems, and substantial turnover at StubHub during the period in question, there is no question that StubHub and its counsel met their discovery obligations. The modest relief sought by StubHub in these circumstances is warranted and should be granted. Good cause clearly exists to modify the ESI Protocol to prevent a further expenditure of precious resources which likely will not result in any meaningful change in amount of available relevant information. The core dispute in this case remains straightforward—whether generous 120% credits made temporarily available to consumers given the unprecedented challenges of COVID-19 was appropriate. The Opposition does not, and cannot, contend that the hyperlinked documents would materially change the landscape on which this Honorable Court can decide that issue.

## II. ARGUMENT

### A. StubHub Established Good Cause for the ESI Protocol to Be Modified.

In its opening brief, StubHub established good cause for relief from one portion of a production specifications in an ESI Protocol in this case. (Op. Br. at 8–15.) The basis for good cause was that the production specification, despite StubHub's best efforts, cannot be satisfied within the bounds of proportional discovery under Rule 26. Indeed, StubHub tried, through substantial costs and efforts, to comply and did comply where possible. As a backup, StubHub also searched the Google Drive and other document repositories and produced relevant, non-privileged documents that hit on agreed search terms. (O'Toole Decl. ¶ 37.) The only thing Plaintiffs could possibly be missing is a manufactured association between a link and the email in which it was sent—there is no evidence, nor do Plaintiffs argue, that Plaintiffs are missing the substantive documents themselves. Such an

effort at this stage would be wasteful and punitive. In their Opposition, Plaintiffs elevate form over substance. They focus on language in a production specification that was negotiated long before the parties agreed to search terms or custodians. Plaintiffs argue that StubHub has put forth no real reason to modify the protocol at this juncture, but that is simply wrong. (Opp. at 22–23.) Indeed, Plaintiffs fail to articulate any rebuttal to StubHub's evidence that good cause exists to modify the ESI production specifications and instead offer criticism of StubHub's substantial efforts at compliance. Moreover, Plaintiffs fail to counter and thereby concede the critical points made by StubHub in its opening submissions. Specifically, good cause exists to modify the protocol because of the undue burden the specifications impose on StubHub with little to no discernable benefit to Plaintiffs. (Op. Br. at 9–13.) Engaging in this costly and punitive exercise does not satisfy the proportionality requirements of Rule 26.

**i.      Plaintiffs Mischaracterize StubHub's Preservation and Collection.**

Repeatedly, Plaintiffs mischaracterize the facts as they relate to StubHub's preservation, collection efforts, and maintenance of hyperlinked documents. First, StubHub did not fail to preserve hyperlinked documents, as Plaintiffs suggest. (Opp. at 3.) The hyperlinked documents themselves, to the extent they existed when StubHub's preservation obligations began, have been preserved across all StubHub systems. The collection in this case spans more than six years, dating back to 2016 per Magistrate Judge Hixson's earlier order. (ECF No. 109 at 2–3.) StubHub has abided by its preservation obligations and Plaintiffs have no evidence to the contrary. (*See* O'Toole Decl. ¶ 42.) StubHub preserved any potentially relevant documents and collected and reviewed those that ultimately were relevant to Plaintiffs' discovery requests. Plaintiffs are well-aware that hyperlinks are not associated with the emails in which they are sent in a company's systems and StubHub's systems are no different. The association between a link and an email is fictional and manufactured— it does not exist in the ordinary course of StubHub's systems. The linked documents themselves can be moved around within IT systems at companies by individual employees or any number of business stakeholders. Moving documents to a different folder, or saving them in a different place, does not delete the document, but it could compromise the workability of a hyperlink that points to the documents prior location. Movement of documents does not equate to a failure to preserve

documents. This is especially true of documents that are more than six years old. It is no different than moving a physical document from one filing cabinet to another—the document remains preserved, but is located somewhere else. Imposing such an obligation would go so far beyond the scope of what is reasonable for any litigant.

Second, Plaintiffs incorrectly suggest that StubHub's expert vendor, Epiq, did not begin attempting to collect hyperlinks until March 2023.[1] (Opp. at 8–9.) This is plain wrong. StubHub began working with Epiq in August 2022 to find a solution to the hyperlink issued because Plaintiffs' counsel suggested StubHub retain an expert to assist with link association and production. Because StubHub took Plaintiffs up on this suggestion after a meet and confer, Plaintiffs knew StubHub hired an expert to address the hyperlink issue back in fall of 2022. (O'Toole Decl. ¶¶ 13–15.) Epiq first attempted to pull links from all responsive documents identified to-date in September 2022 and any documents collected from Epiq's efforts were produced in the manner prescribed in the production specifications at that time. (*Id.* ¶ 18.)

Third, Plaintiffs falsely suggest that StubHub has not produced documents linked to parent emails already found to be responsive. (Opp. at 17 n.1.) This is fundamentally untrue. StubHub has made every effort to collect any linked documents it can retrieve from responsive documents—that is precisely what Epiq's collection efforts did. (Brown Decl. ¶¶ 12–14.) Many of the linked documents, however, were no longer located at the linked location. (*Id.*; O'Toole Decl. ¶ 33.) StubHub was unable to collect, review, and produce such documents in this manner if the link did not point to a document's location anymore. (*Id.*) But that does not mean the documents were not preserved or do not exist. Indeed, Plaintiffs concede, as they must, that StubHub independently searched repositories such as Google Drive and produced all responsive non-privileged documents. (Opp. at 23–24.) In essence, StubHub produced all of the linked documents in its possession, custody,

---

[1] The chronology is straightforward and supports StubHub's position. StubHub promptly met its obligation to preserve, collect, and review documents through its counsel's in-house discovery vendor, prior to engaging Epiq to assist on the hyperlinks issue. (O'Toole Decl. ¶ 9.) Once the nature of the needed discovery assistance became evidence, Epiq was then retained in the Summer of 2022. (*Id.* ¶ 13.)

1  or control and the only thing missing is an association between that document and an email in which
2  the link was shared.

### ii. Plaintiffs Do Not Meaningfully Rebut That Good Cause Exists to Modify the ESI Protocol.

Good cause is the "most significant[]" factor in determining whether modification of a court order like an ESI Protocol is appropriate. *See Parkcrest Builders, LLC v. Housing Auth. Of New Orleans*, No. 15-1533, 2017 WL 11535871, at *2 (E.D. La. Apr. 6, 2017). Plaintiffs argue that no good cause exists to modify the ESI Protocol pursuant to StubHub's Motion, in essence, because StubHub could have found a way to comply with the protocol but supposedly chose not to do so. (Opp. at 14–21.) That argument is patently false and wholly untrue. Plaintiffs failed to rebut the evidence submitted by StubHub demonstrating its substantial efforts to comply. StubHub, however, has also clearly shown that the burden of satisfying the production specifications of the ESI Protocol as it relates to hyperlinks is far too great, in light of changing circumstances both technologically and with respect to the scope of discovery, for it to satisfy. *See Centrify Corp. v. Quest Software, Inc.*, No. C 10-3873 CW, 2011 WL 6303362, at *2 (N.D. Cal. Dec. 16, 2011) (noting the good cause inquiry focuses on "the moving party's reasons for seeking modification" of a court order). Plaintiffs so-called "experts" fail to acknowledge the constraints of StubHub's systems as they exist today, making any assertions that this task is not burdensome or implausible. Likewise, StubHub's efforts to comply with Plaintiffs' discovery requests have been considered to be more than sufficient by multiple courts. *See, e.g.*, *Shenwick v. Twitter*, No. 16 Civ. 05314-JST (SK), 2018 WL 5735176 (N.D. Cal. Sept. 17, 2018) (ordering targeted pull of linked documents as attachments for up to 200 key documents).

### a. Plaintiffs Fail to Meaningfully Address StubHub's Established Claims of Burden.

Plaintiffs inadequately counter the significant burden that StubHub will face if forced to comply with the ESI Protocol as written at this late hour in discovery. It is Plaintiffs, not StubHub, who waited until the eleventh hour to raise the issue with the Court, despite knowing that StubHub had been working to resolve this issue since August. (*See* O'Toole Decl. ¶¶ 12–18.) If Plaintiffs

believed all along that StubHub's efforts to comply with the protocol were insufficient, the issue should have been raised before the completion of document production—not weeks after. Any delay with this issue is directly attributable to Plaintiffs themselves.

Plaintiffs also concede that no available technology exists to accomplish what Plaintiffs ask StubHub to do—recollect and reprocess millions of emails from a Microsoft email with hyperlinked documents (both as "modern attachments" and hyperlinked in the email text) to various Microsoft and non-Microsoft sources (*i.e.*, Google Docs, Tableau, *etc*.) as attachments to those emails without any limitation as to the number of potential sources of "documents." Inherent limitations exist across the technology platforms used by StubHub, as they now exist today, that do not permit StubHub to collect hyperlinked documents in the manner Plaintiffs want. (O'Toole Decl. ¶¶ 39–42.) Plaintiffs have done nothing but propose half-hearted solutions that would only get to a small portion of the documents they seek. Still, they continue to try to frame these solutions as obvious and comprehensive, but they are not, as articulated by multiple eDiscovery experts. (*See* Lewis Decl. ¶¶ 2, 4–6; Brown Decl. ¶¶ 8–14.) For example, Plaintiffs point to Tableau links as internal documents that should be collected, but do not suggest anything beyond some sort of custom solution that does not exist (and is unclear if it even could exist) to collect these links. (Opp. at 7.) StubHub cannot and should not be forced to do the impossible here nor should it be obligated to invent new technologies in order to meet Plaintiffs' unreasonable demands untethered from any real articulated need. *See Robbins v. Phillips 66 Co.*, No. 18-CV-00292-RS (TSH), 2018 WL 6603646, at *1 (N.D. Cal. Dec. 17, 2018) (Hixson, J.). When Plaintiffs were asked to identify which particular emails with hyperlinks that they most cared about that needed an answer, StubHub received silence as a response.

Further, StubHub has repeatedly raised—and continues to raise—alternate means to ensure Plaintiffs have access to all relevant documents in the litigation. Namely, beyond producing all responsive emails, StubHub has searched relevant Google Drive and Sharepoint sources using the search terms ordered by the Court and produced documents that are responsive and not privileged from those sources. (*See* O'Toole Decl. ¶ 37.) In other words, StubHub has searched, collected, reviewed, and produced documents from the very source at which these linked documents would reside, but Plaintiffs keep asking for more.

       Consideration of such alternate means of accomplishing the stated goal is essential in establishing good cause to modify an ESI Protocol like this one. *See Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 464 (S.D.N.Y. 1995) (noting the court weighs the moving party's "need for the modification against [other party's] need for protection, factoring in the availability of alternatives to better achieve both parties' goals"). Plaintiffs have done little to explain how this alternative—namely collecting relevant, responsive documents directly from the source—is not sufficient. At best, Plaintiffs argue that they will not be able to see the circulation of the document and commentary about that document. (Opp. at 24.) But StubHub has already produced every responsive email that might have circulated any such document that might be relevant or responsive from these other sources. Plaintiffs therefore have not been deprived of such information. The only thing Plaintiffs will not have is the specific connection of the made-up parent-child relationship between certain emails and certain hyperlinked documents. The only alternative Plaintiffs themselves point to is a custom programming solution (Opp. at 15) to be implemented at significant expense to StubHub. As explained before, even a custom solution would fall short because many of the documents are no longer located at their linked location that existed in some case more than six years ago. (O'Toole Decl. ¶ 42.) Indeed, StubHub already considered and discussed such a solution, but learned that the cost would be significant and the problem did not have a likelihood of producing different results. Implementing such a custom solution as described would have little known return for either party and would far exceed the proportional needs of this litigation. In other words, there is no Rule 26 basis for ordering StubHub to do more here.

       **b.**       **Plaintiffs' Expert Declarations Ignore StubHub's Existing Systems.**

       With its opposition, Plaintiffs submitted two "expert" declarations that, in sum, attempt to overcome the impossibility of the task Plaintiffs are asking StubHub to undertake. (ECF Nos. 208-12, 208-13.) Both Forrest and Ciaramitaro focus on generalities from various eDiscovery consultants on the emergence of the issues of collection of hyperlinks in emails. These declarations fail to meaningfully address the facts actually before this Court making their declarations unhelpful and theoretical. Forrest acknowledges he lacks the insight into StubHub's systems to understand the

complexity of what is being asked of StubHub here. (*See* ECF No. 208-12 ¶¶ 48–49.) Both experts mischaracterize and misstate the efforts undertaken by StubHub in its processes so far. Indeed, neither declaration states that even a custom software solution—that would be created just for this case and for StubHub's systems—would have any meaningful impact on complying with the production specification at issue. As such, those declarations do not rebut StubHub's established good cause for modifying the ESI Protocol here.

Both declarations focus on the idea of "modern attachments," a link to a document that actually appears as an attachment. (*See generally* ECF No. 208-12, ECF No. 208-13.) However, they ignore the issue of a hyperlink that is merely copied and pasted into the body of an emails, which is not a "modern attachment" that makes up the vast majority of links within the StubHub document universe. This example alone illustrates that Plaintiffs' "experts" do not know what they are talking about and that they are seeking to tackle a dynamic and complicated issue with a simple solution that StubHub reviewed and its own experts determined to be untenable. The only attempt to address this comes from Ciaramitaro, who does nothing more than mention that a hyperlink can appear in the body of the email (ECF No. 208-13 ¶ 8)—he fails to address how any of his proposed processes would collect such a hyperlink as an attachment. Indeed, what Plaintiffs' experts propose would require manual search and review before even attempting to implement their "modern attachments" efforts—efforts that would not apply to a majority of the links at issue. Further, both Forrest and Ciaramitaro acknowledge that a custom tool is the only option available to StubHub here. (ECF No. 208-12 ¶¶ 40–47 ECF No. 208-13 ¶ 40.) Both experts go on to oversimplify the process of creating such a custom solution, which would require significant resources and time to undertake and ultimately may not work at all, given that many of the links evaluated to-date appear to be broken.[2]

Plaintiffs' characterization of StubHub's own ESI vendors in entirely different contexts is misleading and inapplicable to the situation here. (*See* Opp. at 3, 25 n.20.) Plaintiffs attached articles from both Epiq and Digital Mountain to their Opposition to suggest that both vendors agree with

---

[2] Notably, neither Plaintiffs' counsel or their experts have suggested any tool to solve the dilemma at issue, nor have Plaintiffs agreed to pay for (or share in) the high costs for the wasteful exercise they want StubHub to perform.

1  Plaintiffs' position. Yet the articles have no bearing on the circumstances before this Court. First, the
2  article from Epiq addresses the issue of "modern attachments" generally, but does not address the
3  complicating factor of hyperlinks that are simply embedded in the body of an email present here.
4  (ECF No. 208-2.) Second, the article from Digital Mountain (ECF No. 208-3) pertains only to
5  collection of Google Drive links from Gmail. (*Id.* ("For this article, we specifically focus on Google
6  mail ("Gmail") and embedded links in the body of Gmail messages . . . .").) Plaintiffs know very
7  well StubHub <u>does not use Gmail</u>, making the analysis irrelevant and inapplicable to the situation at
8  hand. (O'Toole Decl. at ¶ 17.) In any event, citing general articles is not sufficient rebuttal for the
9  tailored review and analysis Epiq and Digital Mountain did of the precise issue in this case.

### c.   Case Law Favors Modifying the Protocol Here.

11  Plaintiffs dismiss the relevant and on-point case law cited by StubHub. StubHub cited *Nichols*
12  *v. Noom, Inc.*, No. 20-CV-3677 (LGS) (KHP), 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021) for the
13  proposition that a hyperlinked document is not an attachment to an email. (Op. Br. at 11–13.) In
14  response, Plaintiffs focus exclusively on the Court's decision not to require production of the
15  hyperlinked documents because the parties did not expressly agree to do so in the ESI protocol. (Opp.
16  at 16–17.) That is a distinction without a difference because Plaintiffs ignores the court's comments
17  about the impossibility of the task in the first place. The critical holding of the *Noom* court is the
18  correct conclusion that a linked document is <u>not</u> an attachment and the corresponding unfeasibility
19  of artificially treating hyperlinks as attachments to emails. 2021 WL 948646 at *4.  The *Noom* court
20  acknowledge the importance of proportionality that evolves throughout the discovery process (*id.* at
21  *3), the cost and delay associated with undertaking such a task (*id.* at *4), the duplication involved
22  in reproducing documents that in many cases were already produced in another way (*id.* at *2, 4–5),
23  and burden imposed by creation of a custom solution to accomplish this task (*id.* at *4). The analysis
24  of the burden and proportionality concerns of accomplishing a production specification under Rule
25  26 is exactly what StubHub is arguing here.  Plaintiffs already have the responsive linked documents
26  because StubHub collected, reviewed, and produced relevant documents from Google Drive and
27  Sharepoint. (O'Toole Decl. ¶ 37.)  Plaintiffs further dismiss *Shenwick v. Twitter*, No. 16 Civ. 05314-
28  JST (SK), 2018 WL 5735176 (N.D. Cal. Sept. 17, 2018), and again ignore the relevance of the

reasoning by the court there. Specifically, the burden is not changed merely because the ESI Protocol here calls for such a collection—the burden on StubHub remains the same. *Id.* at *1; (*see* ECF No. 202 at 14). Further, the "contrary authority" Plaintiffs raise (Opp. at 17) provides no substantive explanation or meaningful analysis nullifying any value of that decision here.

Other California courts have acknowledged the significant burden that may arise from collecting, reviewing, and producing hyperlinked documents. In *Porter v. Equinox Holdings, Inc.*, No. RG19009052, 2022 WL 887242 (Cal. Sup. Ct. Mar. 17, 2022), the court explained the challenges a party may face in collecting linked documents:

> At first glance, this process may seem fairly straightforward and analogous to producing email attachments in family relationships. Nevertheless, linked documents can present unique challenges that make them different from email attachments. For example, a responding party may not be able to collect the precise linked document referenced in a message if the document has been modified or deleted. In some instances, users have made linked documents inaccessible by revoking access to files, thus disabling the responding party's ability to collect that information. Finally, linked documents can also create review challenges and inefficiencies given the complexity of connecting those documents to the communications which reference them.

*Id.* at ¶ 6. The court denied plaintiff's request for the defendant to produce all linked documents as families because, in light of the technological challenges, plaintiff failed to "advance[] fact specific good cause to substantiate" such a production. *Id.* at ¶ 7. These are the exact challenges facing StubHub here and, similarly, Plaintiffs have failed to provide any reason beyond the production specification in the ESI Protocol as to why production of the documents in this manner is necessary or proportional to the needs of the case. Simply stated, the law is on StubHub's side in this dispute.

### iii. Plaintiffs Fail to Establish That the Hyperlink Issues Were Foreseeable.

Plaintiffs argue that good cause does not exist here because StubHub should have seen this coming and should not have agreed to the production specification at issue. In arguing foreseeability, Plaintiffs make baseless arguments about the transition of data from StubHub's systems to viagogo's systems due to an acquisition. (Opp. at 18–19.) But as noted before, this transition was ongoing and occurred in the midst of the negotiations of the ESI Protocol in April 2022. (O'Toole Decl. ¶ 42.) StubHub had no insight into the impact of the transition from various IT systems, and did not know which IT systems would house which documents, as a result of the acquisition of StubHub by

viagogo. Plaintiffs have no evidence that StubHub failed to preserve the underlying documents themselves throughout this transition.

Further, the scope of discovery had not yet been established, as numerous pending objections to discovery requests were unresolved at the time of the ESI Protocol negotiations. Other developments in the case after the ESI Protocol were negotiated made discovery much more onerous and burdensome. Ultimately, more than six years of discovery, dating back to 2016, was permitted by the Court. This goes well beyond what is relevant and at issue in this litigation, namely the March 25, 2020 change in the refund policy. Further, Plaintiffs continued to enlarge the scope of discovery until March 2023—mere weeks before StubHub's substantial completion deadline at the time. (O'Toole Decl. ¶¶ 24–27.) Plaintiffs' assertions that the scope of discovery have no bearing on the foreseeability of this problem carry no weight. (Opp. at 19–20.). Despite knowing the severe challenges StubHub is facing, Plaintiffs' counsel refused to negotiate a limitation on the hyperlinks ruling, so StubHub is currently faced with manually reviewing millions of emails the vast majority of which were created <u>years before</u> StubHub (or the world) had any knowledge of the devastation that COVID-19 would cause in 2020.

### iv. Plaintiffs Fail to Show How They Would Be Harmed by Modification of the ESI Protocol.

To date, StubHub has collected and reviewed more than six million documents and produced more than 52,000 responsive, non-privileged documents to Plaintiffs. (O'Toole Decl. ¶ 41.) Yet, Plaintiffs would have this Court believe that this is not enough. Plaintiffs argue that permitting the requested modification would leave them without substantive information that would inhibit them from preparing their class certification motion. (Opp. at 23.) But Plaintiffs are proceeding towards class certification without this information—they have not sought to move their filing deadline as a result of this issue and they are proceeding with depositions of StubHub witnesses without these so-called essential documents. Two weeks ago, Plaintiffs issued eleven deposition notices to StubHub witnesses that they seek to schedule.[3] Plaintiffs incorrectly state that this modification would come

---

[3] Plaintiffs repeatedly assert that they should be allowed to take a Rule 30(b)(6) deposition of StubHub on this issue. (Opp. 22–23.) StubHub has never opposed the taking of such a deposition—

1   after the close of discovery (ECF No. 208 at 23)—no close of fact discovery has been set by this
2   Court. Discovery is ongoing, with Plaintiffs just beginning to notice their own depositions more than
3   three years into the case.[4] Plaintiffs have provided no sound reasoning as to how they will be harmed
4   by a failure to produce hyperlinked documents as attachments, rather than simply as documents as
5   they exist in StubHub's systems. That is because, as described above, StubHub has already collected,
6   reviewed, and produced any responsive, non-privileged documents from internal sources like Google
7   Drive and Sharepoint. *See supra*, at Sec. I.A.i. Plaintiffs, therefore, already have the documents.

8   **B.     Plaintiffs' Claims of Inequitable Treatment Go Both Ways.**

9   Plaintiffs argue that modifying the ESI Protocol now would result in unreasonable and
10  inequitable treatment of the parties. (Opp. at 23–25.) Yet, Plaintiffs themselves have likewise failed
11  to comply with these same obligations under the express provisions of the ESI Protocol, making their
12  efforts to counter this Motion hypocritical, at best.

13  Paragraph 5(b) of the ESI Protocol outlines production specifications for Plaintiffs and
14  expressly states, "For email families in Plaintiffs' productions, any parent-child relationships should
15  be preserved. Email attachments should be consecutively produced with the parent email record."
16  (ECF No. 96 at ¶ 5(b).) The terms of the ESI Protocol that StubHub seeks to modify define a parent-
17  child relationship to include hyperlinked documents that are not publicly available—that is the core
18  of the dispute here. Yet, on multiple occasions in their own productions, Plaintiffs failed to preserve
19  that parent-child relationship as required by the agreed upon terms. There are numerous documents
20  in Plaintiffs' productions with hyperlinks to private messages with consumer protection, state
21  agencies, or other entities where Plaintiffs failed to produce the linked message at all, let alone as an
22  attachment as required by the ESI Protocol. StubHub should not be held to a standard that Plaintiffs
23  themselves deemed impossible. If anything, requiring StubHub to comply with these terms of the
24  ESI Protocol would lead to an inequitable result.

---

in fact, Plaintiffs have never even noticed such a deposition. Any argument that StubHub is avoiding this deposition is absurd and unfounded.
[4] In this time, StubHub has completed the depositions of the 56 named plaintiffs that chose to remain in the case.

### III. CONCLUSION

For the foregoing reasons, and those submitted in StubHub's opening memorandum, StubHub respectfully requests that this Court modify Paragraphs 1 and 2 of the section titled Production of ESI in Appendix 1 to the ESI Protocol.

Dated: June 23, 2023                    Respectfully submitted,


*/s/ William P. Donovan, Jr.*
William P. Donovan, Jr. (SBN 155881)
MCDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com

Daniel R. Campbell (*pro hac vice*)
Emilie E. O'Toole (*pro hac vice*)
William W. Hameline (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
dcampbell@mwe.com
eotoole@mwe.com
whameline@mwe.com

*Counsel for Defendant StubHub, Inc.*