Tina Wolfson (SBN 174806)
Bradley K. King (SBN 274399)
Henry J. Kelston (Pro Hac Vice)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585
twolfson@ahdootwolfson.com
bking@ahdootwolfson.com
hkelston@ahdootwolfson.com

Tiasha Palikovic (Pro Hac Vice)
Jessica L. Hunter (Pro Hac Vice)
**WITTELS MCINTURFF PALIKOVIC**
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
tpalikovic@wittelslaw.com
jlh@wittelslaw.com

*Plaintiffs' Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: STUBHUB REFUND LITIGATION | Case No. 4:20-md-02951-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS RELATING TO HYPERLINKS DISPUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Hon. Thomas S. Hixson<br>Date:   April 11, 2024<br>Time:  10:00 A.M. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. PROCEDURAL BACKGROUND ...................................................................................... 3

    A.   StubHub Agreed to an ESI Protocol Requiring Production of Hyperlinked Documents as Attachments and Failed to Comply with It. ............................ 4

    B.   StubHub's Noncompliance Occasioned a Nine-Month Meet and Confer Process. .......... 4

    C.   StubHub Conducted a Belated and Inadequate Search for Links in Documents Previously Produced. ............................................................. 6

    D.   Epiq Only Attempted to Collect Predetermined Linked Documents from Google Drive and Did Not Conduct Its Own Search for Links. ................................... 7

    E.   StubHub Failed to Produce Linked Documents from Sharepoint or Tableau. ................. 9

    F.   StubHub Cannot Explain Its Failure to Comply with the ESI Protocol. ........................ 10

    G.   StubHub Has the Ability to Locate All Links in the Documents It Produced. ................ 11

    H.   Additional Hyperlinked Documents Can Be Located with Existing Tools. .................... 11

IV. ARGUMENT ..................................................................................................................... 12

    A.   Sanctions Are Warranted Under Rule 37(b)(2)(A). ....................................................... 12

        1.   Legal Standard.................................................................................................... 12

        2.   StubHub Violated the ESI Protocol. .................................................................. 13

        3.   StubHub Violated the Amended Scheduling Order. ........................................... 13

        4.   StubHub Violated the Discovery Order. ............................................................. 14

        5.   Remedies for StubHub's Violations of Court Orders. ........................................ 16

            a.   Remedies for Violation of the ESI Protocol. ......................................... 16

            b.   Remedies for Violation of the Discovery Order. .................................... 18

    B.   Sanctions Are Warranted Pursuant to the Court's Inherent Authority. .......................... 18

        1.   Legal Standard.................................................................................................... 18

        2.   StubHub Repeatedly Made False and/or Misleading Statements to the Court and Plaintiffs Regarding Actions It and Its Vendors Took to Attempt to Produce Linked Files. .................................................................................................. 19

        3.   StubHub Did Not Produce Relevant ESI by the Court-Ordered Deadline. ............. 21

        4.   StubHub Counsel Failed to Conduct a Reasonable Investigation of StubHub's Ability to Comply with the ESI Protocol and, After Being Notified of Its Client's Non-Compliance, Failed to Act in a Manner Consistent with Its Obligations Under the Federal Rules. ................................................................. 22

    C.   Sanctions Are Warranted Under Rule 26(g). ................................................................. 23

V. PRAYER FOR RELIEF ..................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

3     **Cases**                                             **Page(s)**

4    *Classic Soft Trim, Inc. v. Albert*,
      No. 618CV1237ORL78GJK, 2020 WL 6734369 (M.D. Fla. June 15, 2020).............................17

5

   *Corker v. Costco Wholesale Corp.*,
6       No. 2:19-CV-00290-RSL, 2023 WL 4623753 (W.D. Wash. July 19, 2023) .............................24

7
   *Evon v. L. Offs. of Sidney Mickell*,
8       688 F.3d 1015 (9th Cir. 2012) .........................................................................13

9    *Fink v. Gomez*,
      239 F.3d 989 (9th Cir. 2001) .........................................................................18
10

11    *Hahn v. Minn. Beef Ind.*,
      No. 00-2282 RHKSRN, 2002 WL 32667146 (D. Minn. Mar. 8, 2002).....................................17
12

13    *HM Electronics, Inc. v. R.F. Technologies, Inc.*,
      No. 12-cv-2884, 2015 WL 471498 (S.D. Cal. Aug. 7, 2015).....................................22

14
   *HRC-Hainan Holding Co., LLC v. Yihan Hu*,
15       No. 19-MC-80277-TSH, 2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) .....................................12

16    *In re Crystal Palace Gambling Hall, Inc.*,
      817 F.2d 1361 (9th Cir. 1987) .........................................................................13
17

18    *In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
      655 F. Supp. 3d 899 (N.D. Cal. 2023)......................................................................19
19

20    *Jordan v. Mirra*,
      No. 1:14-CV-01485-GAM, 2019 WL 2127788 (D. Del. Feb. 27, 2019)...................................17

21
   *Kannan v. Apple Inc.*,
22       No. 17CV07305EJDVKD, 2020 WL 9048723 (N.D. Cal. Sept. 21, 2020) ..............................21

23    *Kosher Sports, Inc. v. Queens Ballpark Co., LLC*,
      No. 10-CV-2618 JBW, 2011 WL 3471508 (E.D.N.Y. Aug. 5, 2011) .....................................21
24

25    *LegalForce RAPC Worldwide P.C. v. Demassa*,
      No. 18-CV-00043-MMC(TSH), 2019 WL 3779472 (N.D. Cal. Aug. 12, 2019).......................13

26
   *Malhiot v. Southern California Retail Clerks Union*,
27       735 F.2d 1133 (9th Cir. 1984) .........................................................................21

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Moser v. Health Ins. Innovations, Inc.*,
    No. 17CV1127-WQH(KSC), 2018 WL 6735710 (S.D. Cal. Dec. 21, 2018)...........................17

4

5

*Optrics Inc. v. Barracuda Networks Inc.*,
    No. 17-CV-04977-RS (TSH), 2021 WL 411349 (N.D. Cal. Feb. 4, 2021)...................13, 17, 18

6

*Primus Automotive Financial Services, Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) .........................................................................................20, 21

7

8

*R & R Sails, Inc. v. Ins. Co. of Pa.*,
    673 F.3d 1240 (9th Cir. 2012) ................................................................................................22

9

10

*Rhea v. Washington Dep't of Corr.*,
    No. C10-0254 BHS KLS, 2010 WL 5395009 (W.D. Wash. Dec. 27, 2010) ...........................24

11

12

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)...........................................................18

13

*Schreiber v. Friedman*,
    No. 15-cv-6861 (CBA) (JO), 2017 WL 11508067 (E.D.N.Y. Aug. 15, 2017) .........................17

14

15

*Song v. Drenberg*,
    No. 18CV06283LHKVKD, 2020 WL 60212 (N.D. Cal. Jan. 6, 2020) .....................................13

16

17

*Sterle v. Elizabeth Arden, Inc.*,
    No. 3:06 CV 10584(DJS), 2008 WL 9611216 (D. Conn. Apr. 9, 2008)...................................17

18

*Younes v. 7-Eleven, Inc.*,
    312 F.R.D. at 705 (D.N.J. 2015).............................................................................................21

19

20

**Rules**
Fed. R. Civ. P. 26(g) .....................................................................................................1, 2, 23

21

Fed. R. Civ. P. 26(g)(1) ..........................................................................................................24

22

Fed. R. Civ. P. 26(g)(2) ..........................................................................................................25

Fed. R. Civ. P. 30(b)(6) .....................................................................................................*passim*

23

Fed. R. Civ. P. 34.............................................................................................................13, 24

24

Fed. R. Civ. P. 37(b)(2) ...........................................................................................................13

Fed. R. Civ. P. 37(b)(2)(A)..............................................................................................1, 12, 25

25

Fed. R. Civ. P. 37(b)(2)(C) ...........................................................................................12, 16, 25

26

27

28

1    PLEASE TAKE NOTICE THAT on April 11, 2024, at 10 A.M., or as soon thereafter as the

2  matter may be heard, before the Honorable Thomas S. Hixson of the United States District Court

3  for the Northern District of California, in Courtroom E, located at 450 Golden Gate Avenue, San

4  Francisco, CA 94102, Plaintiffs will move for sanctions against StubHub and its counsel.

5    The issue to be decided is whether sanctions should be imposed against StubHub and its

6  counsel for the conduct described herein.

7  **I.   <u>INTRODUCTION</u>**

8    Plaintiffs respectfully request that the following sanctions be imposed against StubHub and

9  its counsel: 1) sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) for violating three

10  court orders; 2) sanctions under the Court's inherent authority for acting in bad faith and

11  vexatiously in discovery; and 3) sanctions for violating Federal Rule 26(g) by signing two discovery

12  responses that were unreasonable and contrary to the Federal Rules.

13    The three court orders StubHub violated are (i) the Stipulated Order Governing Discovery

14  of Electronically Stored Information ("ESI Protocol" or "Protocol") entered by the District Court

15  on April 21, 2022 (ECF No. 96), requiring, *inter alia*, that linked (or "hyperlinked") documents be

16  produced as attachments to the documents containing the links targeting them; (ii) the Amended

17  Scheduling Order ("Scheduling Order") entered on April 18, 2023 (ECF No. 188), setting May 12,

18  2023 as the deadline for completion of document production;  and (iii) the Discovery Order issued

19  by this Court on April 25, 2023 (ECF No. 194) ("Discovery Order"), requiring StubHub to produce

20  its documents in conformity with the ESI Protocol by the production deadline or, if it failed to do

21  so, produce a Rule 30(b)(6) witness "with full knowledge of everything StubHub and its vendors

22  did in attempting to produce linked documents as attachments as required by the ESI Protocol."

23    There is no question that StubHub violated the hyperlinks provisions of the ESI Protocol;

24  this Court so held in the Discovery Order and there has been no change in facts or circumstances

25  to warrant a reversal of that finding. Likewise, there is no doubt that StubHub violated the

26  Scheduling Order; StubHub has acknowledged that it failed to complete document production in

27  accordance with the ESI Protocol by the Court-ordered deadline and, also, produced documents

28  after the deadline. And, as detailed below, StubHub violated the Discovery Order by producing a

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 4:20-md-02951-HSG)

Rule 30(b)(6) witness who did not—by a wide margin—have full knowledge of StubHub's and its vendors efforts to comply with the ESI Protocol. Sanctions are warranted under Rule 37 for StubHub's serial violations of court orders.

Plaintiffs also seek sanctions pursuant to the Court's inherent authority on the grounds that StubHub acted in bad faith and vexatiously in discovery. Specifically, StubHub and its counsel failed to conduct a reasonable investigation into the company's document systems and non-custodial sources likely to contain discoverable information before agreeing to the ESI Protocol, failed to produce documents from some non-custodial sources, and repeatedly made false and/or misleading statements to the Court and Plaintiffs regarding the actions it and its vendors took to attempt to comply with the Protocol and the feasibility of compliance. StubHub's misconduct resulted in a totally unnecessary nine-month morass of meet and confers, court submissions and hearings, a Rule 30(b)(6) deposition and, ultimately, this motion.

Finally, sanctions under Federal Rule 26(g) are warranted for StubHub counsel's signing of three iterations of StubHub's Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents, dated February 18, 2022, April 1, 2022, and June 7, 2022, stating that StubHub would produce documents in accordance with Plaintiffs' Requests, which required production of hyperlinked documents as attachments. Sanctions should be imposed as well for counsel's signing of Objections to Plaintiffs' Notice of Rule 30(b)(6), lodging objections that were clearly contrary to the Court's Discovery Order.

As this Court previously found:

> Litigants should figure out what they are able to do before they enter into an agreement to do something. Litigants should live up to their agreements, especially when they are embodied in court orders, as the ESI Protocol is here. And if for some reason, a party learns that a so-ordered discovery agreement has become impossible to comply with, the party should promptly move for relief, with a good showing that despite its best efforts, compliance is impossible. In this case, StubHub has decided to do "none of the above." Its document production is in violation of the ESI Protocol, StubHub hasn't done everything it could, it hasn't moved for relief from the protocol, and it hasn't settled on a clear story for why producing the linked documents can't be done.

Discovery Order at 3. StubHub's serial violations of court orders and other misconduct have caused substantial prejudice to Plaintiffs in the form of discovery delays and unnecessary attorneys' fees

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 4:20-md-02951-HSG)

and expenses. The time has come for StubHub to face the consequences of its cavalier treatment of the hyperlinks issue. Appropriate sanctions should be imposed.

## II.  **PROCEDURAL BACKGROUND**

On April 21, 2022, the District Court entered the stipulated ESI Protocol, which included Technical Specifications requiring the production of documents targeted by hyperlinks in emails or other files as separate, attached documents. ECF No. 96 at 11-13.

On July 8, 2022, Plaintiffs notified StubHub that it had failed to produce hyperlinked documents as required by the Protocol in its document production on June 22, 2022. After extensive meet and confer efforts failed to resolve the issue, Plaintiffs filed a Joint Letter Brief seeking to compel StubHub to comply with the ESI Protocol on April 13, 2023. ECF No. 183.

On April 25, 2023, this Court granted Plaintiffs' motion to compel, finding that, "with a handful of exceptions," StubHub had not complied with the hyperlinks provisions of the ESI Protocol. StubHub was ordered to produce its documents in conformity with the Protocol by the May 12, 2023, deadline to complete document production or, if it failed to do so, to produce a "Rule 30(b)(6) witness with full knowledge of everything StubHub and its vendors did in attempting to produce linked documents as attachments as required by the ESI Protocol." Discovery Order at 4. Rather than comply with this Court's Order, on May 9, 2023, StubHub filed motions to modify the ESI Protocol (ECF No. 202) ("Motion to Modify"), and for relief from this Court's Discovery Order (ECF No. 203) ("Motion for Relief"). Shortly thereafter, the case was stayed pending resolution of StubHub's (largely frivolous) appeal of a different order to the Ninth Circuit Court of Appeals.

On January 16, 2024, after the denial of StubHub's appeal, the District Court ordered the parties to proceed with the 30(b)(6) deposition, just as this Court had ordered nearly nine months earlier. Plaintiffs served a Notice of Rule 30(b)(6) Deposition on January 24, 2024. Declaration of Henry J. Kelston ("Kelston Dec."), Ex. A. StubHub served Objections to the Notice of Deposition on January 30, 2024. *Id*. Ex. B. The deposition of StubHub's designated witness, James Wright, was taken February 6, 2024. *Id*., Ex. C. On February 20, 2024, the District Court denied StubHub's Motion for Relief, terminated as moot StubHub's Motion to Modify, and ordered that any motion for sanctions be filed by March 5, 2024, and noticed before this Court. ECF No. 240.

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 4:20-md-02951-HSG)

### III.  **FACTUAL BACKGROUND**

#### A.  **StubHub Agreed to an ESI Protocol Requiring Production of Hyperlinked Documents as Attachments and Failed to Comply with It.**

Over a period of two months beginning in February 2022, the parties negotiated and revised the stipulated ESI Protocol, including the hyperlinks provisions giving rise to this dispute. Drafts of the ESI protocol addressed the hyperlink issue as early as March 2022. ECF No. 208-1 (Declaration of Jessica L. Hunter in Opposition to StubHub's Motion to Modify), at ¶ 4. Four weeks later—ample time for StubHub to conduct its due diligence to determine whether it was capable of or willing to comply with these provisions—the parties reached agreement on the final version of the Protocol. The District Court "so-ordered" the Protocol on April 21, 2022. ECF No. 96.

Beginning on June 22, 2022, StubHub produced a significant number of emails and other documents containing hyperlinks to internal document repositories (chief among them, Google Drive, Sharepoint and Tableau) without the linked documents as attachments. ECF No. 208-1, at ¶¶ 23, 30. It is undisputed that StubHub's document productions did not comply with the hyperlinks provisions in the Protocol. Discovery Order at 2 ("[B]oth sides agree that with a handful of exceptions, [StubHub] has not lived up to this part of the ESI Protocol.").

#### B.  **StubHub's Noncompliance Occasioned a Nine-Month Meet and Confer Process.**

Plaintiffs notified StubHub of its noncompliance with the ESI Protocol on July 8, 2022. ECF No. 208-1, ¶ 31. The parties then met and conferred from August 17, 2022, until the Joint Letter Brief was filed on April 13, 2023. The entire meet and confer process would have been avoided if StubHub had conducted a reasonable investigation before agreeing to the ESI Protocol. But, having already entered into and then violated the Protocol, instead of engaging in an informed and forthright meet and confer process, StubHub counsel exacerbated its initial failure by adopting uninformed, shifting and often-conflicting positions regarding the feasibility of complying and StubHub's efforts to do so.

For example, on July 22, StubHub claimed that it was "unable to link the documents, as they are primarily Google Drive links." ECF No. 208-7 at 11–12. StubHub also "informed Plaintiffs in August 2022 that it was not possible for it to collect emails with hyperlinked documents attached

as children." ECF No. 202 at 6. But when the parties first met and conferred on August 17, 2022, StubHub acknowledged that it was no longer claiming inability to link the documents. ECF No. 208-1, at ¶ 34.

StubHub's conflicting statements about the feasibility of complying with the ESI Protocol continued throughout the meet and confer process and in its statements to the Court. In its Motion for Relief, StubHub said this Court's Discovery Order "compels the impossible." ECF No. 203 at 4. In its Motion to Modify, StubHub asserted (with no supporting evidence) that compliance would involve a "time—consuming and expensive process" but also called the task "impossible." ECF No. 202 at 6-7. Meanwhile, StubHub counsel described what StubHub would need to do to comply with the Protocol. ECF No. 202-1 (Declaration of Emilie E. O'Toole), ¶ 32.

It was clear that StubHub counsel did not know even basic facts about the ESI at issue, including which email platform its client was using or which non-custodial sources contained relevant ESI.[1] On August 17, 2022, four months after signing the ESI Protocol and six weeks after being notified of StubHub's noncompliance, counsel said it did not know what email system StubHub used but asserted that it was not Gmail. The following week counsel informed Plaintiffs—*incorrectly*—that StubHub did use Gmail. ECF No. 208-1, ¶ 25. StubHub did not disclose until March 9, 2023—almost seven months later—that it "did not and does not use the Gmail platform" and that it uses "Microsoft 365 online Exchange" for email. *Id*., ¶ 63.

Well into the meet and confer process, StubHub counsel was also uninformed about which non-custodial repositories at StubHub contained potentially relevant documents. Although documents containing links to Google Drive, Sharepoint and Tableau had been produced beginning on June 22, 2022, on December 12, 2022 StubHub counsel wrote that "Google Drive is the only

_____

[1] To assess the feasibility of producing documents as attachments to the emails containing the links, it was critically important to know which email system StubHub used and which document storage system(s) contained the linked documents. See Motion to Modify at 9 ("[A]ny software that might exist to collect some hyperlinks in emails, only works to collect hyperlinked documents where the entity uses the Gmail platform for email and the link points to Google Drive."); ECF No. 202-4, at ¶ 9 (declarant from defense vendor Epiq stating that a possible scenario to identify and collect hyperlinked documents is "more improbable when…e-mail and document storage systems reside on different technology platforms hosted by two rival companies, Google and Microsoft."); ECF No. 208-7 at 11-12 ("StubHub is unable to link the documents, as they are primarily Google Drive links.").

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 4:20-md-02951-HSG)

non-custodial source likely to contain relevant information." ECF No. 208-8 at 2.

### C. StubHub Conducted a Belated and Inadequate Search for Links in Documents Previously Produced.

After being advised that its document productions violated the ESI Protocol, StubHub engaged in a belated and superficial effort to produce hyperlinked documents and exaggerated the extent and efficacy of its efforts to Plaintiffs and the Court.

The discovery team at McDermott, Will & Emery ("MWE"), StubHub's counsel, attempted to locate links to Google Drive in responsive documents. ECF No. 202-1, ¶¶ 14, 39. This search was inadequate for several reasons. First, MWE searched only for links to Google Drive, not Sharepoint or Tableau. Second, StubHub had already collected data without harvesting linked-to child files so that the family relationship could be kept intact, and applied search terms to those bare parent files, thus culling from the review any parent files that did not hit on search terms, even if their uncollected child documents contained search terms (e.g., a parent email reading simply "Please provide comments" followed by a link). Third, to process the documents for production, StubHub used RelativityOne, which purportedly does not extract the link address if it has been modified on the face of the document (e.g., to appear as "Click Here" rather than the full link address). ECF No. 202-1, ¶ 10. Consequently, MWE searched for and located only links that appeared in full in the text of the document, excluding a substantial (but unknown) number of links whose text had been modified.

StubHub could have easily located all of the links in the responsive documents, even those with modified text, by searching the native files instead of the files as they were processed by RelativityOne but did not do so. Declaration of Paul McVoy ("McVoy Dec."), ¶ 8. MWE located a total of 6,036 links. ECF No. 202-1, ¶ 39.

Perhaps unsurprisingly given the superficial nature of MWE's search for links, StubHub misrepresented and exaggerated the scope and results of the search. StubHub counsel stated that "StubHub performed a search across all documents previously produced that contained a link to Google Drive [and] hired a vendor…to search and pull all the files targeted by the links." ECF No. 208-7 at 3. This was not true. MWE searched only for Google Drive links for which the full address

was included in the extracted text in RelativityOne. ECF No. 202-1, ¶¶ 10, 14.

On April 13, 2023, StubHub counsel told the Court that "StubHub searched for documents that contained links across both *its review set* and the documents it previously produced." ECF No. 183 (Joint Letter Brief) at 6 (emphasis added). This was not true. The search for links was not done in StubHub's review set, which included 693,479 documents. ECF No. 202-1, ¶ 41. On May 9, 2023, counsel acknowledged that MWE searched for links only "in responsive documents or their family members." ECF No. 202 at 10. See also ECF No. 202-1, ¶ 14 (stating MWE searched links to Google Drive documents "across all documents deemed responsive to Plaintiffs' request."). That search included approximately 52,700 documents, just 7.6% of the number of documents MWE claimed to have searched only three weeks earlier. Kelston Dec. ¶ 10.

### D. Epiq Only Attempted to Collect Predetermined Linked Documents from Google Drive and Did Not Conduct Its Own Search for Links.

In August 2022, StubHub retained e-discovery vendor Epiq to conduct a highly circumscribed attempt to locate hyperlinked documents using inadequate proprietary software. StubHub misrepresented the nature and efficacy of Epiq's efforts. Epiq was retained to collect linked documents from Google Drive *only.* ECF No. 202-1, ¶ 13. Although StubHub should have known long before August 2022 that relevant documents contained links to Sharepoint and Tableau as well, it admitted that Google Drive was "the only relevant source of hyperlinked documents that StubHub was aware of at the time[,] included in the responsive documents." ECF No. 202 at 4.

StubHub provided the list of 6,036 links to Epiq. Epiq was not given access to the native emails or other documents to search for other links. ECF No. 202-1, ¶ 14. This is significant, given that native emails can be searched for links and can be used to match links in the emails to the target documents in Google Drive. *See infra* section III(G).

Again, StubHub exaggerated the scope and results of Epiq's search for linked documents. StubHub counsel misrepresented to the Court that Epiq was given access to StubHub's "systems" and "ran its software across the entire systems to pair up links." ECF No. 183 at 5. James Wright, StubHub's designated Rule 30(b)(6) witness, squarely contradicted these statements, testifying that Epiq was given access only to StubHub's Google Workspace. Kelston Dec., Ex. C at 214-15.

By its own account, Epiq succeeded in locating documents for only 1,004 (approximately 17%) of the 6,036 instances of links MWE had provided it. ECF No. 202-4, ¶ 12. Of those 1,004, StubHub claims 931—*nearly 93%*—of them are in documents that StubHub has deemed privileged. Kelston Decl., ¶11-13. To date, StubHub has not produced a privilege log for those documents. *Id*. Thus, while StubHub told the Court that "[a]ny documents that were responsive and not privileged were produced to Plaintiffs as child documents to the parent document," it failed to inform the court that this amounted to (at most) 73 child documents, Kelston Dec., ¶ 12, only 17 of which have ever been identified to Plaintiffs.[2] ECF No. 208-1, ¶ 70. StubHub has never claimed to have produced all 73 documents in accordance with the ESI Protocol and StubHub's productions contain no metadata that allows Plaintiffs to determine whether they have been produced. Kelston Dec., ¶ 12.

Epiq's efforts to locate linked documents were unsuccessful: setting aside the issue of StubHub's potentially overbroad privilege designations, Epiq failed to locate documents for 83% of the instances of links it was given. Even Russel Brown of Epiq did not claim in his declaration that this failure rate was reasonable or acceptable. ECF No. 202-4. Mr. Brown did not explain if or how Epiq's tool has been validated, nor did he compare the 83% failure for StubHub's links to results Epiq achieved for other companies. *Id*.

StubHub's other "expert," Julie Lewis opined that Epiq's "approach," i.e., running its proprietary software to locate linked documents, was reasonable but did not say that an 83% failure rate was normal or acceptable. ECF No. 202-5. Ms. Lewis made no independent inquiry and rendered her opinion based solely on the information StubHub provided to her. She did not claim to have validated Epiq's proprietary tool or even reviewed Epiq's own validation of the tool. *Id*.

On May 8, 2023, StubHub counsel provided to Plaintiffs a list containing 1,033 of the 6,036 Google Drive links it had provided to Epiq, with a cover email stating that the remaining 5,003

---

[2] When it suited StubHub's need of the moment, StubHub described Epiq's software as more rudimentary than it was in order to exaggerate the burden borne by StubHub when the tool was used. StubHub told Plaintiffs and the Court that the Epiq tool "could allow it to try to *collect the linked Google Drive documents manually* and then manually create a parent-child relationship between the two documents." ECF No. 202-1, ¶ 15 (emphasis added). In fact, according to Epiq, no manual collection was needed. ECF No. 202-4, ¶ 10 ("The program is designed to intake Google Workspace hyperlinks, lookup the hyperlink in the Google Workspace environment. and download documents referenced by the hyperlink.").

1    links were omitted because they were found in privileged documents. Kelston Dec., ¶ 13.

2              **E.    StubHub Failed to Produce Linked Documents from Sharepoint or Tableau.**

3         StubHub failed to conduct timely searches in Sharepoint and Tableau for responsive

4    documents and failed to timely produce linked documents from those repositories in accordance

5    with the ESI Protocol. As this Court wrote in its Discovery Order on April 25, 2023, as to linked

6    documents in Sharepoint and Tableau, StubHub "has not searched for responsive documents in

7    those repositories in an effort to find the linked documents." Discovery Order at 2.

8         The linked documents in Sharepoint could have been readily produced. Microsoft 365

9    Exchange, the email system StubHub uses, offers e-discovery tools that enable the collection and

10   production of linked documents from Sharepoint along with the email containing the link.[3].

11   Although StubHub has repeatedly invoked the fact that its email is hosted by Microsoft, and Google

12   Drive is hosted by Google as a reason for its claimed inability to produce linked documents in

13   Google Drive, StubHub counsel inexplicably continues to assert that "the limitations and

14   technological difficulties with producing hyperlinks as attachments apply with equal weight to

15   SharePoint links and Google Drive links." Kelston Dec., Ex D at 5.

16        StubHub failed to investigate non-custodial sources containing potentially relevant ESI

17   (including Sharepoint and Tableau) before agreeing to the ESI Protocol and for at least eight months

18   thereafter. On May 10, 2022, StubHub counsel, in response to an ESI Protocol requirement to

19   disclose "non-custodial document sources likely to contain relevant information," wrote "None."

20   ECF 208-6 at 2. In August 2022, Google Drive was the "the only relevant source of hyperlinked

21   documents that StubHub was aware of [.]" ECF No. 202 at 4. As late as December 22, 2022,

22   StubHub counsel claimed that "Google Drive is the only non-custodial source likely to contain

23   relevant information." ECF No. 208-8 at 2.

24        Until February 16, 2024, StubHub had not claimed to have produced any relevant

25   documents from Sharepoint and the metadata accompanying StubHub's document productions did

26

_____

27   [3] See "Collect cloud attachments in Microsoft Purview eDiscovery (Premium)" at
     https://learn.microsoft.com/en-us/purview/ediscovery-cloud-attachments (last visited on March 4,
28   2024); see also ECF No. 202-5, ¶ 6.

PLAINTIFFS' MOTION FOR SANCTIONS
                                              (No. 4:20-md-02951-HSG)

not identify Sharepoint as the source of any documents. Kelston ¶ 16. On February 16, 2024, nine months after the Court-ordered deadline for the completion of document production, StubHub produced 228 documents it said were found by search terms run in Sharepoint. However, none of those documents were produced as part of a document family (whether by hyperlink or physical attachment) and StubHub has not disclosed whether any of the produced documents were the targets of links in emails or other documents previously produced. *Id.*

## F.   StubHub Cannot Explain Its Failure to Comply with the ESI Protocol.

StubHub has never provided an explanation for its failure to produce linked documents from Google Drive as required by the ESI Protocol. In fact, StubHub has admitted that it does not know why collection of any of the links given to Epiq failed. Discovery Order at 3 (StubHub "doesn't know the specific reason why it was unable to produce the linked document."). StubHub and Epiq acknowledge that Epiq's software does not provide diagnostic information as to why a link failed. Kelston Dec., Ex. C at 221-22. However, other vendors offer programs to retrieve hyperlinked documents that do provide that information. McVoy Dec., ¶ 10.

Lacking knowledge of actual reasons for Epiq's failure to locate 83% of the links to Google Drive, StubHub instead offered hypothetical and speculative excuses as purported justifications for its failure to comply with the ESI Protocol regarding links to Google Drive. This Court observed:

> As for [linked documents in] Google Drive, StubHub offer[ed] various explanations for why it was hard or impossible to locate the linked documents: Maybe the document was moved to a different place; maybe email encryption methods have changed, rendering the links untraceable. At the hearing on April 25, 2023, StubHub added some more possible problems: Loss of personnel, a change in document systems, the difficulty of versioning in Google documents. But StubHub did acknowledge that for most of the links, it doesn't know the specific reason why it was unable to produce the linked document; it was just offering up possibilities.

Discovery Order at 3.

StubHub's Rule 30(b)(6) witness, James Wright, was unable to substantiate any of StubHub's hypothetical excuses and specifically debunked several of them. For example, Russel Brown of Epiq offered that that the hyperlinked documents could not be collected due to "various reasons," including links to Google Forms, administrative account access issues, and a time limit for downloads imposed by Google's infrastructure. ECF No. 202-4. However, Mr. Wright

disclaimed knowledge of data transfers at StubHub that would have caused documents not to exist, Kelston Dec., Ex. C at 244-47, 249-50; he had no knowledge of how many hyperlinks were to Google forms and did not know if StubHub had attempted to find out, *id.* at 236-37; and he rejected outright account access issues and the download time limit as causes of link failure at StubHub. *Id.* at 222-24, 232.

Most significantly, StubHub has claimed that its inability to produce linked documents was likely due to transitions of StubHub's data that occurred in 2021 and 2022 when EBay sold the company to Viagogo. ECF No. 202 at 9-10, n. 3; ECF No. 202-1, ¶ 42. Indeed, as early as August 17, 2022, StubHub's counsel said some of the hyperlinked documents "no longer existed due to various transitions at StubHub over time." ECF No. 202-1, ¶ 15. But Mr. Wright testified that he believed the transitions in 2021 and 2022 did not result in widespread link failures. Kelston Dec., Ex. C at 160-61, 224.

### G.   StubHub Has the Ability to Locate All Links in the Documents It Produced.

Because StubHub processed its documents in a manner that stripped out link addresses if the text of the link had been modified, Plaintiffs are unable to locate all links in the documents produced to date. StubHub, however, can do so.

Even after the text of a link address appearing in an email or other document has been modified, the full link address continues to exist in the native file. Otherwise, the link would not work. McVoy Dec. ¶ 6. Native files can be readily searched to locate all hyperlinks. *Id.*

According to James Wright, the email boxes of employees who transferred from eBay to StubHub were transferred with the employees as part of the acquisition, Kelston Dec., Ex. C at 150, and a litigation hold was issued for this case in April 2020. ECF No. 202-1, ¶ 6. StubHub should, therefore, have the native files containing the links to Google Drive, Sharepoint and Tableau documents that StubHub has failed to produce and the ability to find all hyperlinks in those files.

### H.   Additional Hyperlinked Documents Can Be Located with Existing Tools.

StubHub retained Epiq to run its proprietary software to locate linked documents in Google Drive using the list of links provided by MWE. Despite Epiq's failure rate of at least 83%, there is no evidence that Epiq made any other attempts to locate linked documents. But alternative methods

are available that would likely retrieve more documents than Epiq's tool.

Each document in Google Drive is assigned a unique identifier (sometimes referred to as a Google Drive ID), which also appears in the text of any hyperlink pointing to that document. McVoy Dec., ¶ 9. When a document is exported from Google Drive under the default settings, its unique identifier is not exported with the document. However, there is a simple settings option in Google Drive that causes each document to be exported with a companion file containing its unique Google Drive identifier. *Id.* A script can then be employed to match the exported Google Drive document with an email linking to that document using the unique identifier. *Id.* Alternatively, there are e-discovery vendors that can use native emails to pull hyperlinked documents directly from Google Drive (assuming they are granted the necessary permissions). *Id.*, ¶ 10. (Epiq's efforts may have been hamstrung by StubHub's failure to give Epiq access to the native files containing the links.) As described above, hyperlinked documents in Sharepoint can be readily produced as attachments to emails linked to them using a standard tool in Microsoft 365.

As this Court found, StubHub "hasn't done everything it could" to comply with the ESI Protocol.

## IV. <u>ARGUMENT</u>

### A. Sanctions Are Warranted Under Rule 37(b)(2)(A).

StubHub violated three court orders and sanctions are appropriate under Federal Rule 37(b)(2)(A) with respect to StubHub and its counsel's conduct as to each order.

#### 1. Legal Standard.

Rule 37(b)(2)(A) provides that, if a party "fails to obey an order to provide or permit discovery," the court "may issue further just orders." In addition, Rule 37(b)(2)(C) requires the court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

A finding of bad faith is not required to impose sanctions for a violation of a court order. *HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-MC-80277-TSH, 2020 WL 1643786, at *3 (N.D. Cal. Apr. 2, 2020); *LegalForce RAPC Worldwide P.C. v. Demassa*, No. 18-CV-00043-

MMC(TSH), 2019 WL 3779472, at *3 (N.D. Cal. Aug. 12, 2019) ("Willfulness, fault, or bad faith is not required for the imposition of monetary sanctions under Rule 37(b)(2).") "[S]anctions are appropriate even if the failure to respond was not willful." *Optrics Inc. v. Barracuda Networks Inc.*, No. 17-CV-04977-RS (TSH), 2021 WL 411349, at *5 (N.D. Cal. Feb. 4, 2021). "[T]here is no good faith exception to the requirement of obedience to a court order." *Song v. Drenberg*, No. 18CV06283LHKVKD, 2020 WL 60212, at *2 (N.D. Cal. Jan. 6, 2020). See also *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) "It does not matter what the intent of the [party] was when they disobeyed the court's order.").[4]

### 2.   StubHub Violated the ESI Protocol.

First, as this Court has already found, and StubHub has acknowledged, StubHub failed to comply with the hyperlinks provisions of the Court-ordered ESI Protocol. *See supra* at Sec. III(A). StubHub has not provided any explanation that would excuse its non-compliance, *see supra* at III(F), and certainly has not shown that compliance with the Protocol is impossible (it is not). *See supra* at III(H).[5] Moreover, there is no question that StubHub failed to timely seek relief from the Protocol, doing so only a year after entering into the Protocol and, even then, only after the Court ruled in Plaintiffs' favor in the Discovery Order.

### 3.   StubHub Violated the Amended Scheduling Order.

There is, similarly, no question that StubHub failed to complete document production by the May 12, 2023 deadline in the Amended Scheduling Order. The documents before the deadline were noncompliant with the ESI Protocol. StubHub then produced additional documents on February 16, 2024, nine months after the deadline. Kelston Dec., ¶ 16.

---

[4] The Court also has authority to levy sanctions pursuant to its inherent power for "willful violation of a court order." A willful violation "does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. L. Offs. of Sidney Mickell,* 688 F.3d 1015, 1035 (9th Cir. 2012).

[5] StubHub's document productions also violated Federal Rule 34, which prohibits a responding party from "convert[ing] electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." Fed. R. Civ. P. 34(b), advisory committee's note to 2006 amendment.

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 4:20-md-02951-HSG)

### 4.   StubHub Violated the Discovery Order.

StubHub failed to comply with this Court's Discovery Order requiring production of a "Rule 30(b)(6) witness with full knowledge of everything StubHub and its vendors did in attempting to produce linked documents as attachments as required by the ESI Protocol." Two vendors played important roles in StubHub's attempts to produce linked documents: MWE and Epiq. In direct contravention of the Court's directive, James Wright was unable to provide any information about what MWE or Epiq did beyond the vague and incomplete descriptions in StubHub's previous submissions to the Court. Even his testimony about actions taken by StubHub itself was non-specific and uninformed. The deposition transcript shows that the witness fell far below the requirement of full knowledge of everything StubHub and its vendors did in attempting to produce linked documents.

For example, Mr. Wright had no knowledge of the scope of StubHub's failure to produce hyperlinked documents; he was unable to provide an estimate of the number of links in the documents produced by StubHub; and he did not know whether StubHub has made any attempt to determine that number. Kelston Dec., Ex. C at 200.

StubHub, through its counsel, claims that its inability to produce linked documents is due, at least in part, to transitions of StubHub's data that occurred in 2021 and 2022 because of the company being sold by eBay to Viagogo. "As a result of the sale, all of StubHub's data was temporarily transitioned from the former parent company to a new temporary tenant, StubHubCorp, in the summer of 2021 until April 2022, when all StubHub data was transitioned to Viagogo's tenant." ECF No. 202-1, ¶ 42. However, Mr. Wright did not have basic information about the data transitions. He did not know what data was transferred to the StubHubCorp tenant in 2021 and, more specifically, did not know whether a backup of Google's Workspace (which includes Google Drive) was stored in the StubHubCorp tenant in 2021. Kelston Dec., Ex. C at 138. Asked specifically whether the transfer to Viagogo's tenant included Google Workspace documents, the witness gave a full page of testimony but failed to answer the question. *Id.* at 170-71.

Regarding StubHub's claim that some hyperlinked documents "no longer existed due to various transitions at StubHub over time," Mr. Wright denied knowing what "transitions" were

referenced in the statement and further admitted that he made no inquiries to determine what transitions were referenced or whether the statement was accurate. *Id*. at 244-47.[6]

He did not know when StubHub collected documents for possible production; he was able to say only that he "would assume" or "would expect" that the search for documents would have started when StubHub "[was] made aware that – that they had a requirement to extract and produce those documents." *Id*. at 197. He did not know what search terms were applied to the documents or when they were applied. *Id*. at 204-06.

Mr. Wright could not answer basic questions about MWE's search resulting in the list of 6,036 hyperlinks given to Epiq. Asked whether the documents searched were the 52,485 documents StubHub claimed to have produced, he replied: "I don't know for certain. I'm – I'm sure they searched through the ones they produced. I would believe they searched through ones in addition to that and determine them nonresponsive. I -- whether they limited their search for hyperlinks to pre or post or I -- I think there was iterative, ongoing processes, so I don't have exact knowledge of -- of everything that was done." *Id*. at 191. This response conflicted with StubHub counsel's statement that the 6,036 links came from only the documents produced to Plaintiffs, not documents found to be nonresponsive. ECF No. 202 at 10; ECF No. 202-1, ¶ 14. Mr. Wright also did not know why the list of links provided by MWE to Plaintiffs contained only 1,033 links. *Id*. at 261-63. Nor did he know whether the 73 hyperlinked documents that Epiq claimed to have located were produced to Plaintiffs. *Id*. at 264-65.

Russel Brown of Epiq, in his declaration, stated that MWE "estimated that there are approximately 1.85 million hyperlinks" in the 6,245.423 documents StubHub collected for possible production, and using Epiq's proprietary tool on all 1.85 million hyperlinks (a procedure never proposed by Plaintiffs) would cost more than $550,000. Mr. Wright could not provide any information about how MWE arrived at its estimate of 1.85 million hyperlinks. *Id*. at 198.

---

[6] And when asked whether StubHub had been consulted about the contents of this and other paragraphs offered in defense counsel's factual declaration submitted with StubHub's Motion to Modify, Mr. Wright was directed not to answer by defense counsel. *Id*. at 248.

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 4:20-md-02951-HSG)

Mr. Wright did not know why Epiq was selected as the vendor to recover linked documents. *Id*. at 228 ("This decision was made by counsel, so I can't say what he was –every factor that was– that was considered"). Likewise, Mr. Wright could provide no detail about Epiq's efforts to locate linked documents or about Epiq's proprietary tool; he did not know – and made no effort to find out – whether Epiq made any attempt to locate the hyperlinked documents in Google Drive aside from running its proprietary tool. *Id*. at 238-39. He had no independent judgment as to whether Epiq's 83% failure rate was acceptable; he took the word of Russel Brown at Epiq that the results were not "out of the ordinary." *Id*. at 227.

The witness had no specific knowledge even about actions taken by employees in his own company to locate linked documents in Google Drive and instead relied on assumptions and guesswork. He testified that, when the employees received specific requests to resolve broken links, their "[i]nitial attempt would be a click of a link. If it works that's easy. If it doesn't work, these guys are technology centric field IT professionals who understand URLs, URL formats, so they may have followed through with additional modes to try and -- and get the documents when -- when those requests were made." *Id*. at 212-13.

This is not the testimony of a witness who had "full knowledge of everything StubHub and its vendors did in attempting to produce linked documents as attachments as required by the ESI Protocol." StubHub's violation of the Discovery Order is clear.

### 5. Remedies for StubHub's Violations of Court Orders.

#### a. Remedies for Violation of the ESI Protocol.

The logical and appropriate remedy for StubHub's failure to comply with the ESI Protocol is to compel StubHub to comply, as this Court did in its Discovery Order, with the added proviso that StubHub must clearly document every action it takes to comply. In addition, under Rule 37(b)(2)(C), the Court should order StubHub, its counsel, or both to pay the reasonable attorneys' fees and expenses caused by the failure. In this case, StubHub should pay the fees and expenses incurred by Plaintiffs for (a) analyzing StubHub's productions to assess compliance with the hyperlinks provisions of the ESI Protocol; (b) meeting and conferring with StubHub on the hyperlinks issue and drafting related correspondence; (c) drafting the discovery letter brief on the

links dispute (ECF No. 183); (d) preparing for and attending court hearings regarding the hyperlinks issue; (e) preparing for and taking the court-ordered Rule 30(b)(6) deposition; (f) drafting oppositions to StubHub's Motions to Modify and for Relief; (g) fees for consultants relating to the hyperlinks dispute; and (h) costs incurred for court reporters and transcripts related to the dispute. See *Optrics*, 2021 WL 411349, at *7.

Alternatively, in the event the Court declines to order StubHub to comply with the ESI Protocol, Plaintiffs request an order requiring StubHub to allow Plaintiffs' e-discovery vendor to access the native files of documents StubHub has already produced to Plaintiffs and provide the permissions needed identify linked documents in Google Drive, Sharepoint and Tableau. Allowing direct access to a party's information systems is permissible if there is "a showing of non-compliance with discovery rules," *Classic Soft Trim, Inc. v. Albert*, No. 618CV1237ORL78GJK, 2020 WL 6734369, at *8 (M.D. Fla. June 15, 2020), "discrepancies or inconsistencies in the responding party's discovery responses," *Schreiber v. Friedman*, No. 15-cv-6861 (CBA) (JO), 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017) (cleaned up), or "improper conduct on the part of the responding party," *Moser v. Health Ins. Innovations, Inc.*, No. 17CV1127-WQH(KSC), 2018 WL 6735710, at *5 (S.D. Cal. Dec. 21, 2018), objections overruled, No. 3:17-CV-1127-WQH-KSC, 2019 WL 13391059 (S.D. Cal. Apr. 12, 2019). See also *Sterle v. Elizabeth Arden, Inc.*, No. 3:06 CV 10584(DJS), 2008 WL 9611216, at *10 (D. Conn. Apr. 9, 2008) (access granted due to defense attorney's "obstructive tactics" during discovery); *Hahn v. Minn. Beef Ind.*, No. 00-2282 RHKSRN, 2002 WL 32667146 (D. Minn. Mar. 8, 2002) (access ordered after inaccurate and incomplete information was provided); *Jordan v. Mirra*, No. 1:14-CV-01485-GAM, 2019 WL 2127788, at *8 (D. Del. Feb. 27, 2019), R. & R. adopted, No. CV 14-1485, 2019 WL 2121346 (D. Del. May 15, 2019) (when considering a request to inspect another party's information system, the Court considers evidence that the party "is unable or unwilling to search for the requested information on its own"). In this case, StubHub has checked every box to justify the Court granting Plaintiffs limited access to StubHub's systems.

Importantly, the access Plaintiffs request is limited to documents already produced to Plaintiffs and to the hyperlinked files that StubHub should have produced with those documents

(rather than all of StubHub's emails or its entire Google Drive). Granting Plaintiffs access will either result in the production of more documents that should already have been produced or it will confirm that StubHub produced as many linked documents as possible (short of doing what it was supposed to from the start, i.e. collecting documents with their family relationships intact, running search terms on that universe of native documents, reviewing the results, and producing any responsive non-privileged documents), which it claims to have done but has failed to show.

### b.   Remedies for Violation of the Discovery Order.

The appropriate remedy for StubHub's violation of the Discovery Order by failing to provide an adequate Rule 30(b)(6) witness is to pay attorneys' fees and expenses incurred in the taking of the deposition.  See *Optrics*, 2021, WL 411349, at *3 ("Where a party fails to prepare its witness for a court-ordered Rule 30(b)(6) deposition, it 'impair[s] the value of those depositions and 'thwart[s] the purpose of the Court's order,' and the court may order the offending party to pay attorneys' fees incurred in the preparation for and taking of the deposition.").

### B.   Sanctions Are Warranted Pursuant to the Court's Inherent Authority.

#### 1.   Legal Standard.

"A court's exercise of its inherent sanctioning power is appropriate when there has been "willful disobedience of [a] court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Fink v. Gomez*, 239 F.3d 989, 990 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). Before imposing sanctions,

> the court must find that the conduct "constituted or was tantamount to bad faith." Primus Automotive Financial Services, Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997). That standard may be met when a party misrepresents the law or the facts to the court. *See, e.g.*, Malhiot v. Southern California Retail Clerks Union, 735 F.2d 1133, 1138 (9th Cir. 1984). It may also be met "when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001). Sanctions may be imposed for "delaying or disrupting the litigation or hampering enforcement of a court order." Primus, 115 F.3d at 649.

1   *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924–25 (N.D. Cal.

2   2023). Sanctions against StubHub pursuant to the Court's inherent authority are warranted on

3   multiple grounds.

4                    **2.    StubHub Repeatedly Made False and/or Misleading Statements to the
                             Court and Plaintiffs Regarding Actions It and Its Vendors Took to**

5                    **Attempt to Produce Linked Files.**

6          StubHub's conduct throughout the course of the hyperlinks dispute has been a master class

7   in evasion and obfuscation, with StubHub counsel seemingly saying whatever it believes will

8   forestall consequences resulting from its client's failure to produce linked documents as required.

9          For example, on February 22, 2023, StubHub counsel told this Court that it had been

10  attempting to comply with the ESI Protocol all along: "So here's what we did, Judge. We thought

11  we were doing [what the ESI Protocol requires] in our processing and collection of data exactly

12  what was contemplated." Kelston Dec., Ex. E at 44. But this statement is contradicted by StubHub's

13  admission that it "informed Plaintiffs in August 2022 that it was not possible for it to collect emails

14  with hyperlinked documents attached as children." Motion to Modify at 6. StubHub could not have

15  believed it was doing the impossible when it collected and processed its documents. Moreover,

16  even after producing documents, StubHub counsel did not know basic facts about the task at hand,

17  including which email platform its client was using or which non-custodial sources contained

18  relevant ESI. This, combined with the fact that it was Plaintiffs who first raised the hyperlink

19  deficiency with StubHub, strongly suggests that StubHub had taken *no* steps to comply with the

20  Protocol in its processing and collection of data and did not even attempt to comply until long after

21  it started producing documents.

22         StubHub counsel further stated: "We paid money to hire an expert in this field to run across

23  our entire system their software tool that does exactly this thing. And what we did is we produced

24  all of the linked documents that the vendor could gather in their forensically sound collection." *Id.*

25  at 44.  In fact, Epiq (a vendor, not an "expert") did not have access to StubHub's "entire system,"

26  and instead ran its software tool only against StubHub's Google Drive and only for 6,036 instances

27  of links identified by defense counsel. Moreover, Epiq did not claim to make a "forensically sound

28

1   collection." Counsel further misled the Court to believe that Epiq's efforts were successful by

2   omitting the fact that Epiq's efforts resulted in the production of only 17 linked documents.

3       Even more glaringly, StubHub's counsel has claimed that the transition of data when the

4   company was sold was at least a partial explanation for its inability to locate linked documents,

5   stating: "[T]here was also a change in the system that StubHub used when it was owned by a

6   different company versus afterwards, which I think caused additional complications for us in terms

7   of synching of data." Kelston Dec., Ex. F at 13.  Indeed, defense counsel also asserted in a signed

8   declaration offered in support of StubHub's Motion to Modify, that "the location of the data

9   [targeted by the links] has changed over time, meaning that certain links sent prior to moving that

10  data no longer point to the proper location of that data."  ECF No. 202-1, ¶ 42. This claim was

11  directly contradicted by StubHub's Rule 30(b)(6) witness, who testified that the transitions were

12  accomplished in a manner that avoided widespread problems with document links. Kelston Dec.,

13  Ex. C at 160-61, 224.

14      StubHub counsel has repeatedly exaggerated both what Plaintiffs are seeking and the

15  technical difficulty of complying with the ESI Protocol. For example, on April 25, 2023, counsel

16  told the Court: "What they're talking about now are potentially not receiving all versions of all

17  documents that again no longer exist and haven't existed in a form that's retrievable for years."

18  Kelston Dec., Ex. F at 10. This is false; Plaintiffs have never sought "all versions" of anything.

19  Moreover, StubHub minimizes the impact of its noncompliance. It is not that StubHub has merely

20  failed to produce some versions of a few old documents, but that it has failed to produce virtually

21  *any* hyperlinked documents. Far from insisting on a formalistic and unnecessary application of the

22  Protocol, Plaintiffs are seeking only that which StubHub plainly agreed to: the production of

23  documents attached via hyperlinks as attachments. Likewise, StubHub greatly overstates the

24  technical difficulty of complying with the Protocol by repeatedly referring to "manual" processes

25  that can and should be done programmatically. *See, e.g.*, *supra* fn. 3; McVoy Dec., ¶ 11.

26      StubHub's conduct here was "tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v.*

27  *Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). The bad faith requirement is met where "a party

28  misrepresents the law or the facts to the court," as StubHub did here. *See, e.g.*, *Malhiot v. S. Cal.*

*Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984). Sanctions may also be imposed for "delaying or disrupting the litigation or hampering enforcement of a court order." *Primus*, 115 F.3d at 649. See also *Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, No. 10-CV-2618 JBW, 2011 WL 3471508 at *7 (E.D.N.Y. Aug. 5, 2011) (sanctioning party for "discovery responses and other statements calculated to mislead opposing counsel"); *Younes v. 7-Eleven, Inc.*, No. 23-cv-03500, 312 F.R.D. at 705 (D.N.J. Dec. 11, 2015) (sanctioning party whose discovery responses "were inconsistent with applicable case law and the letter and spirit of the federal rules").

StubHub's false and misleading statements throughout the meet and confer process caused significant delay and additional expense for Plaintiffs. Misrepresentations of fact by StubHub's counsel to the Court satisfy the "bad faith" requirements. Sanctions are warranted.

### 3.   StubHub Did Not Produce Relevant ESI by the Court-Ordered Deadline.

First, as this Court found, as of April 25, 2023—more than 16 months after Plaintiffs' First Request for Production was served—StubHub had failed to search for responsive documents in the document repositories Sharepoint and Tableau to find documents targeted by hyperlinks in emails and other documents StubHub had produced. Discovery Order at 2.

This failure is due, at least in part, to StubHub's failure to conduct a reasonable investigation at the outset of discovery regarding non-custodial sources likely to contain relevant documents. Had StubHub conducted a reasonable investigation, it would have learned that StubHub employees frequently used links to share documents in Sharepoint, Tableau, and other sources in addition to Google Drive.  ECF No. 208-1, at ¶ 27. Instead, even after counsel retained Epiq in August 2022, Google Drive was "the only relevant source of hyperlinked documents that StubHub was aware of at the time," and Epiq was retained solely to attempt to locate linked documents in Google Drive. Both StubHub and its counsel had "obligations to properly search all sources of electronically stored information ("ESI") for responsive documents." *Kannan v. Apple Inc.*, No. 17CV07305EJDVKD, 2020 WL 9048723, at *2 (N.D. Cal. Sept. 21, 2020).

Second, StubHub claims that its production of documents located by the use of search terms in Google Drive and, eventually, Sharepoint, should excuse its failure to produce linked documents from those repositories as attachments in accordance with the ESI Protocol. However, StubHub has

not identified any documents as being produced from Google Drive and none of the documents it belatedly produced from Sharepoint on February 16, 2024 were produced as attachments to emails or other documents. Kelston Dec., ¶ 16. In sum, StubHub has offered no evidence that its productions contain a significant number of the documents targeted by links in emails or other documents. Moreover, even if some of those documents have been produced, their production does not cure the fact that "that Plaintiffs have a bunch of emails and a bunch of documents, but they can't tell what document was linked to what email," in contravention of the Protocol. Discovery Order at 2.

"Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.' " *HM Electronics, Inc. v. R.F. Technologies, Inc.*, No. 12-cv-2884, 2015 WL 471498, at *12 (S.D. Cal. Aug. 7, 2015), vacated in part on other grounds, 171 F. Supp. 3d 1020 (S.D. Cal. 2016)). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012). StubHub has not shown that either is the case here.

**4.    StubHub Counsel Failed to Conduct a Reasonable Investigation of StubHub's Ability to Comply with the ESI Protocol and, After Being Notified of Its Client's Non-Compliance, Failed to Act in a Manner Consistent with Its Obligations Under the Federal Rules.**

As this Court wrote in the Discovery Order, "[l]itigants should figure out what they are able to do before they enter into an agreement to do something." Discovery Order at 3. The Court also observed during the discovery hearing on April 25, 2023, "before a litigant enters into a stipulation like the ESI Protocol here, [it has] an obligation to do some research into the system that [its] client has" and "to understand what's possible." Kelston Dec., Ex. F at 14.

StubHub has admitted that when it agreed to the ESI Protocol, it was "not aware of the impossible burden or technological limitations of retrieving hyperlinked documents because this specification is not a standard provision of an ESI protocol." ECF No. 203 at 7. StubHub counsel also stated in open court that StubHub was "dealing with unforeseen circumstances….So its not like we know what the facts were in their entirety and we decided not to obey them." Kelston Dec., Ex F at 17.

The circumstances underlying this dispute may have been unforeseen by StubHub, but they were not unforeseeable. Even the most perfunctory inquiry would have revealed that StubHub used Microsoft 365 Online Exchange for its email, and that relevant emails and other documents containing links to documents in Google Drive, Sharepoint and Tableau would have to be produced in discovery.

Had StubHub objected to treating hyperlinked documents as attachments before agreeing to the ESI Protocol, Plaintiffs' Counsel would have brought this issue to the Court at that time. ECF No. 208-1, ¶ 22. Failing that, StubHub should have recognized that it was making a non-compliant production in June 2022 and brought the issue to Plaintiffs and the Court then. Either way, if StubHub had made a reasonable effort to comply with its discovery obligations, the hyperlinks issue could have been resolved promptly and efficiently by late summer 2022. Instead, StubHub continued to stonewall for months after Plaintiffs raised the issue, leading to a tortuous series of unnecessary meet-and-confers, serial court submissions and hearings and this motion. *See, e.g.*, ECF No. 208-001 ¶¶ 37-58. Counsel remained uninformed even after being notified by Plaintiffs of StubHub's failure to comply with the Protocol's hyperlinks provisions.

StubHub and its counsel's lack of knowledge regarding the feasibility of producing linked documents and their efforts to do so were the direct cause of months of delay and hundreds of hours of unnecessary work by Plaintiffs' counsel. Sanctions are warranted.

## C.   Sanctions Are Warranted Under Rule 26(g).

Plaintiffs served their First Set of Requests for Production of Documents on January 19, 2022. The Technical Specifications for Document Production, attached to and incorporated in the Requests, included the instruction: "Hyperlinked files must be produced as separate, attached documents." Kelston Dec., Ex. G at 4. Defendants served Responses and Objections to Plaintiffs' Requests, Amended Responses and Objections and, on June 7, 2022, Second Amended Responses and Objections. *Id*., Ex. H. Defendants did not object to the Technical Specifications for Production.

When StubHub counsel signed each version of the Objections and Responses, it knew or should have known that StubHub's productions would not comply with Plaintiffs' Requests, which explicitly required that hyperlinked documents be produced as attachments, or with the hyperlinks

provisions of the ESI Protocol, which had been entered on April 21, 2022. Further, counsel knew or should have known that StubHub's document productions would violate Rule 34's prohibition against degrading the usability of documents from the form in which they are ordinarily maintained. *See* Fed. R. Civ. P. 34(b), advisory committee's note to 2006 amendment. Thus, counsel did not have a "belief formed after reasonable inquiry" that the Responses and Objections were reasonable and consistent with the Federal Rules, as required by Rule 26(g)(1). See *Corker v. Costco Wholesale Corp.*, No. 2:19-CV-00290-RSL, 2023 WL 4623753, at *2 (W.D. Wash. July 19, 2023) (counsel "had an affirmative obligation to ensure that [its client] conducted diligent and thorough searches for discoverable material and that discovery responses were complete and correct when made."). StubHub counsel had "an obligation to not just request documents of his client, but to search for sources of information. Counsel must communicate with the client, identify all sources of relevant information, and 'become fully familiar with …. [the] client's data retention architecture." *Rhea v. Wash. Dep't of Corr.*, No. C10-0254 BHS KLS, 2010 WL 5395009, at *6 (W.D. Wash. Dec. 27, 2010).

Counsel further violated Rule 26(g)(1) by signing Objections to Plaintiffs' Notice of Deposition of StubHub. Topic No. 1 in Plaintiffs' Notice was:

> StubHub and its vendors or other agents' attempts to preserve, collect, search, review, and produce hyperlinked documents in a manner consistent with the ESI Protocol (Dkt. 96) (i.e., here the family relationship between documents containing hyperlinks to internal or nonpublic documents and those so-linked internal or nonpublic documents is preserved)[.]

StubHub's objection to Topic No. 1 stated, in relevant part:

> StubHub objects to this Topic as overbroad and unduly burdensome because it seeks testimony beyond the company's knowledge.   While StubHub, through its corporate representative, may testify to its knowledge of the vendors' "attempts to preserve, collect, search, review, and produce hyperlinked documents," that work was external to the company and facilitated through counsel.  Under FRCP 30(b)(6), StubHub is not obliged to seek out at third-party vendor, learn all that the vendor did, and then educate a corporate witness on that work.   The technical specifics of what the discovery vendors did is neither "known [n]or reasonably available" to StubHub, but the witness can testify as to any interactions with the vendor, any known limitations on the vendor's work, or any other work the company did with the vendor…. Subject to and in accordance with these objections, StubHub will, with respect to vendors, present a corporate witness to testify

1

to StubHub's knowledge of the vendors' "attempts to preserve, collect, search, review, and produce hyperlinked documents."

2

StubHub's objection to Topic 1 was patently contrary to the Discovery Order requiring the

3

production of a "Rule 30(b)(6) witness with full knowledge of everything StubHub and its vendors

4

did in attempting to produce linked documents as attachments as required by the ESI Protocol."

5

StubHub counsel could not have reasonably believed that the objection to Topic No. 1 was

6

consistent with the Federal Rules, not interposed for any improper purpose, and not unreasonable.

7

When the parties met and conferred, StubHub counsel said it would not stand on the objection but

8

refused to withdraw it. (Kelston Dec., ¶ 17) In fact, StubHub did not educate the corporate witness

9

on the work that StubHub's third-party vendors did. *See supra*, Section IV(4).

10

Under Rule 26(g)(2), the Court must impose an appropriate sanction on StubHub, StubHub

11

counsel, or both.  The sanction may–and in this case should–include an order to pay the reasonable

12

expenses, including attorney's fees, caused by the violations.

13

## V.  <u>PRAYER FOR RELIEF</u>

14

Pursuant to Federal Rules 37(b)(2)(A) and (C), the Court's inherent authority, and Federal

15

Rule 26(g), Plaintiffs' respectfully request an order requiring StubHub to:

16

1.  Produce documents in compliance with the hyperlinks provisions of the ESI Protocol and document to Plaintiffs and the Court all actions it takes to ensure compliance or, alternatively, allow Plaintiffs' e-discovery vendor, at StubHub's expense, to access the native files of documents StubHub has already produced to Plaintiffs and permissions needed identify documents in Google Drive, Sharepoint and Tableau that are targeted by hyperlinks in the produced documents;

17

18

19

20

2.  Identify all documents it has produced from Google Drive, Sharepoint or Tableau in conformity with the hyperlinks provisions of the ESI Protocol;

21

22

3.  Identify Google Drive, Sharepoint or Tableau as the source of any documents produced from those repositories in future productions;

23

24

4.  For up to 500 documents to be selected by Plaintiffs that contain links to Google Drive, Sharepoint or Tableau, identify the documents produced from those repositories that are the targets of the links in the selected documents; and

25

26

5.  Pay Plaintiffs' attorneys' fees and expenses in the amount of $502,071.62, as detailed in the Kelston Declaration at ¶¶ 18-20.

27

28

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 4:20-md-02951-HSG)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Dated: March 5, 2024

    */s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
Bradley K. King (SBN 274399)
Henry J. Kelston (Pro Hac Vice)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585
twolfson@ahdootwolfson.com
bking@ahdootwolfson.com
hkelston@ahdootwolfson.com

Tiasha Palikovic (Pro Hac Vice)
Jessica L. Hunter (Pro Hac Vice)
**WITTELS MCINTURFF PALIKOVIC**
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
tpalikovic@wittelslaw.com
jlh@wittelslaw.com

*Plaintiffs' Interim Co-Lead Counsel*