UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STUBHUB REFUND LITIGATION | Case No. 20-md-02951-HSG (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 297, 298, 299, 300 |

The parties have several discovery disputes. ECF Nos. 297, 298, 299, 300. The Court held a hearing on August 12, 2024, and now issues the following order.

**A.  ECF No. 297**

The ESI Order that was entered two years and four months ago required the parties "[w]ithin ten (10) business days," to identify "a list of non-custodial document sources likely to contain relevant information . . ." ECF No. 96 at 2. The order added that "[a]t the request of either party, the parties shall meet and confer in order to add or remove custodians and non-custodial sources as reasonably necessary." Plaintiffs want to start this process over again from the beginning. They ask the Court to order StubHub to "[i]dentify non-custodial data sources likely to have relevant information" and to "[m]ake available a knowledgeable representative(s) to discuss with Plaintiffs' counsel and data analyst the structure of StubHub's databases and the categories of information contained therein that are relevant to the claims and defenses in this case." ECF No. 297 at 3. Plaintiffs also ask "that the Court hold biweekly status conferences to monitor these issues." *Id.* Plaintiffs say that StubHub never properly made these disclosures, so we should do this all over from the beginning.

At the hearing Plaintiffs tried to walk back this request and said it was limited to refund

United States District Court
Northern District of California

1   data, rather than a wholesale redo of non-custodial discovery. But that's not true. In ECF No.

2   297, Plaintiffs ask the Court to order StubHub to "[i]dentfy non-custodial data sources likely to

3   have relevant information," ECF No. 297 at 3, which is what the ESI Order required the parties to

4   do. Plaintiffs absolutely make the argument that "StubHub never complied with the database

5   disclosure requirements in the" ESI Order. *Id*. at 1. Plaintiffs' argument in ECF No. 297 is about

6   "all non-custodial document sources likely to have relevant information," *id*., not just one

7   particular data source. This is a request for a complete redo of non-custodial document discovery,

8   and it is not anything less than that or different from that.

9         The Court is not going to do that. It's not April 2022 anymore. We're not starting this

10  over from the beginning. The identification of non-custodial sources of data is a foundational

11  issue, and you don't get to make an objection to the other side's disclosure and then hold on to that

12  objection forever and ever, and years later ask to start the whole process over from scratch. No

13  way.

14        If Plaintiffs had questions about StubHub's production from its primary operational

15  datastore, or about anything else for that matter, they were free to put them in a 30(b)(6)

16  deposition notice and obtain under-oath answers. Plaintiffs point to references to other databases

17  in StubHub's documents but don't say anything of substance about what records those databases

18  have or why the Court should think they are relevant. Plaintiffs could have served a 30(b)(6)

19  deposition notice asking about those databases too.

20        With respect to StubHub's primary operational datastore, Plaintiffs make an additional

21  request to run a query discussed in the Daren Hutchison Declaration. Apparently, this query

22  would result in "a targeted list of tables and associated questions to serve as the jumping off point

23  for a collaborative, potentially iterative conversation with persons with technical knowledge of

24  StubHub's data, aimed at identifying those tables containing relevant information needed to

25  adequately answer Plaintiffs' Interrogatories." ECF No. 301-33 ¶ 25. The Court is not going to

26  order that. Plaintiffs should ask for what they want in discovery. If StubHub won't provide it,

27  they should move to compel. If StubHub provides it, and Plaintiffs don't understand it, they

28  should serve a 30(b)(6) deposition notice. This is adversarial litigation, and there need to be

2

clearly understood responsibilities. We need to know who did what. If data is produced, we need to know who collected it and produced it, so at the very least it can be used against them. There can't be a blend of responsibilities that allows StubHub to both produce and disclaim the accuracy of data, saying it reflects choices its opponents made – or, worse, a muddy record that permits finger pointing and denial such that the data isn't fully embraced by either side. While the Court understands Plaintiffs' desire to get the "best" data, this is not a school project where everyone can get an A if they work together nicely. This is adversarial litigation where data is meant to be used against one side or the other, and Plaintiffs are overlooking the significant evidentiary problems that attend data that cannot be attributed to one of the litigants. Also, as discussed more fully below, because this data is being used to answer Plaintiffs' interrogatories ("rogs"), please remember that Plaintiffs can't answer their own rogs.

It is worth noting that in ECF No. 297, Plaintiffs are not moving to compel the production of anything in particular. This motion is all about process. They are asking the Court to start the identification of non-custodial data sources over from the beginning. And, with respect to StubHub's primary operational datastore, they want StubHub to be ordered to work with them iteratively and collaboratively. Plaintiffs do not, for example, state the information they need from the primary operational datastore and ask the Court to order StubHub to produce it.

StubHub's constant refrain is that the Plaintiffs have no interest in litigating their claims on the merits and instead want to weaponize e-discovery to drag out discovery as long as possible. Plaintiffs are not doing a good job of proving StubHub wrong. This MDL proceeding is now four years old. In that time, StubHub has taken 35 depositions and moved for summary judgment. By contrast, Plaintiffs have taken one deposition, and that deposition wasn't even their idea. The Court ordered them to take it as part of addressing a discovery dispute about hyperlinks embedded in documents. *See* ECF No. 194. And now in ECF No. 297, Plaintiffs are literally asking for non-custodial discovery to start over again from the beginning. They speculate that certain databases referred to in documents ought to have been identified as relevant sources, but they haven't deposed anybody about those databases to develop an argument. They complain that they don't understand the relationship between StubHub's primary operational datastore and its other data

3

sources, but they haven't deposed anybody about this database either.

And at the risk of pointing out the obvious, identifying and understanding relevant non-custodial sources is supposed to be an initial step in discovery. In general, the steps are:

Step One: Learn about relevant data sources, either because your opponent tells you about them or because you take depositions and ask about them.

Step Two: Move to compel productions, or better productions, from those data sources.

Step Three: Take depositions on the merits of your claims, including by using the produced data as exhibits.

Step Four: Have your experts use the produced data and deposition testimony to write expert reports.

Step Five: Move for class certification.

Four years into this MDL, and 28 months after the ESI Order was entered, depending on the data source, Plaintiffs are still in either Step One or Step Two (see below concerning ECF No. 298). As you will learn below in ECF No. 300, Plaintiffs are now being forced against their will into Step Three. And now they want to start Step One all over again? Rather than refuting StubHub's accusation that Plaintiffs are weaponizing e-discovery to drag things out, Plaintiffs seem almost to be walking into it. Their motion at ECF No. 297 is **DENIED**.

**B.     ECF No. 298**

Plaintiffs' rogs 3 and 4 asked about "Impacted Events" and ticket purchases to any "Impacted Event." ECF No. 301-11. Plaintiffs say that despite having amended its rog responses several times, StubHub's answers continue to be filled with errors. It's not clear why that is the case, and because this is StubHub's data, it's not fair to demand that Plaintiffs know. For its part, StubHub is completely evasive. Each side has a proposal for how to resolve this problem that is totally unexplained, at least to the Court. Reading over Plaintiffs' proposal, and then comparing it to StubHub's, the Court is not filled with confidence that either side's proposal will work.

Plaintiffs again press their request for a collaborative and iterative process in which StubHub will make its technical consultants available for live conversation, and StubHub will run queries provided by Plaintiffs. The Court will not order that. Plaintiffs cannot answer their own

4

rogs. You can move your opponent's rog responses in evidence as the statement of a party opponent because your opponent said those facts are true. But you can't do that if *you* answered the rog – or, as Plaintiffs desire here, if the two sides working together answered the rog. Litigation is designed to find the truth, but it is designed to find it in a particular way: adversarial testing. Even if the cooperation project that Plaintiffs envision resulted in objectively more accurate data, it would also result in data that couldn't be attributed to either side. Certainly, StubHub could disclaim any knowledge of whether the queries Plaintiffs asked it to run were well or poorly designed. This raises important questions about the resulting data, such as: Who moves it in evidence? Which side offers the sponsoring witness? The value of a rog response isn't necessarily that it's the most accurate response (although, of course, it is supposed to be accurate) but that it was said by your opponent so you can use it against them.

This is StubHub's data, and the rogs were served on StubHub, so this is StubHub's problem to solve. The Court **ORDERS** StubHub to answer rogs 3 and 4 to the best of its ability. The Court is not going to instruct StubHub how to do this. That is for StubHub to figure out.

C.  **ECF No. 299**

This joint discovery letter brief displays a disconnect between the parties. Plaintiffs ask the Court to review *in camera* the documents listed in Exhibit 29 (ECF No. 301-29), a document that Plaintiffs created that contains a sample list of StubHub's privilege claims that they would like to challenge. StubHub does not meaningfully respond to that argument. At the hearing StubHub confirmed that this letter brief came together pretty quickly, which explains the disconnect.

It looks like some of the entries on Exhibit 29 could use some improvement. For example, some of them don't list a recipient. As discussed at the hearing, the Court **ORDERS** StubHub to amend the entries in Exhibit 29 as necessary and to file the amended Exhibit by August 23, 2024. The Court also **ORDERS** StubHub to submit the documents listed in Exhibit 29 for the Court's *in camera* review by emailing them to TSHpo@cand.uscourts.gov by August 23, 2024. The Court will then rule on StubHub's claims of privilege. If the Court overrules any of those claims, StubHub must review the other entries on its privilege log and amend them in a manner consistent

1  with the Court's order.

2  **D.      ECF No. 300**

3        Plaintiffs move to compel the depositions of certain current and former StubHub employees, as well as contact information for former employees not represented by defense counsel. They clarify they were not planning on taking these depositions now, *see* ECF No. 300 at 2 ("Plaintiffs maintain that StubHub's other long-standing discovery deficiencies . . . should be resolved first"), but they filed this motion because "Plaintiffs are required by Judge Gilliam's July 11 Order to seek this relief now." *Id*.

      Accordingly, for all current and former StubHub employees whom Plaintiffs have stated they want to depose and who are represented by defense counsel, the Court **ORDERS** the parties to meet and confer, *see* Civil Local Rule 30-1, and promptly schedule those depositions.

      For all former StubHub employees whom Plaintiffs have stated they want to depose and who are not represented by defense counsel, the Court **ORDERS** StubHub to promptly provide the last known contact information for them, including any personal email addresses, so Plaintiffs can go subpoena the witnesses.

**IT IS SO ORDERED.**

Dated: August 13, 2024

THOMAS S. HIXSON
United States Magistrate Judge