UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: STUBHUB REFUND LITIGATION<br><br>This Document Relates to All Cases | Case No.  20-md-02951-HSG<br><br>**ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANT STUBHUB, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 291 |

Pending before the Court is Defendant StubHub, Inc.'s ("Defendant" or "StubHub") motion for summary judgment.  Dkt. No. 291.  The motion has been fully briefed.  *See* Dkt. Nos. 291, 310, 311, 312, 315.  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court **GRANTS** the motion on all claims to the extent those claims seek injunctive relief or restitution. The Court **DEFERS** ruling on the motion to the extent those claims seek traditional monetary damages.

## I.    BACKGROUND

The parties are familiar with the facts of this case, which the Court has summarized in prior orders.  *See* Dkt. Nos. 62, 106.  The Court summarizes the facts again here only as relevant to the pending motion.  After the COVID-19 pandemic began in March 2020, several cases were filed against StubHub for allegedly wrongfully changing its refund policy for events affected by the pandemic.  Dkt. No. 1.  Those cases were consolidated and transferred to this Court (*id.*), and in January 2021, over 50 named Plaintiffs filed a consolidated amended complaint.  Dkt. No. 36 ("CAC"), at ¶¶ 1, 98-111.  Currently, 33 Plaintiffs remain after 23 dismissed their claims against StubHub in their entirety.  Dkt. Nos. 134, 143, 165, 166, 181, 189, 192, 199, 232, 239.  All

Plaintiffs also voluntarily dismissed with prejudice their 28 common-law claims.  *See* Dkt. No. 285.  The only claims left that were not compelled to arbitration (*see* Dkt. No. 90) are Plaintiffs' three statutory California claims alleging violations of the Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL").

This putative nationwide class action concerns Defendant StubHub's refund policy for events affected by the COVID-19 pandemic.  Dkt. No. 36 (Consolidated Amended Class Action Complaint ("CAC") at ¶¶ 1, 4-14, 76-97.  StubHub is an online ticket marketplace where its users can buy and sell tickets to events.  Dkt. No. 291 (StubHub's Motion for Summary Judgment ("MSJ")), at 13; Dkt. No. 291-1 (Declaration of James Wright ("Wright Decl.")) at ¶ 2.  It is undisputed that StubHub does not directly sell tickets to these events: rather, buyers purchase event tickets from third parties on the StubHub platform.  *Id.*; Dkt. No. 310 (Plaintiffs' Redacted Opposition to Motion for Summary Judgment ("Pltfs' MSJ Opp.")) at 14 (StubHub operates a "secondary marketplace for the sale" of tickets, charging fees for each transaction).

Plaintiffs allege that for 14 years prior to COVID-19, StubHub had assured its users via its FanProtect Guarantee ("FPG") that ticket purchasers would receive full refunds for cancelled events.  Dkt. No. 310 at 8.  According to StubHub, the FPG is "a creature of contract" defined entirely by the terms in StubHub's User Agreement.  *See* Dkt. No. 291 at 13.  The parties do not dispute that prior to March 25, 2020, the User Agreement promised that "[i]f an event is cancelled and not rescheduled, we will provide you with a full refund (including any fees and shipping/handling charges)."  Dkt. No. 291-3 (Declaration of William P. Donovan ("Donovan Decl.")), ¶ 2, Ex. 1 (StubHub's User Agreement dated October 1, 2018)) at 68.  The parties also do not dispute that the User Agreement provided that "StubHub does not provide refunds for postponed or rescheduled events, partial performances, or venue, date, lineup, or time changes."  *Id.*

According to Plaintiffs, StubHub's advertising history, which includes the FPG's "logo and an accompanying tag line" prominently displayed on StubHub's landing page, purchase screen, and throughout its website, along with television and internet commercials, reflect StubHub's "cash back refund guarantee."  Dkt. No. 310 at 8-9.  Based on this advertising history,

United States District Court
Northern District of California

Plaintiffs assert that the FPG's core guarantee is that "[y]ou will be refunded if the event is cancelled and is not rescheduled." Dkt. No. 310-1 (Declaration of Bradley K. King ("King Decl.")), ¶ 15, Ex. 9 at 6 (StubHub webpage describing that FPG guarantees refund for cancelled but not rescheduled event) (December 2006)), 11 (same) (July 2008), 12 (same) (February 2009), 17 (same) (January 2012), 18 (same) (December 2012), 22 (same) (September 2014), 23 (same) (January 2015), 24 (same) (April 2016), 25 (same) (May 2016), 26 (StubHub "Help center" webpage stating that automatic refunds are issued when events are "officially cancelled") (June 2017), 27 (same) (June 2017); *see also* Dkt. No. 310 at 9 (StubHub's president's testimony at Congressional hearing that "StubHub's FanProtect Guarantee is the hallmark of our business and it is why we have earned the trust of fans around the globe"). StubHub, on the other hand, insists that the FPG has never promised a refund in all situations, characterizing it as "an assurance that the tickets bought and sold on StubHub will validly permit entry to an event." Dkt. No. 291 at 13.

On February 26, 2020, just before the global pandemic began, StubHub's President testified before Congress that StubHub would provide "a full refund inclusive of fees" "when there is something wrong with a ticket purchased." Dkt. No. 310 at 9 n.5. Two weeks later, on March 11, 2020, a StubHub executive sent an internal company-wide email confirming that StubHub users could receive a full refund for tickets to cancelled events. Dkt. No. 310-1 (Declaration of Bradley K. King ("King Decl.")) at ¶ 22, Ex. 16 at 3. Throughout March 2020, StubHub users whose events were cancelled received emails assuring them that they could receive a full refund. Dkt. No. 310-1 (King Decl.) at ¶ 22, Ex. 16 at 3. As late as March 20, 2020, StubHub's president told a CNBC journalist that "[a]nybody who purchased on our site at StubHub is protected by what we call our FanProtect Guarantee," and said that "for cancellations in particular we're offering customers right now two opportunities, number one a full refund [or] . . . 120% of the original purchase value if customers want to take a credit." Dkt. No. 310 at 10.

But like essentially everyone else in the world, StubHub did not predict the scope and duration of the COVID-19 pandemic. On March 25, 2020, less than a week after StubHub's president confirmed that the FanProtect Guarantee would provide a refund at a user's option, StubHub changed its cancellation policy to *only* offer a coupon worth 120% of the original

3

purchase price, and not refunds.  Dkt. No. 291 at 14-15; Dkt. No. 310-1 (King Decl.) at ¶ 19, Ex. 13 (internal StubHub discussion regarding removal of refund option for buyers); *id.* at ¶ 20, Ex. 14 (internal StubHub email describing change to cancellation policy).  The User Agreement was revised on March 25, 2020 to provide that "[i]f an event is canceled and not rescheduled, we will provide you with a full refund of the full amount you paid on StubHub (including any fees and shipping/handling charges) or credit for use on a future purchase, *as determined in StubHub's sole discretion (unless a refund is required by law)*."  Dkt. No. 39-2 (Exhibit A to StubHub's Motion to Compel Arbitration) at 70 (emphasis added).  Unsurprisingly, StubHub's policy change prompted a negative response from many users who had bought tickets on its platform.  *See* Dkt. No. 310 at 11 (describing numerous complaints to StubHub and StubHub's response).

Plaintiffs acknowledge that a little over a year after the pandemic began, on May 3, 2021, StubHub notified its users that they would receive a full refund for tickets to canceled events purchased prior to March 25, 2020, unless those users elected to retain account credits.  Dkt. No. 310 at 11-12.  Plaintiffs do not dispute that StubHub then began issuing refunds to those who previously received credits, giving those users the option to keep the credit or to receive a cash refund.  Dkt. No. 291 at 15.[1]  Users who did not respond automatically received a refund.  *Id.* Plaintiffs also acknowledge that StubHub agreed to consent judgments with multiple states that provided for over $16 million in cash refunds to over 75,000 users.  Dkt. No. 310 at 12, 12 n.28. However, Plaintiffs assert that StubHub's announcement and its cash refunds did not address "many of the harms caused" by its "refusal, beginning on March 25, 2020, to honor the FPG." Dkt. No. 310 at 12.  According to Plaintiffs, these harms include StubHub's denial of refunds for "indefinitely postponed events" that were not officially canceled by the promoter or venue, StubHub's "manipulat[ion]" of the internal classification of events, and StubHub's continued advertising of the FPG "without any prominent correction to alert consumers of how it materially

---

[1] The record reflects, and Plaintiffs do not dispute, that so far, at least 23 of the remaining 33 Plaintiffs in this litigation have received a refund.  Dkt. No. 291-2, Ex. A to the Declaration of James Wright ("Wright Decl.").  Of the nine Plaintiffs who have not received a refund, all but three had tickets to postponed or rescheduled events.  *Id.*  The remaining three Plaintiffs, whose events were cancelled but did not receive a refund, either had outdated payment information or opted to use the 120% credit.  *Id.*

United States District Court
Northern District of California

changed." Dkt. No. 310 at 12. Plaintiffs, citing a May 2021 New York State Senate investigative report, argue that "[c]onsumers had hundreds of dollars tied up in tickets they couldn't use, at a time when many of them needed the money the most." Dkt. No. 310 at 12, 12 n.31. Plaintiffs do not dispute, however, that after May 3, 2021, StubHub agreed to provide refunds for tickets bought prior to March 25, 2020 to events that were canceled by the promoter or venue. Dkt. No. 310 at 11-12.

In their Complaint, Plaintiffs' Request for Relief seeks all relief available under the CLRA, including damages, and restitution and injunctive relief under the UCL. *See* Dkt. No. 36 at ¶¶ 135, 148-49. Plaintiffs do not specify the exact relief sought for their FAL claim, other than alleging that they suffered lost money or property due to StubHub's purported FAL violations. *Id.* ¶ 157. The injunctive relief requested by Plaintiffs is a "corrective advertising campaign" to rectify the alleged ongoing harm they and the putative class face, because StubHub "has continued using the FPG logo and advertising as if nothing has happened—the logo continues to be featured on StubHub's webpage, app, and advertising and is seen by each purchaser at checkout." Dkt. No. 310 at 13. Specifically, Plaintiffs demand that StubHub "explain to the consuming public that the terms of the FPG no longer mean money back in the case of cancellations, and that StubHub can change the promise of the guarantee at any time, rendering it effectively useless." *Id.*; *see also* Dkt. No. 36, CAC ¶ 470(h)e ("[r]equiring StubHub to disseminate clear corrective advertising effectively informing the public that the FanProtect$^{TM}$ Guarantee no longer means a money back guarantee and setting forth the current terms in a clear and conspicuous manner"); id. at ¶ 470(h)f ("[r]equiring StubHub to disseminate clear corrective advertising effectively informing the public that the FanProtect$^{TM}$ Guarantee is not a guarantee at all, or is hollow and meaningless because StubHub maintains and reserves the right to unilaterally change its terms at any time").

## II.   LEGAL STANDARD

### A.  Motion for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

StubHub contends that it is entitled to summary judgment on all three of Plaintiffs' remaining claims under the CLRA, UCL, and FAL because (1) ticket sales are not "goods" or "services" actionable under the CLRA (Dkt. No. 291 at 17-19); (2) plaintiffs lack standing to pursue equitable relief (*id.* at 19-26); (3) plaintiffs are not seeking public injunctive relief (*id.* at 26-28); (4) plaintiffs' remaining claims are duplicative of Plaintiffs' already-dismissed breach of contract claim (*id.* at 29-31); and (5) StubHub made no false representations at the time of sale (*id.* at 31-33). In the alternative, StubHub contends that summary adjudication is appropriate as to certain Plaintiffs. *Id.* at 33-36. The Court agrees that StubHub is entitled to summary judgment on Plaintiffs' claims for equitable relief, and defers consideration of the remaining claims for now for the reasons explained below.

### A.    Plaintiffs Lack Standing to Seek Public Injunctive Relief

StubHub argues that the Plaintiffs lack standing to pursue equitable relief because (1) plaintiffs had an adequate remedy at law in the form of damages, Dkt. No. 291 at 23-26, and (2) they impermissibly seek an injunction to remedy "purely past harm," *id.* at 20-23. StubHub also reiterates its argument that Plaintiffs do not actually seek public injunctive relief, such that *McGill* does not foreclose arbitrating Plaintiffs' remaining claims. *See id.* at 26-27.

As an initial matter, the Court rejects StubHub's repeated argument that Plaintiffs do not actually seek public injunctive relief. *See id.* at 26-28. The Court already rejected this argument

United States District Court
Northern District of California

6

in denying StubHub's motion to compel arbitration of Plaintiffs' California statutory claims. *See* Dkt. No. 62. The injunction against false advertising that Plaintiffs seek is the paradigmatic example of public injunctive relief as discussed in multiple California Supreme Court cases, including *McGill*. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955-57 (2017) (injunction requiring Citibank to cease continuing "to falsely advertise or conceal material information" would constitute public injunctive relief); *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315-16 (2003) (an injunction under the UCL or FAL against deceptive advertising practices "is clearly for the benefit of . . . the general public"); *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1080 n.5 ("in the case of a CLRA injunction the public is generally benefited directly by the elimination of deceptive practices, and the plaintiff is benefited, if at all, only by virtue of being a member of the public"); *see also Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541-42 (9th Cir. 2021) (discussing *McGill*, *Cruz*, and *Broughton*). By contrast, Plaintiffs' requested injunction prohibiting StubHub from making further material changes to its FanProtect Guarantee is not public injunctive relief. *See* Dkt. No. 36, CAC at ¶¶ 470(h)a, (h)d. *Hodges*, 21 F.4th at 546 ("injunctive relief aimed at regulating the substantive terms of contractual arrangements is private injunctive relief that primarily benefits those who enter into such contracts").

However, there is a separate question as to whether Plaintiffs have *standing* to seek the public injunctive relief they request. "Plaintiffs may only invoke California's *McGill* rule if they have standing and seek public injunctive relief in federal court." *McBurnie v. RAC Acceptance East, LLC*, 95 F.4th 1188, 1194 (9th Cir. 2024); *see also Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020) ("[T]o seek public injunctive relief in federal court, [the plaintiff] must also allege that she has Article III standing."). In *Stover*, the Ninth Circuit assessed whether the plaintiff, who sought public injunctive relief to halt Experian's allegedly fraudulent marketing practices, had Article III standing by applying the test articulated in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). *See Stover*, 978 F.3d at 1087 ("Stover's complaint does not allege the threat of future harm that *Davidson* held is required for Article III standing in a case seeking public injunctive relief"). In *Davidson*, the Ninth Circuit held that "a previously deceived

United States District Court
Northern District of California

consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." 889 F.3d at 969. "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70. Specifically, the Ninth Circuit held that the plaintiff had established a threat of future harm even though she now knew that the label was false at the time of purchase. *Id.*

Accordingly, because under *some* circumstances public injunctive relief remains "available for a consumer who learns after purchasing a product that the label is false," *see Davidson*, 889 F.3d at 970, StubHub overreaches in arguing that Plaintiffs are not entitled to seek injunctive relief because they have an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020) (a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm"). As courts in this District have articulated, "[d]amages related to the products Plaintiff has already bought do not remedy the harm from Defendant continuing to use misleading marketing statements on those products." *Graham v. Central Garden & Pet Co.*, No. 22-CV-06507-JSC, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023); *see also Warren v. Whole Foods Mkt. Cal., Inc.*, No. 21-CV-04577-EMC, 2022 WL 2644103, at *9 (N.D. Cal. Jul. 8, 2022) ("[R]etrospective damages are not an adequate remedy for the prospective harm that injunctions are designed to prevent, and injunctive relief was not at issue in *Sonner* because the defendant only moved to dismiss the plaintiff's claims for restitution[.]").

However, Plaintiffs have not explained why damages for Plaintiffs' CLRA claim are not an adequate remedy with respect to their request for *restitution* under the UCL and (presumably) the FAL. *See* Dkt. No. 310 at 19-20. *See In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (plaintiffs failed to "distinguish their request for restitution from their request for damages"). The Court agrees with StubHub that restitutionary disgorgement is the only disgorgement available under the UCL or

United States District Court
Northern District of California

FAL, and that restitutionary disgorgement is equivalent to restitution in this context. *See Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1072 (N.D. Cal. 2020) ("[n]onrestitutionary disgorgement is not available under the UCL [or the FAL or CLRA]"); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015) ("restitutionary disgorgement *focuses on the plaintiff's loss*") (emphasis in original); *Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003) (in both individual and representative UCL actions, "disgorgement of money obtained through an unfair business practice is an available remedy . . . only to the extent that it constitutes restitution"). Plaintiffs therefore may not seek restitution under the UCL or FAL.

StubHub's second argument that Plaintiffs cannot pursue equitable relief to "remedy purely past harm" hinges on whether, under the *Davidson* test, Plaintiffs have made "plausible allegations that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product, although [they] would like to." 889 F.3d at 970. The Court finds that Plaintiffs' position on this point, in light of the record evidence, is not plausible.

Critically, Plaintiffs have not pointed to anyplace in the record where a plaintiff testified that he or she could not rely on StubHub's representations about its current or future services. *See* Dkt. No. 310 at 17, 17 n.40. Rather, the deposition testimony cited by Plaintiffs reflects their desire to hold StubHub to the terms of its *prior* refund policy. *See, e.g.*, Dkt. No. 310 at 17 (citing Andersen Tr. 80:4-81:12 ("I'm looking out for all the consumers who read online or advertisements that StubHub guarantees that they will make any canceled event good and they lied"); *id.* (citing Markwalder Tr. 33:19-23 ("[W]hy I'm here is because . . . their whole brand was built upon you get a refund."). Some of the deposition testimony attached to Plaintiffs' opposition directly casts doubt on Plaintiffs' position that they are unable to rely on StubHub's representations moving forward. For example, at least some Plaintiffs continued to use StubHub even after learning of StubHub's purported deception. *See* Dkt. No. 310-12 at 9 (citing Matlock Tr. 112:15-17 ("So even after filing this lawsuit, you still used StubHub? Yes.")); *id.* at 10 (citing McDaniel Tr. 91:7-18 ("You have used StubHub ticket marketplace since filing this lawsuit, right? Yes. A few different times, right? Yes.")); *id.* (citing Kruger Tr. 91:8-24 ("Would it surprise you, sir, to know that since this complaint was filed against StubHub on January 8 of 2021, that you

have spent approximately $8,000 on tickets through StubHub?  Would it surprise me?  Yeah.  Not really.")).   One plaintiff even expressed that after receiving a refund from StubHub, some of his confidence was "restored" in StubHub.  *See id.* (citing Kruger Tr. 91:8-24 ("Why is it, sir, that after you sued StubHub you would continue to use StubHub and its services?  I think because we got—you issued a refund, you know, two years later, but still got it.  Kind of restored some confidence in me.")); *id.* (citing Kruger Tr. 92:1-6 ("So receiving that refund, in your words, restored some confidence such that you were willing to continue to use the StubHub platform after the lawsuit was filed, right?  Yes.")).

Nor have Plaintiffs pointed to anyplace in the record where a plaintiff testified that he or she *definitely* intended to use StubHub to purchase tickets in the future.  To the contrary, at least some plaintiffs testified that they did not know or were unsure whether they intended to buy from StubHub again.  Dkt. No. 310-12 at 10 (citing Cook Tr. 41:3-6 ("Do you intend to buy from StubHub again?  I don't know.  That's an honest answer.  I do not know.")); *id.* (citing Morales Tr. 66:15-18 ("Do you ever intend to use StubHub to make a purchase in the future again?  I'm not sure honestly.")); *id.* (citing McDaniel Tr. 91:7-18 ("Do you intend to use StubHub again in the future?  I don't know.")); *id.* at 11 (citing Hudson Tr. 59:15-17 ("Do you intend to use StubHub again?  Difficult to say.")).

This record fatally undermines Plaintiffs' position that they have proven an actual or imminent injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiffs' "some day" intentions, "without any description of concrete plans, or indeed even any specification of when the some day will be," did not support a finding of the "actual or imminent" injury required for Article III standing); *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) (an "injunction should not be granted as punishment for past acts where it is unlikely that they will recur").

And Plaintiffs' declarations in opposition to the summary judgment motion do not solve the problem.  Plaintiffs argue that the declarations "ma[ke] clear that they would use StubHub if they could 'gain some confidence in StubHub's representations about its services' under StubHub's FanProtect Guarantee."  Dkt. No. 310 at 18, 18 n. 48.  But none of the Plaintiffs

10

United States District Court
Northern District of California

actually declares that he or she *would* use StubHub's services if they could rely on StubHub's representations in the future. Instead, each identical declaration states that the plaintiff "intends to purchase tickets . . . in the future, including *potentially* from StubHub," so long as he or she "can gain some confidence in StubHub's representations about its services, including under what circumstances I will be entitled to a full and timely refund under StubHub's FanProtect Guarantee." Dkt. Nos. 310-43, 310-44, 310-45, 310-46, 310-47, 310-48, 310-49, 310-50, 310-51, 310-52, 310-53, 310-54, 310-55, 310-56, 310-57, 310-58, 310-59, 310-60, 310-61, 310-62, 310-63, 310-64, 310-65, 310-66, 310-67, 310-68, 310-69, 310-70, 310-71, 310-72, 310-73, 310-74, 310-75 (emphasis added). Plaintiffs' declarations, which do not even profess a clear intent to purchase from StubHub, are also insufficient to establish Article III standing. *See Lanovaz v. Twinings North America*, 726 F. App'x 590, 591 (9th Cir. 2018) (plaintiff failed to show that future harm was "actual or imminent" where she stated in an interrogatory response that she would "consider buying" defendant's products in the future).[2] "A profession of intent is simply not enough to satisfy Article III." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)) (cleaned up). "The threatened injury must be *certainly impending* to constitute injury in fact and allegations of *possible* future injury are not sufficient." *Davidson*, 889 F.3d at 967 (emphasis in original); *see also Sciacca v. Apple*, 362 F. Supp. 3d 787, 803 (N.D. Cal. 2019) (possibility that plaintiff could be harmed if he "*potentially* repaired [Apple] watch" was "insufficient allegation of future harm") (emphasis in original).

StubHub also explains that because the "plain terms of the operative FanProtect Guarantee" have changed to allow StubHub to offer a credit instead of a refund for tickets to cancelled events, "[t]here is no ability for the alleged wrong to 'recur.'" Dkt. No. 291 at 21. The Court agrees on this point as well. In *Davidson*, the plaintiff faced "the similar injury of being unable to rely on [defendant's] representations of its product in deciding whether or not she should purchase the product in the future," even though she now knew that the prior representations were false, because she might "reasonably, but incorrectly, assume the product was improved."

---

[2] As an unpublished Ninth Circuit decision, *Lanovaz* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

*Davidson*, 889 F.3d at 970-72.  By contrast, in this case, while Plaintiffs also allege that the future injury they face is uncertainty regarding Defendant's representations about its refund policy, there is no basis now for them to assume (reasonably or otherwise) that Defendant will automatically provide refunds for tickets to cancelled events, or to believe that Defendant does not have discretion to modify the user agreement.  The record shows that Plaintiffs are now clearly aware of the relevant facts.  *See Ramos v. EyeBuyDirect, Inc.*, No. 8:25-cv-00539-JVS-DFM, 2025 WL 2633103, at *12-13 (C.D. Cal. Aug. 27, 2025) (plaintiff who was now aware of challenged fee and ability to opt-out could not be harmed again); *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 262 (S.D. Cal. 2023) (plaintiffs who now knew how to determine whether defendant charged a resort fee could not be deceived in the same way).

Accordingly, the Court concludes that Plaintiffs lack standing to pursue public injunctive relief and grants StubHub's motion for summary judgment on Plaintiffs' CLRA and FAL claims to the extent those claims seek injunctive relief or restitution.  Because the Court has concluded that neither restitution nor injunctive relief is available to Plaintiffs under the UCL, and traditional monetary damages are not available under the statute, the Court grants StubHub's motion for summary judgment on this claim in its entirety.  *See In re PFA Ins. Marketing Litig.*, 696 F. Supp. 3d 822, 836 (N.D. Cal. 2022) (remedies available under the UCL are limited to forms of equitable relief and "do not include damages") (citing *In re First Alliance Mortg. Co.*, 471 F.3d 977, 996 (9th Cir. 2006)).

## IV.    CONCLUSION

The Court **GRANTS** StubHub's Motion for Summary Judgment on Plaintiffs' CLRA and FAL claims to the extent these claims seek injunctive relief, and on Plaintiffs' UCL claims in their entirety.

This ruling requires the Court to then decide what should happen to Plaintiffs' sole remaining claims for damages under the CLRA and FAL.[3]  When initially confronted with this

---

[3] Previously, the Court found that the parties' arbitration agreement and class waiver was not enforceable as to Plaintiffs' California causes of action.  Dkt. No. 62 at 20-21; Dkt. No. 90 at 1-3. Plaintiffs then voluntarily dismissed all common-law claims, which included their California common-law negligent misrepresentation claim.  *See* Dkt. No. 285 at 2.  Thus, the only claims left

United States District Court
Northern District of California

question in the context of StubHub's motion to compel arbitration, the Court found that the *McGill* rule precluded arbitration of the statutory claims as a whole. *See* Dkt. No. 90 at 3 (concluding that "the entire UCL, CLRA, and FAL claims must be severed for judicial determination, and not just the request for public injunctive relief"). But that ruling was premised on the assumption that Plaintiffs had adequately alleged standing at that early stage of the case to pursue injunctive relief. Now, the Court has found based on the developed record that Plaintiffs lack such standing as to the public injunctive relief claim, which calls into question whether the surviving CLRA and FAL damages claims may proceed here, as opposed to being compelled to arbitration (as they would have been from the beginning but for the presence of the public injunctive relief claim). *See Stover*, 978 F.3d at 1087 (finding that where plaintiff failed to meet the *Davidson* standing requirements for seeking injunctive relief, the *McGill* rule "[did] not preclude arbitration of her California UCL claim"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (plaintiffs "must maintain their personal interest in the dispute at all stages of litigation" and must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation"). The Court questions whether the rationale of *McGill* continues to apply now that the public injunctive relief claim is no longer in the case.[4]

The Court thus **DEFERS** ruling on whether StubHub is entitled to summary judgment on Plaintiffs' CLRA and FAL claims to the extent these claims seek damages. The parties are **DIRECTED** to file simultaneous briefs of no more than 8 pages to show cause why the remaining CLRA and FAL claims for damages should or should not be compelled to arbitration by February 19, 2026. Each side may then reply in a brief of no more than 5 pages by February 26, 2026, with no further filings allowed. The *only* topic the briefing may address is whether Plaintiffs' remaining CLRA and FAL claims should now be compelled to arbitration given that public injunctive relief may no longer be sought in this federal case. The Court will not entertain any

_____

that were not compelled to arbitration were Plaintiffs' three statutory California claims alleging violations of the CLRA, UCL, and FAL. *See* Dkt. No. 90.

[4] The Ninth Circuit did not address this Court's denial of StubHub's motion to compel the statutory claims to arbitration under *McGill*, finding that it lacked jurisdiction because StubHub did not timely appeal that order. Dkt. No. 227 at 1.

United States District Court
Northern District of California

request for reconsideration or other argument challenging the merits of the order granting summary judgment as to the injunctive relief claims, which is final.

**IT IS SO ORDERED.**

Dated:    2/5/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

14