United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: STUBHUB REFUND LITIGATION

This Document Relates to All Cases

Case No. 20-md-02951-HSG

**ORDER COMPELLING CLAIMS TO ARBITRATION**

The parties are familiar with the long history of this case. As relevant here, the Court granted in part Defendant StubHub, Inc.'s motion for summary judgment. Dkt. No. 325. The Court granted summary judgment as to Plaintiffs' Unfair Competition Law ("UCL") claim in its entirety, and granted summary judgment as to Plaintiffs' claims for injunctive relief and restitution under the California Consumers Legal Remedies Act ("CLRA") and False Advertising Law ("FAL"). *Id.* However, the Court deferred ruling on Plaintiffs' remaining claims for damages under the CLRA and FAL, and asked for further briefing on the arbitrability of these claims. *Id.* Having reviewed the parties' filings, the Court **COMPELS** the remaining CLRA and FAL claims to arbitration.

## I. BACKGROUND

Early in this litigation Defendant moved to compel Plaintiffs' claims to arbitration based on an arbitration clause in the StubHub User Agreement. Dkt. No. 39. In November 2021, the Court granted the motion in part as to some Plaintiffs and as to some claims.[1] *See* Dkt. No. 62

[1] The Court initially compelled arbitration only as to those who purchased tickets on the StubHub website. *See* 2021 Order at 4–14. Defendant renewed its motion to compel arbitration as to the mobile application Plaintiffs, Dkt. No. 71, which the Court denied, Dkt. No. 106. On appeal, the Ninth Circuit held that five of these Plaintiffs, who had signed into StubHub's website before

("2021 Order"). Plaintiffs argued—and the Court agreed—that the StubHub User Agreement ("UA") violated the California Supreme Court's opinion in *McGill v. Citibank N.A.*, 2 Cal. 5th 945 (2017). *Id.* at 17–21. In *McGill*, the California Supreme Court held that arbitration provisions are invalid and unenforceable if they purport to waive a plaintiff's statutory right to seek public injunctive relief in any forum. *See* 2 Cal. 5th at 954–67. Here, the UA included an arbitration provision that limited the arbitrator's authority to award only individualized relief, and explicitly stated that "[a]ny relief awarded cannot affect other users or the general public." *Id.* at 4 (citing Dkt. No. 39-2, Ex. A at 15–16, ¶ 22.1(A)(2)). The Court found that Plaintiffs had alleged that they were seeking the "'paradigmatic example' of public injunctive relief, to preclude Defendant from misrepresenting to the general public the protections afforded by its FanProtect™ Guarantee." *See id.* at 19. The Court recognized that "Defendant may disagree with the likelihood of such future harm," but held that the arbitration agreement was unenforceable as to Plaintiffs' California statutory causes of action—namely, the UCL, CLRA, and FAL. *See id.* at 17–21.

Several months later, the parties sought clarification of the scope of the Court's 2021 Order. *See* Dkt. Nos. 73–75. In short, Defendant suggested that only Plaintiffs' claims for public injunctive relief should remain here and all other claims, including requests for restitutionary damages under Plaintiffs' California statutory causes of action, should be compelled to arbitration. *See* Dkt. No. 75. Although the parties had not raised this particular issue in their original briefing on the motion to compel arbitration, the Court considered whether it could carve out specific remedies (rather than entire causes of action) from arbitration. *See* Dkt. No. 90 ("2022 Order"). The Court explained, "[f]or the avoidance of doubt," that it was bound by the Ninth Circuit's opinion in *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831–32 (9th Cir. 2019). *See id.* Consistent with *Blair*, the Court looked to the language of the UA's severance clause. *Id.* The severance clause states:

> If a court decides that applicable law precludes enforcement of any of this paragraph's limitations as to a particular *claim for relief*, then

---

purchasing tickets on the mobile application, had agreed to arbitration. *See In re StubHub Refund Litig.*, 2023 WL 5092759, at *1–2 (9th Cir. Aug. 9, 2023).

> subject to your and StubHub's right to appeal the court's decision, that *claim* (and only that *claim*) must be severed from the arbitration and may be brought in court.

*See* Dkt. No. 39-2, Ex. A at 15–16 (emphasis added). As in *Blair*, the Court found that the reference to "claim for relief" meant a "cause of action" and not just a specific "remedy." *See* Dkt. No. 90 at 2–3. Consequently, "the Court conclude[d] that the entire UCL, CLRA, and FAL claims must be severed for judicial determination, and not just the request for public injunctive relief." *Id.* at 3. And these three California statutory claims were not compelled to arbitration.

Plaintiffs later voluntarily dismissed with prejudice all their individual California common law claims. *See* Dkt. No. 285 at 2. Thus, the only remaining claims that were not compelled to arbitration were Plaintiffs' three California statutory claims under the UCL, CLRA, and FAL.[2] Defendant eventually moved for summary judgment as to these three claims. Dkt. No. 291. The Court granted the motion for summary judgment in part and deferred ruling on the rest of the motion pending supplemental briefing. *See* Dkt. No. 325.

Specifically, the Court found that Plaintiffs lacked Article III standing to seek public injunctive relief. *See id.* at 7–12. As the Ninth Circuit explained in *Davidson v. Kimberly-Clark Corp.*, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." 889 F.3d 956, 969 (9th Cir. 2018). "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70. However, the Court held that Plaintiffs' assertions that they would be misled by Defendant's advertising in future were not plausible. For example, some Plaintiffs testified that they wanted to continue to hold StubHub to the terms of its prior refund policy; others testified that they continued to use StubHub even after learning of its purported deception about the FanProtect™ Guarantee; and another said that after eventually receiving a

[2] All 33 Plaintiffs remaining in the case agreed to the arbitration provision in the UA. *See* Dkt. No. 329 at 3. Although Plaintiffs moved for class certification in January, Dkt. No. 319, the Court stayed briefing pending its order on the motion for summary judgment, Dkt. No. 321.

refund from Defendant, "some of his confidence was 'restored' in StubHub." *See* MSJ Order at 9–10. Plaintiffs also did not identify any evidence in the record that any of them actually intended to use StubHub to purchase tickets in the future, with many expressing they were "unsure" if they would do so. *Id.* at 10–11. Additionally, Defendant has since changed the plain terms of the FanProtect™ Guarantee to allow for credits instead of just refunds for tickets to cancelled events. *Id.* at 11–12. The Court agreed that there was therefore no basis for Plaintiffs to believe that Defendant would automatically provide refunds for canceled events or that Defendant could not modify the terms of its UA. *See id.* The Court ultimately granted summary judgment as to Plaintiffs' UCL claim in its entirety and as to Plaintiffs' CLRA and FAL claims to the extent they seek equitable relief.

In light of this conclusion, the Court explained that it must "decide what should happen to Plaintiffs' sole remaining claims for damages under the CLRA and FAL." *See id.* at 12. The Court invited further briefing and now revisits whether to compel arbitration of the remaining CLRA and FAL claims.

## II. DISCUSSION

The Court recognizes the unusual posture of this case. The Court largely granted Defendant's motion to compel several years ago, but three California statutory claims remained here. However, a key premise of the Court's orders applying *McGill* and severing the statutory claims has now been undercut. That determination "was premised on the assumption that Plaintiffs had adequately alleged standing at that early stage of the case to pursue injunctive relief." *See* MSJ Order at 13. As the Ninth Circuit has explained, "Plaintiffs may only invoke California's *McGill* rule if they have standing and seek public injunctive relief in federal court." *McBurnie v. RAC Acceptance East, LLC*, 95 F.4th 1188, 1194 (9th Cir. 2024) (citing *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020)).

As an initial matter, Plaintiffs appear to suggest that the Court is somehow precluded from reconsidering its decision regarding whether—and to what extent—to compel Plaintiffs' claims to arbitration. Even assuming the Court can reconsider the application of *McGill* in the 2021 Order, Plaintiffs argue that the UA itself prevents the Court from reconsidering whether to sever the

statutory claims as it did in the 2022 Order. *See* Dkt. No. 330 at 4 ("No portion of the UA allows for [the severance of the California statutory claims] to now be undone."); Dkt. No. 331 at 3 ("The severance is [] final as a contractual matter."). Plaintiffs point out that the severance provision in the UA states that "[i]f a court decides" that an arbitration provision—such as the prohibition on public relief—is unenforceable, "then subject to your and StubHub's right to appeal the court's decision, that claim (and only that claim) must be severed from the arbitration . . . ." *See* Dkt. No. 39-2, Ex. A at 15–16. Because StubHub did not timely appeal, Plaintiffs suggest that both Defendant and the Court are precluded from revisiting the 2022 Order severing the statutory claims in their entirety.

This is nonsensical. The parties cannot contractually limit the Court's own inherent authority. The Court has authority to reconsider or modify its interlocutory orders if necessary. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." (quotation omitted)); Civil L.R. 7-9(a) (allowing parties to file motions for reconsideration "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case . . . ."); *cf. McArdle v. AT&T Mobility LLC*, No. 09-CV-01117-CW, 2017 WL 4354998, at *2 (N.D. Cal. Oct. 2, 2017), *aff'd*, 772 F. App'x 575 (9th Cir. 2019) (rescinding prior order compelling arbitration and vacating arbitration award four years after order). The Court is therefore not precluded (contractually or otherwise) from reconsidering its prior orders denying arbitration and severing the statutory claims.

More substantively, Plaintiffs urge that the Court's arbitration analysis did not—and could not—depend on whether Plaintiffs had standing to bring public injunctive relief. Plaintiffs repeatedly state that the Court's decisions were "contractual," and based on finding a "contractual defect" in the UA. *See* Dkt. No. 330 at 1–2, 5. Plaintiffs argue that because the UA contains a prohibition against public injunctive relief, it violates the *McGill* rule and is unenforceable on its face. *Id.* at 1–2. Any factual allegations or evidentiary shortcomings on summary judgment about standing, they urge, are irrelevant. *See, e.g.*, *id.* at 5 ("A finding on standing does not disturb a

ruling on contract."). But the Ninth Circuit has rejected such a sweeping application of *McGill*.

In *Hodges v. Comcast Cable Commc'ns, LLC*, for example, the plaintiff had argued that "[a]ll that matters" when determining whether the *McGill* rule is implicated is "whether the [agreement's] language theoretically purports to waive public injunctive relief in *any* case." 21 F.4th 535, 540 (9th Cir. 2021) (emphasis in original). The Ninth Circuit, however, explained that even *McGill* itself looked to whether the plaintiffs in fact sought public injunctive relief. *See id.* The court thus rejected the suggestion that "courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute." *Id.* at 541. Instead, and as noted above, "Plaintiffs may only invoke California's *McGill* rule if they have standing and seek public injunctive relief in federal court." *McBurnie*, 95 F.4th at 1194.

Like the arbitration agreement here, the one in *McBurnie* stated that the parties could not seek, and the arbitrator could not award, "relief that would affect [defendant] account holders other than you." *See id.* at 1190. However, the plaintiff sought "public injunctions" prohibiting the defendant from charging a $1.99 fee for payments made via telephone. *See id.* In remanding in part, the Ninth Circuit noted that despite prior allegations in the complaint, the plaintiff had admitted during her deposition that she had no evidence that she ever paid that fee. *See id.* at 1194. The Ninth Circuit remanded to allow the district court to address whether plaintiff had standing to challenge the $1.99 fee. *Id.* Similarly, the Ninth Circuit in *Stover* reasoned that the *McGill* rule did not preclude arbitration of the plaintiff's California UCL claim where she had not alleged the threat of future harm for purposes of Article III standing. *Stover*, 978 F.3d at 1087–88.

In response, Plaintiffs cite *McGovern v. U.S. Bank N.A.*, No. 18-CV-1794-CAB-LL, 2020 WL 7129344, at *1 (S.D. Cal. Dec. 3, 2020). There, the district court denied a motion to compel arbitration and subsequently denied the defendant's motion to reconsider. *Id.* In doing so, the court explicitly rejected the defendant's argument that "to avoid arbitration based on *McGill*, Plaintiff must first allege Article III standing to seek public injunctive relief." *Id.* The court had previously reasoned, and reiterated on reconsideration, that the arbitration agreement contained a "public injunction waiver provision" that was "invalid and unenforceable" on its face. *See id.* (citing *Blair*, 928 F.3d at 831). And because the arbitration provision also contained a "non-

severability provision," the court stated that "the entire arbitration provision [was] null and void," and it need not consider whether the plaintiff had Article III standing to seek public injunctive relief. *Id.* (citing *McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019)). The UA here does not contain such a non-severability clause. But more fundamentally, *McGovern* appears inconsistent with *McBurnie* and *Hodges*, to the extent it suggests that the application of *McGill* can be decided in a vacuum and without consideration of the plaintiff's standing to seek public injunctive relief.[3]

Plaintiffs here also attempt to sidestep the Court's concerns about the import of its standing analysis by pointing out that neither the Court's 2021 Order nor 2022 Order "depended on a finding that Plaintiffs would obtain a public injunction." *See* Dkt. No. 330 at 3. Plaintiffs urge that the relevant analysis is "wholly independent of any assessment of Plaintiffs' success on the merits." *See id.* "In other words," they urge, the Court's analysis "was not conditioned on Plaintiffs' obtaining public injunctive relief, it simply proceeded from their right to seek it." *See id.*; *see also id.* at 5 ("The Court in no way assumed Plaintiffs could ultimately *obtain* an injunction." (emphasis in original)). While Plaintiffs are correct that the invocation of *McGill* does not require that Plaintiffs ultimately prevail on their request for public injunctive relief, the Ninth Circuit has found that it requires Plaintiffs to have standing to seek such relief. Their supplemental briefing simply does not grapple with this fundamental point: the motion to compel arbitration was denied as to the statutory claims only insofar as Plaintiffs had standing to—and did—seek public injunctive relief. Now it is clear from the record that this is relief that Plaintiffs are not (and have not been) entitled to seek. They did not "lose" standing because of the Court's summary judgment analysis: they simply never had it. The parties do not cite, and the Court has been unable to find, a procedurally similar case. Still, the Court must evaluate the parties' agreement to arbitrate in light of this reality.

Plaintiffs suggest that the lengthy history of this case counsels against reconsidering whether the CLRA and FAL claims should be compelled to arbitration. *See id.* at 8. The Court is

[3] The Court notes that both *McBurnie* and *Hodges* were decided after *McGovern*, so the district court did not have the benefit of those opinions.

United States District Court
Northern District of California

simply not persuaded. The Court has to hold the parties to their contractual agreement, consistent with the authority discussed above. And here, on a more fulsome record, it is apparent that there are no public injunctive relief claims that would preclude enforcement of the arbitration provision in the UA.

## III. CONCLUSION

The Court accordingly **RECONSIDERS** its prior orders, Dkt. Nos. 62 and 90, to the extent they carved out the CLRA and FAL claims from arbitration; **COMPELS** the remaining CLRA and FAL claims for monetary damages to arbitration; and **STAYS** the case pending arbitration. The Court **SETS** a case management conference on September 1, 2026, at 2:00 p.m. The parties should be prepared to discuss whether the cases in this Multidistrict litigation should now be remanded in light of the current posture. The conference will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.

**IT IS SO ORDERED.**

Dated: 8/11/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge